1  MICHELE BALLARD MILLER (CA SBN 104198)
   mbmiller@cozen.com
2  ETHAN CHERNIN (CA SBN 273906)
   echernin@cozen.com
3  COZEN O'CONNOR
4  401 Wilshire Blvd., Suite 850
   Santa Monica, California 90401
5  Telephone: (310) 393-4000
6  Facsimile: (310) 394-4700

7  JONATHON M. WATSON (CA SBN 333845)
8  jmwatson@spencerfane.com
   SPENCER FANE LLP
9  1700 Lincoln Street, Suite 2000
   Denver, Colorado 80203
10 Telephone:  (303) 839-3800
11 Facsimile:   (303) 839-3838

12 Attorneys for Defendant
   SWIFT BEEF COMPANY
13

14           **UNITED STATES DISTRICT COURT**

15           **CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| FRANCISCO J. MEZA, on behalf of himself and others similarly situated,<br><br>              Plaintiff,<br><br>       vs.<br><br>SWIFT BEEF COMPANY; and DOES 1 to 100, inclusive,<br><br>              Defendants. | Case No. _____<br><br>**NOTICE OF REMOVAL OF STATE COURT CIVIL ACTION UNDER 28 U.S.C. §§ 1332, 1441, 1446, and 1453 [DIVERSITY AND CAFA JURISDICTION]**<br><br>Removed from the Superior Court of the State of California, County of Riverside<br><br>State Court Case No. CVRI2300103 |

DN 7362823.1

**TO THE CLERK OF THE ABOVE-ENTITLED COURT, PLAINTIFF, AND HIS COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT**, pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453, Defendant Swift Beef Company ("Defendant" or "Swift Beef Company") hereby removes the above-captioned state court action currently pending in the Superior Court of the State of California for the County of Riverside to the U.S. District Court for the Central District of California. Removal of this action is proper for the reasons listed below:

1.     This action is within the original jurisdiction of this Court and properly removed under 28 U.S.C. §§ 1332, 1441, 1446, and 1453. Specifically, removal is proper under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d), and 28 U.S.C. § 1453, which grants district courts original jurisdiction over class actions in which the amount in controversy exceeds $5,000,000 and any member of the putative class of plaintiffs is a citizen of a state different from any defendant. As set forth below, this action satisfies each of the requirements of 28 U.S.C. § 1332(d)(2) for original jurisdiction under CAFA. Further, pursuant to 28 U.S.C. § 1332(a)(1), this Court has original jurisdiction over this matter because it is a civil action between citizens of different states where the matter in controversy exceeds the sum or value of $75,000.

2.     On January 9, 2023, Plaintiff Francisco J. Meza ("Plaintiff") filed a putative Class Action Complaint ("Complaint" or "Cmplt.") purportedly on behalf of himself and others similarly situated against Defendant in the Superior Court of the State of California, County of Riverside, captioned *Francisco J. Meza v. Swift Beef Company*, Case No. CVRI2300103 (the "State Court Action"). On January 12, 2023, Plaintiff served Defendant with the Complaint. True and correct copies of all process, pleadings, and orders are attached collectively as **Exhibit A**. Plaintiff alleges he was employed by Defendant. (Cmplt. p. 3, ¶ 4.) Plaintiff asserts, on behalf of himself and others allegedly similarly situated, six causes of action under the California Labor

DN 7362823.1

Code against Defendant for failure to: (1) pay minimum wage for all hours worked; (2) permit meal periods; (3) permit rest periods; (4) timely pay earned wages; (5) provide accurate wage statements; and (6) timely pay all earned wages at separation of employment. (*See generally* Cmplt.) Plaintiff also asserts a claim under the California Unfair Competition Law. (*Id.* at pp. 23-24.) As discussed below, the Complaint requests economic damages, liquidated damages, restitution, statutory penalties, civil penalties, and attorneys' fees and costs, among other damages, on behalf of Plaintiff and others allegedly similarly situated. (*Id*. at pp. 25-27.)

3.     Swift Beef Company is the only defendant that has been properly joined and served. No other defendant must join in this removal. *See* 28 U.S.C. §§ 1446(b)(2)(A), 1453(b).

4.     This Notice is effected properly and timely pursuant to 28 U.S.C. § 1446(b) because it has been filed within 30 days after Defendant was properly served with a copy of the Summons and Complaint.

5.     Defendant will promptly serve a copy of this Notice on counsel for Plaintiff and will file a copy of this Notice with the Clerk of the Superior Court of the State of California, County of Riverside, pursuant to 28 U.S.C. § 1446(d).

6.     This action is properly removable to the U.S. District Court for the Central District of California pursuant to 28 U.S.C. § 1446(a) because the Superior Court of the State of California, County of Riverside, in which this case was brought, lies within this district.

7.     Notices of removal are subject to the same general pleading standards applicable to complaints under Rule 8(a) of the Federal Rules of Civil Procedure. Accordingly, such notices need not attach evidence or meet a burden of proof, and there need only be a "short and plain statement of the grounds for removal." *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 86-87 (2014); 28 U.S.C. § 1446(a). As discussed below, all requirements for removal under CAFA and based upon traditional diversity jurisdiction are met.

**JURISDICTION UNDER THE CLASS ACTION FAIRNESS ACT**

8.      This action is removable to this Court pursuant to 28 U.S.C. § 1332(d), as amended by CAFA, and 28 U.S.C. § 1453. Pursuant to 28 U.S.C. §§ 1332(d) and 1453, a putative class action commenced after February 18, 2005, may be removed to the appropriate federal court if: (1) any member of the putative class is a citizen of a state different from any defendant (*i.e.*, minimal diversity exists); (2) there are at least 100 members in the putative class; and (3) the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interests and costs. 28 U.S.C. §§ 1332(d)(2), (5)(B), 1453; *Dart*, 574 U.S. at 84-85.

9.      Unlike traditional diversity jurisdiction in non-class actions, there is no presumption against jurisdiction in matters removed under CAFA. *Dart*, 574 U.S. at 89 ("It suffices to point out that no antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court."); *see also* S. Rep. No. 109-14, p. 43 (2005) (CAFA's "provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant").

10.      With these standards in mind, all requirements for removal under CAFA are met here, as detailed further below.

**This is a Putative Class Action**

11.      Under CAFA, a class action means "any civil action filed under Rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by one or more representative persons as a class action." 28 U.S.C. § 1332(d)(1)(B). California Code of Civil Procedure § 382 authorizes an action to be brought by one or more representative persons as a class action. Plaintiff has filed this action as a putative class action pursuant to California Code of Civil Procedure § 382. (Cmplt. p. 24, ¶ 1.)

12.      Plaintiff seeks to represent class members for alleged unlawful conduct dating back four (4) years from the date of filing the lawsuit. (Cmplt. p. 10-11, ¶ 35.)

DN 7362823.1

As described below, however, except where the applicable statute of limitations provides for a shorter duration, the relevant time period of this lawsuit and, therefore, this Notice, extends only to June 26, 2020.

13.   Defendant is a party to a class action settlement in *De Cabrera v. Swift Beef Co.*, Case No. 5:18-cv-02551-PSG-E (C.D. Cal.) and *Duron v. JBS USA Food Company Holdings*, Case No. 5:19-cv-00702-PSG-E (C.D. Cal.). (*See* Joint Stipulation of Settlement Agreement and Release (the "Agreement"), ECF No. 41-1, Case No. 5:18-cv-02551-PSG-E, attached as **Exhibit B**.) The Agreement defines the settlement class in pertinent part as "[a]ll current and former non-exempt employees employed by [Swift Beef Company] in the State of California at any time from November 2, 2014, to the date the Court grants Preliminary Approval," (*Id.* p. 2, ℙ 4) which occurred on June 25, 2020. (*De Cabrera*, Case No. 5:18-cv-02551-PSG-E (ECF No. 43).) The Agreement states that the participating class members' release of claims, effective through preliminary approval, includes all:

> claims, liabilities, demands, causes of actions, rights, and obligations for (1) failure to provide meal periods; (2) failure to provide rest periods; (3) failure to pay overtime wages; (4) failure to pay minimum wages; (5) failure to maintain required records; (6) failure to provide accurate wage statements; (7) failure to pay wages upon separation of employment; (8) any related claims, including for unfair business practices in violation of California's Business and Professions Code, Section 17200, and any and all claims under federal or state law, statutory, constitutional, contractual or common law claims that were or could have been pled based upon the factual allegations contained in the Litigation . . . . The Released Claims include all claims described above—that is, those claims that are or reasonably could have been asserted in the Litigation . . . whether known or unknown, which may arise out of or directly or indirectly relate to such facts alleged in the Litigation, including all claims for wages, overtime pay, premium pay such as meal and rest period premiums, final wages, waiting time penalties, minimum wages, penalties such as penalties for incorrect wage statements, wages due on termination, any and all equitable relief, liquidated damages or any pay, premium, or civil or statutory penalty provided for under the California Labor Code,

California's Business and Professions Code, or other applicable wage-and-hour statute.

(*Id.* pp. 7-8, ¶ 29.) The Agreement received final approval from the Court on November 23, 2020. (*De Cabrera*, Case No. 5:18-cv-02551-PSG-E (ECF No. 56).)

14.     In short, while Plaintiff seeks to represent class members for alleged unlawful conduct dating back four (4) years from the date of filing, for purposes of this Notice only, Defendant assumes the scope of the putative class extends only to June 26, 2020 (the "Relevant Time Period"), except where the applicable statute of limitations provides for a shorter duration.

## Minimal Diversity Exists

15.     "[U]nder CAFA, complete diversity is not required; 'minimal diversity' suffices." *Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1021 (9th Cir. 2007). Minimal diversity exists if any putative class member is a citizen of a state different from any defendant. 28 U.S.C. § 1332(d)(2)(A). Here, the requisite minimal diversity exists.

16.     Plaintiff is a resident of California. (Cmplt. p. 3, ¶ 3.) "[W]hile residence and citizenship are not the same, a person's place of residence is *prima facie* evidence of his or her citizenship." *McEntire v. Kmart Corp.*, No. CIV 09-0567 JB/LAM, 2010 WL 553443, *3 (D.N.M. Feb. 9, 2010). "[P]roof that a person is a resident of a state is *prima facie* evidence that he is a citizen thereof, and supposedly shifts the burden of showing that his domicile and citizenship is other than the place of his residence to him who alleges it." 13E Fed. Prac. & Proc. Juris. § 3611 (3d ed.) (quotation marks and citation omitted). Based on Plaintiff's allegation regarding his residency (*see* Cmplt. p. 3, ¶ 3), he is a citizen of California. The putative class is comprised of current and former employees of Defendant in California. (Cmplt. p. 10-11, ¶ 35.) Defendant estimates that the putative class consists of at least 1,123 non-exempt employees who worked, or are currently working, at its production facility in Riverside, California during the Relevant Time Period. (*See* Declaration of Araceli

1  Burket ("Burket Dec."), attached as **Exhibit C**, at ❡ 4.)[1] Plaintiff alleges that "more

2  than two-thirds of putative class members are California citizens." (Cmplt. p. 3, ❡ 2.)

3      17.    Defendant is a citizen of a state other than California. A corporation shall

4  be deemed to be a citizen of every state by which it has been incorporated and of the

5  state where it has its principal place of business. 28 U.S.C. § 1332(c)(1). A

6  corporation's principal place of business "refers to the place where the corporation's

7  high level officers direct, control, and coordinate the corporation's activities." *Hertz*

8  *Corp. v. Friend*, 559 U.S. 77, 80 (2010).

9      18.    Defendant is now, and was at the time this action was commenced,

10 incorporated in the State of Delaware. (Declaration of Dylan Moore, attached as

11 **Exhibit D**, at ❡ 2.) Defendant's principal place of business is now, and was at the time

12 this action was commenced, in the State of Colorado. (*Id.*) Therefore, Defendant is a

13 citizen of the States of Delaware and Colorado.

14     19.    Because Plaintiff and two-thirds of putative class members are citizens

15 of California, and Defendant is a citizen of Delaware and Colorado, and, thus, at least

16 one member of the putative class is a citizen of a state different from at least one

17 defendant, this putative class action satisfies CAFA's minimal diversity requirements.

18 *See* 28 U.S.C. § 1332(d)(2)(A).

19          **There Are More Than 100 Members in the Putative Class**

20     20.    Plaintiff seeks to represent six classes, collectively referred to as the

21 "California Class." (Cmplt. p. 10-11, ❡ 35.) The California Class is comprised of six

22 subclasses: (1) "Minimum Wage Class," (2) "Meal Period Class," (3) "Rest Period

23 Class," (4) "Pay Day Class," (5) "Wage Statement Class," and (6) "Waiting Time

24 Class." (*Id.*)

25 _____

26 [1] This Notice of Removal is based on personnel information through October 13, 2022, and the same data supporting Defendant's Notice of Removal of State Court Civil Action in *Garcia v. Swift Beef Company*, Case No. 5:22-cv-01825-PSG-E (C.D.

27 Cal.). (*See* Burket Dec. ❡ 3.) Defendant easily meets CAFA's amount in controversy requirement, even using conservative estimates through October 13, 2022, though the

28 actual size of the putative class and possible amount in controversy are significantly more as of the date of this filing.

21. Within the Relevant Time Period, considering Plaintiff's definitions of the proposed California class and subclasses, Defendant estimates there are at least 1,123 putative class members, comprised of hourly, temporary, and other non-exempt employees, more than enough required for jurisdiction under CAFA. (*See* Burket Dec. ¶ 4.) *See also* 28 U.S.C. § 1332(d)(5)(B) (requiring at least 100 proposed members for CAFA jurisdiction).

**The Amount in Controversy Exceeds $5,000,000, Excluding Interest and Costs**

22. The amount in controversy in a putative class action is determined by aggregating the claims of all members of the putative class. *See* 28 U.S.C. § 1332(d)(6). Where, as here, a complaint does not allege an amount in controversy, a notice of removal need only include "a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart*, 574 U.S. at 89. In alleging the amount in controversy, a defendant may rely on reasonable assumptions, follow "a reasonable chain of logic," and make reasonable calculations. *LaCross v. Knight Transp. Inc.*, 775 F.3d 1200, 1201 (9th Cir. 2015) ("[D]efendants relied on a reasonable chain of logic . . . to establish that the amount in controversy exceeds $5 million.").

23. Although "the amount in controversy is determined as of 'the time of removal,'" the Ninth Circuit has clarified "the amount in controversy is not limited to damages incurred prior to removal—for example, it is not limited to wages a plaintiff-employee would have earned before removal (as opposed to after removal). Rather, the amount in controversy is determined by the complaint operative at the time of removal and encompasses all relief a court may grant on that complaint if the plaintiff is victorious." *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 414 (9th Cir. 2018); *Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d 785, 793 (9th Cir. 2018) (applying Ninth Circuit's holding in *Chavez* to putative class action involving removal under CAFA).

DN 7362823.1

24.     Defendant does not make any admission of liability or damages with respect to any aspect of this case and, in this Notice, takes no position as to the proper legal tests applicable to Plaintiff's claims or asserted damages. However, given Plaintiff's claims and allegations on behalf of the putative class, the amount in controversy in this case exceeds the sum of $5,000,000.

<u>Plaintiff's Claim for Failure to Pay Minimum Wage</u>

25.     Plaintiff seeks unpaid minimum wages for time that putative members of the class allegedly worked without compensation at the applicable minimum wage. (Cmplt. p. 14-15, ¶¶ 37-44.) Plaintiff alleges employees were not compensated for all hours worked due to: (1) Defendant's alleged policy and practice of requiring employees "to line up to wait to undergo and undergo off-the-clock COVID-19 temperature checks"; and (2) Defendant's alleged policy and practice of requiring employees "to keep their employer-issued walkie-talkies on their person, monitored, and to respond to calls received on them at all times during their shift, including while off-the-clock during their meal breaks." (Cmplt. p. 14-15, ¶ 41.)

*Calculation Based on Temperature Check Allegations*

26.     Plaintiff alleges that since the outbreak of COVID-19, Defendant has "employed policies, practices, and/or procedures . . . requiring Plaintiff and the Minimum Wage Class to line up to wait to undergo and undergo off-the-clock COVID-19 temperature checks." (*Id.* p. 5, ¶ 15; p. 15, ¶ 41.)

27.     Plaintiff does not allege any specific amount of uncompensated time resulting from COVID-19 temperature checks. Solely for the purpose of determining the amount in controversy, Defendant estimates that putative class members had an average of thirty minutes per workweek, or approximately six minutes each shift, of unpaid time for the alleged off-the-clock COVID-19 temperature checks during the Relevant Time Period. *See Bartholomew v. Goodman Mfg. Co., L.P.*, No. 2:22-CV-00027-TLN-AC, 2022 WL 4355147, at *5 (E.D. Cal. Sept. 20, 2022) (the defendants' assumption of thirty minutes of unpaid time per employee per workweek undergoing

COVID-19 health screens was reasonable based upon plaintiff's allegation of a uniform policy and practice of uncompensated COVID-19 temperature checks). Defendant's assumption of six minutes of unpaid time per shift per employee is reasonable due to Plaintiff's policy and practice allegations.

28.    Defendant estimates that 1,123 putative class members worked a total of at least 158,652 shifts since June 26, 2020. (Burket Dec. ¶ 4.) With an average minimum wage of approximately $14.25/hour since June 26, 2020,[2] there is an estimated amount in controversy of $226,079 based on failure to pay minimum wage for all hours worked due to the alleged unlawful practice of requiring unpaid COVID-19 checks (six minutes of alleged unpaid time per shift × $14.25/hour avg. minimum wage × 158,652 shifts).

*Calculation Based on Allegations of Unpaid Work During Meal Periods*

29.    Plaintiff additionally alleges minimum wage violations based on Defendant's alleged "policies, practices, and/or procedures" of "[r]equiring Plaintiff and the Minimum Wage Class to keep their employer-issued walkie-talkies on their person, monitored, and to respond to calls received on them at all times during their shift, including while off-the-clock during their meal breaks." (Cmplt. pp. 5-6, ¶ 15; pp. 14-15, ¶ 41.)

30.    "It is well established that an employee's on-call or standby time may require compensation." *Mendiola v. CPS Sec. Sols., Inc.*, 60 Cal. 4th 833, 840, 340 P.3d 355, 359 (2015). "Unless the employee is relieved of all duty during a 30-minute meal period, the meal period shall be considered an 'on duty' meal period and counted as time worked." Cal. Code Regs. tit. 8, § 11090(11)(C). Plaintiff alleges that these uncompensated meal periods were compensable because Plaintiff and the Minimum

---

[2] As Defendant has more than 25 employees, the applicable minimum wage was $13/hour in 2020, $14/hour in 2021, $15/hour in 2022, and $15.50/hour in 2023. *See* Cal. Lab. Code § 1182.12(b)(1)(D)-(F). The average minimum wage in effect since June 26, 2020, through filing this Notice of Removal, is approximately $14.25/hour.

DN 7362823.1
NOTICE OF REMOVAL OF STATE COURT CIVIL ACTION

Wage Class were required "to be engaged, suffered, or permitted to work" at all times during meal periods. (Cmplt. pp. 14-15, ¶¶ 39-42.)

31.    District Courts have found that a 100% violation rate can be assumed where appropriate based on the allegations in the Complaint for purposes of CAFA removal jurisdiction. For example, in *Mejia v. DHL Express (USA), Inc.*, No. 15-cv-890-GHK-JCx, 2015 WL 2452755, at *4 (C.D. Cal. May 21, 2015), the plaintiff "allege[d] that Defendant 'adopted and maintained uniform policies, practices and procedures' that caused the purported violations of California's rest period law." The court explained that "[i]t is not unreasonable to assume that when a company has unlawful policies and they are uniformly 'adopted and maintained,' then the company may potentially violate the law in each and every situation where those policies are applied." *Id. See also Altamirano v. Shaw Indus., Inc.*, No. C-13-0939 EMC, 2013 WL 2950600, *11 (N.D. Cal. June 14, 2013) (100% rate approved when "meal break policy resulted in non-exempt employees not receiving meal periods"); *Alvarez v. Limited Express, LLC*, No. 07CV1051 IEG (NLS), 2007 WL 2317125, at *3 (S.D. Cal. Aug. 8, 2007) (100% rate approved when alleged rest period violations made it "virtually impossible for defendant's employees to take meal periods and rest breaks"); *Herrera v. Signature Flight Support LLC*, No. 2:22-cv-03082-SSS (AGRx), 2022 WL 4225376, at *3 (C.D. Cal. Sept. 13, 2022) (finding the nature of Plaintiff's allegations that the defendant was in "constant violation of meal and rest period without any qualifying language" when requiring class members to monitor and be responsive to work communication devices supported a 100% violation rate); *Sanchez v. Russell Sigler, Inc.*, No. CV1501350, 2015 WL 12765359, at *5 (C.D. Cal. Apr. 28, 2015) (finding allegations that Defendant violated meal and rest periods "at all material times" supported a 100% violation rate); *Feltzs v. Cox Commc'ns Cal., LLC*, No. SACV192002, 2020 WL 133687, at *4 (C.D. Cal. Jan. 13, 2020) (finding allegations of "consistently" violating meal periods supported a 100% rate); *Deaver v. BBVA Compass Consulting & Benefits, Inc.*, No. 13-CV-00222, 2014 WL 2199645,

DN 7362823.1

at *7 (N.D. Cal. May 27, 2014) (finding allegations of "consistent and universal meal period violations" supported a 100% violation rate); *Duberry v. J. Crew Grp., Inc.*, No. 214CV08810, 2015 WL 4575018, at *6 (C.D. Cal. July 28, 2015) (finding allegations of "uniform policy," "systematic scheme," and violations occurring at "all material times" supported 100% violation rate for meal and rest break claims); *Lucas v. Michael Kors (USA), Inc.*, No. CV 18-1608-MWF (MRWx), 2018 WL 2146403, at *4 (C.D. Cal. May 9, 2018); *Lopez v. Aerotek, Inc.*, No. SACV 14-00803-CJC, 2015 WL 2342558, at *2 (C.D. Cal. May 14, 2015) (approving use of a 100% violation rate based on an allegation that "Defendants employed their workers for work periods of more than five hours without a meal period of not less than 30 minutes and failed to compensate them for such meal periods").

32.    Here, based on the allegations in the Complaint, and assuming those allegations are true, a 100% violation rate can reasonably be assumed (*i.e.*, employees were required to remain on-call during every meal break). Specifically, Plaintiff alleges Defendant maintained "policies, practices, and/or procedures" that required Plaintiff and class members to "keep their employer-issued walkie-talkies on their person, monitored, and to respond to calls received on them *at all times during their shift*." (Cmplt. p. 15, ¶ 41(b) (emphasis added); p. 6, ¶ 15(b).) If Defendant maintained policies, practices, and procedures requiring Plaintiff and members of the subclass to remain on call *at all times during shifts,* as alleged, then it may be reasonably assumed, for purposes of CAFA's amount in controversy, 30 minutes of unpaid work *each meal break. See, e.g.*, *Mejia*, 2015 WL 2452755, at *4; *Altamirano*, 2013 WL 2950600, *11; *Alvarez*, 2007 WL 2317125, at *3.

33.    During the Relevant Time Period, regular employees worked 146,659 shifts longer than five hours, temporary employees worked 1,635 shifts longer than 8 hours,[3] and other hourly, non-exempt employees worked 6,569 shifts longer than 5

---

[3] Because Defendant is without data as to the number of shifts temporary employees worked that were longer than five hours, for purposes of this Notice, it uses the number of shifts that were longer than 8 hours (a more conservative estimate).

hours. (Burket Dec. ¶ 5-7.) Defendant thus estimates that since June 26, 2020, class members worked a total of at least 154,863 shifts that were longer than five hours (thus entitling them to at least one meal period). (*Id.*) Assuming employees were required to keep and monitor their walkie-talkies at all times during their shifts and were not relieved of all duties during each 30-minute meal period, as Plaintiff alleges, and utilizing an average minimum wage of $14.25/hour, Defendant estimates an amount in controversy of $1,103,398 in unpaid minimum wages for uncompensated meal periods (154,863 shifts × $14.25/hour × 30 minutes).

*Minimum Wage Liquidated Damages Calculation*

34.    Plaintiff also seeks liquidated damages pursuant to Labor Code § 1194.2 in an amount equal to unpaid minimum wages. (Cmplt. p. 15, ¶ 44; p. 25, ¶ 4.) *See Michael Kors*, 2018 WL 2146403, at *6 (factoring liquidated damages into the unpaid minimum wage claim for purposes of calculating the amount in controversy). Plaintiff's class claim for minimum wages due to unpaid COVID-19 temperature checks puts at least $226,079 in controversy, and his class claim for minimum wages due to unpaid hours worked during meal periods puts at least $1,103,398 in controversy. As such, a total amount of $1,329,477 is in controversy in liquidated damages for the minimum wage violation claims.

35.    The total amount in controversy for the minimum wage claim, including unpaid minimum wages and liquidated damages, is at least $2,658,954. Notably, this estimate is Defendant's estimate of the amount in controversy only through October 13, 2022, and the amount in controversy is expected to significantly increase through trial. *See* Paragraph 23, *supra*.

|  | Amount in controversy |
|---|---|
| Unpaid minimum wages due to COVID-19 checks | $226,079 |
| Unpaid minimum wages due to uncompensated meal breaks | $1,103,398 |
| Liquidated damages | $1,329,477 |
| Total: | $2,658,954 |

<u>Plaintiff's Meal Break Premium Claim</u>

36.    California law provides that if an employer fails to provide an employee an uninterrupted meal period in which the employee is relieved of *all duty*, the employee may recover an additional one hour of pay at the employee's regular rate of pay for each workday in which a meal break violation occurs. *See* Cal. Labor Code § 226.7. (*See also* Cmplt. pp. 15-16, ¶ 47.) Premium pay is in addition to compensation owed for work performed. *See Brinker Rest. Corp. v. Superior Ct.*, 53 Cal. 4th 1004, 1040, 273 P.3d 513, 536 (2012) ("The employer that refuses to relinquish control over employees during an owed meal period violates the duty to provide the meal period and owes compensation [and premium pay] for hours worked." (alteration in original)).

37.    Under California law, "employees must not only be relieved of work duties [during breaks], but also be freed from employer control over how they spend their time." *Augustus v. ABM Sec. Servs., Inc.*, 2 Cal. 5th 257, 270, 385 P.3d 823, 832 (2016), *as modified on denial of reh'g* (Mar. 15, 2017); *see also Brinker*, 273 P.3d at 535 (stating that the "fundamental employer obligations associated with a meal break" are "to relieve the employee of all duty and relinquish any employer control over the employee and how he or she spends the time"). "[I]f employees are effectively 'on call' during meal or rest periods because conditions require them to be ready and capable of being summoned to action, then the breaks provided are not control-free and, consequently, not legally compliant." *Perez v. Leprino Foods Co.*, No. 1:17-cv-00686-AWI-BAM, 2021 WL 53068, at *10 (E.D. Cal. Jan. 6, 2021).

DN 7362823.1

38.    As noted above, based on the allegations in the Complaint of Defendant's policy, practice, and procedure of requiring Plaintiff and putative class members to always keep and monitor their walk-walkies, Defendant reasonably estimates a 100% meal-period violation rate. *See* Paragraphs 31-32, *supra.* Defendant, therefore, estimates that Plaintiff's meal break class claim has placed at least $2,915,500 in controversy, as explained below, based upon alleged unpaid premium pay due under Labor Code § 226.7.

39.    Defendant estimates 840 regular hourly employees worked at least 146,659 shifts that were more than 5 hours during the Relevant Time Period. (Burket Dec. ¶ 5.) With an average hourly rate of $18.69 (*see id.*), the total amount in controversy for regular hourly employees in the putative class is at least $2,741,056 (146,659 shifts × $18.69/hour).

40.    The same computation for temporary employees and other non-exempt employees in the putative class results in at least $28,481 and $145,963, respectively, in controversy.[4] (*See* Burket Dec. ¶¶ 6-7.) Combined, the total amount in controversy for Plaintiff's meal-period liability class claim is at least $2,915,500 during the Relevant Time Period. The amount in controversy is expected to increase through trial because the foregoing estimates are only through October 13, 2022. *See* Paragraph 23, *supra*.

| Employee type | Number of Shifts | Average hourly wage | Amount in controversy |
|---|---|---|---|
| Regular, hourly | 146,659 | $18.69/hour | $2,741,056 |
| Temporary | 1,635 | $17.42/hour | $28,481 |
| Other hourly-paid, non-exempt | 6,569 | $22.22/hour | $145,963 |
| | | Total: | $2,915,500 |

---

[4] *See* note 3, *supra*.

DN 7362823.1
NOTICE OF REMOVAL OF STATE COURT CIVIL ACTION

Plaintiff's Rest Break Premium Claim

41.    As with meal breaks, California law provides that if an employer fails to provide an employee with a required rest period, the employee may recover an additional one hour of pay at the employee's regular rate of pay for each workday in which a rest break violation occurs.[5] *See* Cal. Labor Code § 226.7. (*See also* Cmplt. p. 17, ⁋ 55.)

42.    Plaintiff alleges "Defendant employed policies, practices, and/or procedures" that resulted in Plaintiff and putative Rest Period Class members from being provided with all legally required and compliant rest periods and failure to pay one hour of pay at the employee's regular rate of pay in lieu thereof. (*See* Cmplt. pp. 8-9, ⁋⁋ 25, 27; pp. 17-18, ⁋⁋ 56-57.) Specifically, Plaintiff alleges he and the putative Rest Period Class were required to "keep their employer-issued walkie-talkies on their person, monitored, and to respond to calls received on them at all times during their shift including during breaks." (*See* Cmplt. p. 18, ⁋ 56(a).)

43.    Here, given the remaining allegations in the Complaint, and assuming those allegations are true, an assumed violation rate of 100% is plausible and warranted for CAFA removal purposes because putative class members were required to keep and monitor their walkie-talkies at all times pursuant to Defendant's policies, practices, and procedures. *See* Paragraphs 31-32, *supra*.

44.    Defendant estimates that the total amount in controversy for regular hourly employees in the putative class is at least $2,986,123 for rest break violations. Specifically, Defendant estimates that 840 hourly employees worked at least 149,634 shifts longer than 3.5 hours, thus entitling employees to at least one rest break, during the Relevant Time Period. (Burket Dec. ⁋ 5.) With an average hourly rate of $18.69

---

[5] Employees may recover two hours of premium pay in "a single work day for meal period and rest break violations: one if any meal period violations occur in a work day and one if any rest break violations occur in a work day." *Marlo v. United Parcel Serv., Inc.*, No. CV 03-04336 DDP RZX, 2009 WL 1258491, at *7 (C.D. Cal. May 5, 2009).

(*see id.*), the total amount in controversy for hourly employees in the putative Rest Period Class is at least $2,796,659 (149,634 shifts × $18.69/hour average wage).

45.    The same computation for temporary employees and other non-exempt employees in the class results in at least $39,613 and $149,851, respectively, in controversy, as shown in the table below. (*See* Burket Dec. ⁋⁋ 6-7.)

46.    Defendant, therefore, estimates that Plaintiff's rest-break liability class claim has placed at least $2,986,123 in controversy, but this estimate will increase through trial. *See* Paragraph 23, *supra*.

| Employee type | Number of Shifts | Average hourly wage | Amount in controversy |
|---|---|---|---|
| Regular, hourly | 149,634 | $18.69/hour | $2,796,659 |
| Temporary | 2,274 | $17.42/hour | $39,613 |
| Other hourly-paid, non-exempt | 6,744 | $22.22/hour | $149,851 |
| | | Total: | $2,986,123 |

Plaintiff's Claim for Failure to Timely Pay Earned Wages During Employment

47.    Plaintiff alleges "[a]s a derivative of Plaintiff's claims above . . . Defendants failed to timely pay Plaintiff's and the Pay Day Class' earned wages (including minimum wages, meal period premium wages, and/or rest period premium wages), in violation of Labor Code section 204." (Cmplt. p. 19, ⁋ 63.) Plaintiff further alleges "Defendants' failure to timely pay Plaintiff and the Pay Day Class their earned wages in accordance with Labor Code section 204 was willful." (*Id.* ⁋ 65.) Plaintiff alleges he and the putative Pay Day Class are entitled to recover civil penalties under Cal. Labor Code § 210 for failure to timely pay earned wages during employment. (*Id.* ⁋ 67.)

48.    Under Labor Code § 210, every person who fails to pay the wages of each employee as provided in Section 204 shall be subject to a penalty of $200 for each willful or intentional violation, plus 25 percent of the amount unlawfully withheld, for each failure to pay each employee. Cal. Lab. Code § 210(a). These

penalties are in addition to the recovery of underpaid wages and liquidated damages. The applicable statute of limitations for a § 204 violation is one year. *See* Cal. Code Civ. Proc. § 340(a). Statutory penalties under Labor Code § 210 are properly considered for CAFA removal purposes. *See, e.g.*, *McCollum v. TGI Friday's, Inc.*, No. SACV2200392FWSJDE, 2022 WL 2663870, at *8 (C.D. Cal. July 11, 2022); *Cruz v. Mohawk Indus., Inc.*, No. 120CV01510JLTEPG, 2022 WL 93338, at *5 (E.D. Cal. Jan. 10, 2022); *Evers v. La-Z-Boy Inc.*, No. 21CV2100-LL-BLM, 2022 WL 2966301, at *8 (S.D. Cal. July 27, 2022).

49.    Among Plaintiff's claims, as explained above, Plaintiff alleges that putative class members were not properly paid all wages due for every shift. Specifically, Plaintiff claims Defendant failed to compensate Plaintiff and the putative Pay Day Class members for on duty meal periods and for required COVID-19 temperature checks and failed to pay meal and rest break premium pay. (*See generally* Cmplt. pp. 14-18.) As such, it is reasonable to assume that Plaintiff alleges that Defendant willfully failed to timely pay Plaintiff's and the Pay Day Class's earned wages for every pay period. *Rapisura v. BMW of N. Am., LLC*, No. 2:22-CV-00455 WBS AC, 2022 WL 1557001, at *4 (E.D. Cal. May 17, 2022) ("Defendant reasonably assumes that plaintiff and putative class members were not timely paid wages for every pay period.").

50.    There are an estimated 575 total putative Pay Day Class members, including 542 hourly employees and 33 other hourly, non-exempt employees going back to January 9, 2022 (one year before Plaintiff filed the Complaint).[6] (Burket Dec. ¶¶ 5-7.) Regular hourly employees are paid on a weekly basis, and these employees worked an estimated 16,379 workweeks since January 9, 2022. (*Id.* ¶ 5.) Other hourly,

---

[6] Defendant has extrapolated these estimates using a representative sample of 13 months of personnel data from September 13, 2021, through October 13, 2022. *See Hudson v. Sterling Jewelers Inc.*, No. CV 17-9301 DSF (JEMX), 2018 WL 1662500, at *1 (C.D. Cal. Apr. 4, 2018) (citing *LaCross*, 775 F.3d at 1202-03) ("A defendant may establish the amount in controversy by relying on admissible statistical evidence taken from a representative sample and extrapolated to calculate the potential liability for the full class.").

non-exempt employees have worked an estimated 857 workweeks since January 9, 2022; these employees were paid on a bi-weekly basis. (*Id.* ¶ 3.) Thus, Defendant assumes there have been 16,807 total pay periods among putative class members since January 9, 2022, including 16,379 pay periods for regular employees and 428 pay periods for other hourly, non-exempt employees.

51.     Accordingly, Plaintiff's Complaint places at least $3,361,400 in controversy stemming from the civil penalties under Labor Code § 210 ($200 penalty for willful violations × 16,807 pay periods). Notably, Defendant's estimate does not include the 25% of allegedly withheld wages that Plaintiff and the putative class members can claim, and thus Defendant's estimate is lower than what would be justified.

Plaintiff's Claim for Failure to Provide Complete and Accurate Wage Statements

52.     Plaintiff alleges that he and putative class members were not provided with complete and accurate wage statements. (Cmplt. p. 20-22, ¶¶ 68-77.) He alleges "[a]s a derivative of Plaintiff's claims above . . . Defendants failed to provide accurate wage and hour statements to [Plaintiff] and the Wage Statement Class who were subject to Defendants' control for uncompensated time and who did not receive all their earned wages (including minimum wages, meal period premium wages, and/or rest period premium wages), in violation of Labor Code section 226." (*Id.* p. 20, ¶ 71.) Plaintiff alleges the failure to provide accurate wage statements was "knowing and intentional." (*Id.* pp. 20-21, ¶ 73.)

53.     Under Labor Code Under § 226(e), "[a]n employee suffering injury as a result of a knowing and intentional failure by an employer to comply with subdivision (a) [requiring issuance of accurate wage statements] is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of four thousand dollars

DN 7362823.1

1  ($4,000)." The applicable statute of limitations for a violation of Labor Code § 226 is

2  one year. *See* Cal. Code Civ. Proc. § 340(a).

3      54.    Among Plaintiff's claims, as explained above, Plaintiff alleges that

4  putative class members worked unpaid time and were not paid meal and rest break

5  premium pay *every shift*. (*See generally* Cmplt. pp. 14-18.) Consequently, and

6  because his claim is "derivative" of his claims above, it is reasonable to assume that

7  Plaintiff alleges that each wage statement issued to putative class members was

8  inaccurate. *Altamirano*, 2013 WL 2950600, at *10 (holding "the assumption that there

9  was at least one violation per employee per pay period is a reasonable one."); *see also*

10 *Michael Kors*, 2018 WL 2146403, at *4.

11     55.    Defendant estimates 575 employees have worked a total of 16,807 total

12 pay periods within the one-year applicable statute of limitations period. *See* Paragraph

13 50, *supra*. As such, Defendant estimates there have been 575 initial violations and

14 16,232 subsequent violations. The total estimated amount in controversy for

15 Plaintiff's wage statement class claim is, therefore, at least $1,651,950 (575 initial

16 pay period violations × $50 + 16,232 subsequent pay period violations × $100).

17                      Plaintiff's Waiting Time Claim

18     56.    Plaintiff asserts a waiting time claim on behalf of the putative class,

19 alleging that members of the putative class were not paid all wages earned upon

20 separation of employment in violation of Labor Code § 203. (Cmplt. pp. 22-23, ¶¶

21 78-87.) Plaintiff alleges these violations were willful and intentional. (*Id.* ¶ 82.)

22     57.    Waiting time penalties under Cal. Lab. Code § 203(a) are calculated at

23 an employee's final daily rate of pay (*i.e.*, the employee's final wage rate multiplied

24 by the employee's average shift length) multiplied by the number of days of waiting

25 time penalties, up to a maximum of 30 days. *See Mamika v. Barca*, 68 Cal. App. 4th

26 487, 491-93 (Cal. App. 1998).

27     58.    Plaintiff's waiting time penalties claim is derivative of Plaintiff's other

28 Labor Code claims. Because, as noted above, Plaintiff alleges that each putative class

NOTICE OF REMOVAL OF STATE COURT CIVIL ACTION

member was underpaid each shift, Plaintiff necessarily alleges that none of the putative Waiting Time Class members was paid all wages owed upon separation of employment. Each putative class member that was separated from employment, therefore, would be entitled to waiting time penalties equal to 30 days' of wages. (Cmplt. pp. 22-23, ¶¶ 82-84.) *See* Cal. Labor Code § 203(a); *Giannini v. Northwestern Mut. Life Ins. Co.*, 2012 WL 1535195, *4 (N.D. Cal. April 20, 2012) ("Defendants can properly assume that all members of the former employee subclass were entitled to the maximum waiting time penalties under Labor Code section 203."). *See also Gonzalez v. Comenity Capital Bank*, 1:19-CV-00342-AWI-EPG, 2019 WL 5304924, at *5 (E.D. Cal. Oct. 21, 2019).

59.    Defendant estimates that at least 386 regular hourly employees in the putative class separated employment during the Relevant Time Period. (Burket Dec. ¶ 5.) These employees earned an average wage of $18.69 per hour and worked an average shift length of 7.9 hours. (*Id*.) As such, the estimated amount in controversy for these hourly employees is $1,709,799 (386 employees × $18.69/hour × 7.9 hours × 30 days).

60.    Defendant estimates that at least 237 temporary employees and 16 other hourly, non-exempt employees in the putative class separated employment during the Relevant Time Period. (Burket Dec. ¶¶ 6-7.) Temporary employees earned an average wage of $17.42 per hour and worked an average shift length of 9.0 hours, and other hourly, non-exempt employees earned an average wage of $22.22 per hour and worked an average shift length of 8.2 hours, and they both received time-and-a-half for shifts exceeding 8 hours in a day.[7] (*Id*.) The estimated amount in controversy for

---

[7] California law requires that employers pay overtime at the rate of one and one-half times the employee's regular rate of pay for all hours worked in excess of eight hours in any workday. Cal. Labor Code § 510(a). As such, on average, temporary employees were entitled to one hour of overtime per shift and other hourly, non-exempt employees were entitled to 0.2 hours of overtime per shift.

DN 7362823.1

temporary employees is, therefore, $1,176,633,[8] and the estimated amount in controversy for the other hourly, non-exempt employees is $88,524.[9]

61.    In total, the estimated amount in controversy for Plaintiff's waiting time penalty claims is at least $2,974,956. This estimate is only the amount in controversy through October 13, 2022, and the amount in controversy is expected to increase through trial. *See* Paragraph 23, *supra*.

|  | Number of separated employees | Average hourly wage | Average shift length (hours) | Amount in controversy |
|---|---|---|---|---|
| Regular, hourly employees | 386 | $18.69/hour | 7.9 | $1,709,799 |
| Temporary employees | 237 | $17.42/hour | 9 | $1,176,633 |
| Other hourly-paid, non-exempt | 16 | $22.22/hour | 8.2 | $88,524 |
|  |  |  | Total: | $2,974,956 |

Plaintiff's Attorneys' Fees

62.    Plaintiff asserts that he and the putative class members are entitled to recover attorneys' fees. (Cmplt. p. 1, ⁋ 1; p. 15 ⁋ 44; p. 22, ⁋ 77.) "[W]here an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees may be included in the amount in controversy." *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998). The amount in controversy may include attorneys' fees incurred through resolution of the case, not just fees incurred at the time of removal. *Fritsch*, 899 F.3d 785 at 794.

63.    Courts in this Circuit have established 25% of the common fund as a benchmark award for attorneys' fees. *See, e.g., Hanlon v. Chrysler Corp.*, 150 F.3d

---

[8] 237 employees × ($17.42/hour × 8 hours + $26.13/hr overtime rate × 1.00 hour) × 30 days.

[9] 16 employees × ($22.22/hour × 8 hours + $33.33/hr overtime rate × 0.2 hours) × 30 days.

DN 7362823.1

1011, 1029 (9th Cir. 1998). In fact, in similar wage and hour class action cases, Plaintiff's counsel has sought attorneys' fees equal to 25% of the amounts recovered. *See, e.g.*, Motion for Final Approval of Requested Attorneys' Fees and Costs, *Altamirano v. Shaw Industries, Inc.*, Case No. C13-00939-HSG (N.D. Cal. Oct. 13, 2015) (ECF No. 89-1), attached as **Exhibit E**, at 8-10 (requesting attorneys' fee award equal to 25% gross settlement amount). Courts, however, commonly award more than 25% of the common fund. *See, e.g.*, *In Re Activision Secs. Litig.*, 723 F. Supp. 1373, 1378 (N.D. Cal. 1989) (awarding attorneys' fees equal to 30% of common fund and compiling cases where fee awards ranged between 25% and more than 40%).

64.    It is plausible to assume that Plaintiff will seek an attorneys' fee award that is at least 25% of the amount recovered by Plaintiff and the putative class members. In other words, Plaintiff's demand for attorneys' fees places at least another $4,137,220 in controversy (*i.e.*, 25% of the amounts in controversy identified above).

The Total Amount in Controversy Exceeds $5,000,000

65.    Without admitting that Defendant engaged in any improper conduct, that Plaintiff's claims have any merit, that this action is maintainable as a class action under Rule 23 of the Federal Rules of Civil Procedure, or that Plaintiff or any member of the class or subclasses he purports to represent is entitled to recover any relief from Defendant, as requested in the Complaint or otherwise, for all the reasons set forth above, the estimated total amount in controversy is at least **$20,686,103**:

DN 7362823.1

| Claim | Amount in Controversy |
|---|---|
| Minimum Wage Claim | $2,658,954 |
| Meal Break Premium Pay Claim | $2,915,500 |
| Rest Break Premium Pay Claim | $2,986,123 |
| Failure to Timely Pay Earned Wages During Employment Claim | $3,361,400 |
| Wage Statement Claim | $1,651,950 |
| Waiting Time Claim | $2,974,956 |
| Attorneys' Fees (25% of above) | $4,137,220 |
| | **Total: $20,686,103** |

66.    The damages and penalties set forth above estimate the putative class members' potential recovery only from June 26, 2020, up to the date of the filing this Notice, not through trial. And notably, many of the estimates—including the minimum wage claim, meal and rest break premium pay claims, and waiting time claims—are only estimates through October 13, 2022. It is reasonable to assume that a trial in this case could not be completed in less than two years from now and, thus, it is reasonable to assume that the potential damages and penalties in controversy will roughly double between now and the conclusion of trial, further increasing the amount in controversy. *Chavez*, 888 F.3d at 414–15 (explaining that "the amount in controversy is not limited to damages incurred prior to removal—for example, it is not limited to wages a plaintiff-employee would have earned before removal (as opposed to after removal)"); *Fritsch*, 899 F.3d at 793 (applying Ninth Circuit's holding in *Chavez* to case involving removal under CAFA).

67.    Because the amount in controversy requirement for CAFA jurisdiction has been met, along with all other requirements for CAFA jurisdiction, this action is properly removable to this Court.

DN 7362823.1

## TRADITIONAL DIVERSITY JURISDICTION

68.     This Court also has traditional diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1). Plaintiff's individual claims constitute a civil action between citizens of different States (*i.e.*, complete diversity exists) and the amount in controversy relating to Plaintiff's claims exceeds the sum or value of $75,000. *See Exxon Mobil Corp. v. Allapattah Services, Inc.,* 545 U.S. 546 (2005) (holding that court has jurisdiction over class action where it has original jurisdiction over at least one class member's claim; it may exercise supplemental jurisdiction over all other class members' claims that are part of the same case or controversy, notwithstanding whether such claims satisfy the amount in controversy requirement, and whether CAFA jurisdiction also exists is irrelevant). Here, in addition to having jurisdiction under CAFA, this Court has diversity jurisdiction.

### **Complete Diversity Exists**

69.     As noted above, Plaintiff is (and at the time the State Court Action was filed) a citizen of California, and Defendant is (and at the time the State Court Action was filed) a citizen of Delaware and Colorado. (*See* Paragraphs 16-18, *supra.*)

70.     Although the Complaint names "Does 1 to 100" as defendants, the citizenship of defendants sued under fictitious names is disregarded for the purposes of determining diversity jurisdiction. *See* 28 U.S.C. § 1441(b).

71.     Because Plaintiff is a citizen of California and Defendant is a citizen of Delaware and Colorado, complete diversity existed and continues to exist between Plaintiff and Defendant, both at the time the State Court Action was filed and at the time of removal to this Court.

### **The Amount in Controversy Exceeds $75,000**

72.     Without making an admission of liability or damages with respect to any aspect of this case, Defendant has a good faith belief that—if this case were to proceed as a single plaintiff case, either because no class certification motion is filed or

because class certification is denied—the amount placed in controversy by Plaintiff's individual claims exceeds the jurisdictional minimum of $75,000.

73.    Since the commencement of Plaintiff's employment on August 31, 2020, through February 1, 2023, Plaintiff worked at least 600 shifts lasting more than 3.5 hours, with 595 shifts lasting more than 5 hours. (Burket Dec. ⁋ 2.) Plaintiff's average wage rate throughout his employment is approximately $32.70 per hour, and Plaintiff has been paid on a weekly basis. (*Id.*) The average minimum wage in effect was approximately $14.25 per hour. *See note 2, supra.*

74.    Using the same calculations and reasonable assumptions set forth above with respect to this Court's jurisdiction under CAFA, Defendant estimates that Plaintiff's individual claims place at least the following amounts in controversy:

a.    Minimum Wage Claim – $10,188;

 i.    Unpaid minimum wage for undergoing COVID-19 temperature checks – $855 (6 minutes of assumed unpaid time per shift × $14.25 avg. minimum wage × 600 shifts);

 ii.    Unpaid minimum wage for working through meal breaks - $4,239 (30 minutes × $14.25/hour × 595 shifts);

 iii.    Liquidated damages – $5,094;

b.    Meal Break Premium Pay Claim – $19,456 (595 shifts longer than 5 hours × $32.70 premium pay);

c.    Rest Break Premium Pay Claim – $19,620 (600 shifts longer than 3.5 hours × $32.70 premium pay);

d.    Failure to Timely Pay Earned Wages During Employment – $10,400 (52 pay periods since filing the Complaint × $200 penalty);

e.    Wage Statement Claim – $4,000 (the statutory limit is applied because Plaintiff received fifty-two wage statements in the past year);

DN 7362823.1

f.      Waiting Time[10] – $8,591 ($36.25/hour × 7.9 hours[11] × 30 days).

75.     Thus, Plaintiff's total claims for compensatory damages and penalties under the Labor Code place at least $72,255 in controversy through the date of this removal. However, the amount in controversy is expected to increase significantly through trial. *Chavez*, 888 F.3d at 414–15 (explaining that "the amount in controversy is not limited to damages incurred prior to removal").

76.     Plaintiff would only need to incur $2,745 in attorneys' fees litigating his individual claims through the end of trial for the jurisdictional threshold of $75,000 to be met. *See, e.g.*, *Brady v. Mercedes-Benz USA, Inc.*, 243 F. Supp. 2d 1004, 1010-11 (N.D. Cal. 2002) ("[A] reasonable estimate of fees likely to be incurred to resolution is part of the benefit permissibly sought by the plaintiff and thus contributes to the amount in controversy.").

77.     Defendant is informed and believes that the rates of Plaintiff's counsel were $650 per hour for Attorney Lavi and $450 per hour for Attorney Granberry in 2015. (*See* Ex. E, p. 10-11.) Given that these were the rates more than seven years ago, Defendant anticipates that Attorney Lavi's and Attorney Granberry's hourly rates are higher today. Defendant is without knowledge regarding Attorney Montero's hourly rate.

78.     However, even assuming an average rate of $450 per hour for Plaintiff's counsel, which is lower than Attorney Lavi's hourly rate seven years ago, Plaintiff's counsel need only spend approximately six hours of time attributable to Plaintiff's individual claims, through trial, for the jurisdictional threshold to be met. For example, if Plaintiff's motion for class certification (which Defendant will oppose) is denied, Plaintiff's counsel will undoubtedly spend significantly more than 6 hours

---

[10] Plaintiff's Complaint provides that "Defendants failed to pay Plaintiff . . . with all wages earned and unpaid prior to separation of employment," and that Plaintiff is entitled to damages for such violations. (Cmplt. pp. 22-23, ¶¶ 81-86.)

[11] Defendant uses the average shift length for regular hourly employees. (*See* Burket Dec. ¶ 5.)

DN 7362823.1

NOTICE OF REMOVAL OF STATE COURT CIVIL ACTION

litigating Plaintiff's claims through trial after denial of class certification. With attorneys' fees likely to be incurred by Plaintiff through trial, the amount in controversy for Plaintiff's individual claims easily exceeds $75,000.

79.    Accordingly, for the reasons stated above, this Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332, so this action is removable pursuant to 28 U.S.C. § 1441(b).

80.    By filing this Notice of Removal, Defendant does not waive and expressly reserves all rights, objections, and defenses in this case, including defenses based on lack of personal jurisdiction.

Dated: February 10, 2023                COZEN O'CONNOR

                                        By:

                                            Ethan Chernin
                                            Attorney for Defendant
                                            SWIFT BEEF COMPANY

DN 7362823.1

NOTICE OF REMOVAL OF STATE COURT CIVIL ACTION

# Exhibit A

Electronically FILED by Superior Court of California, County of Riverside on 01/09/2023 05:05 PM
Case Number CVRI2300103 0000045069246 - Marita C. Ford, Interim Executive Officer/Clerk of the Court By Viviana Gonzalez, Clerk

Joseph Lavi, Esq. (SBN 209776)
Vincent C. Granberry, Esq. (SBN 276483)
Danielle E. Montero, Esq. (SBN 333945)
**LAVI & EBRAHIMIAN, LLP**
8889 W. Olympic Boulevard, Suite 200
Beverly Hills, California 90211
Telephone: (310) 432-0000
Facsimile: (310) 432-0001
Email: jlavi@lelawfirm.com
        vgranberry@lelawfirm.com
        dmontero@lelawfirm.com
        WHT2@lelawfirm.com

Attorneys for Plaintiff FRANCISCO J. MEZA,
on behalf of himself and others similarly situated

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF RIVERSIDE

| | |
|---|---|
| FRANCISCO J. MEZA, on behalf of himself and others similarly situated,<br><br>   Plaintiff,<br><br>  vs.<br><br>SWIFT BEEF COMPANY; and DOES 1 to 100, inclusive,<br><br>   Defendants. | Case No.: CVRI2300103<br><br>**CLASS ACTION**<br><br>**PLAINTIFF FRANCISCO J. MEZA'S COMPLAINT FOR DAMAGES AND RESTITUTION FOR:**<br><br>1. **FAILURE TO PAY WAGES FOR ALL HOURS WORKED AT MINIMUM WAGE IN VIOLATION OF LABOR CODE SECTIONS 1194 AND 1197**<br><br>2. **FAILURE TO AUTHORIZE OR PERMIT MEAL PERIODS IN VIOLATION OF LABOR CODE SECTIONS 512 AND 226.7**<br><br>3. **FAILURE TO AUTHORIZE OR PERMIT REST PERIODS IN VIOLATION OF LABOR CODE SECTION 226.7**<br><br>4. **FAILURE TO TIMELY PAY EARNED WAGES DURING EMPLOYMENT IN VIOLATION OF LABOR CODE SECTION 204**<br><br>5. **FAILURE TO PROVIDE COMPLETE AND ACCURATE WAGE STATEMENTS IN VIOLATION OF LABOR CODE SECTION 226** |

1

2

3

6. **FAILURE TO TIMELY PAY ALL EARNED WAGES AND FINAL PAYCHECKS DUE AT TIME OF SEPARATION OF EMPLOYMENT IN VIOLATION OF LABOR CODE SECTIONS 201, 202, AND 203**

4

5

6

7

7. **UNFAIR BUSINESS PRACTICES, IN VIOLATION OF BUSINESS AND PROFESSIONS CODE SECTIONS 17200, ET SEQ.**

**DEMAND FOR JURY TRIAL**

8        **COMES NOW** Plaintiff FRANCISCO J. MEZA ("Plaintiff"), who alleges and complains

9    against Defendants SWIFT BEEF COMPANY; and DOES 1 to 100, inclusive (collectively

10   "Defendants") as follows:

11   **I.        INTRODUCTION**

12        1.        This is a class action lawsuit seeking unpaid wages and interest thereon for failure

13   to pay wages for all hours worked at minimum wage; failure to authorize or permit all legally

14   required and/or compliant meal periods  or pay meal period premium wages; failure to authorize

15   or permit all legally required and/or compliant rest periods or pay rest period premium wages;

16   statutory penalties for failure to timely pay earned wages during employment; statutory penalties

17   for failure to provide accurate wage statements; statutory waiting time penalties in the form of

18   continuation wages for failure to timely pay employees all wages due upon separation of

19   employment; injunctive relief and other equitable relief; reasonable attorneys' fees pursuant to

20   Labor Code sections 218.5, 226(e) and 1194; costs; and interest brought on behalf of Plaintiff and

21   others similarly situated.

22   **II.       JURIDISCTION AND VENUE**

23        2.        This Court has jurisdiction over Plaintiff's and putative class members' claims for

24   failure to pay wages for all hours worked at minimum wage; failure to authorize or permit all

25   legally required and/or compliant meal periods or pay meal period premium wages; failure to

26   authorize or permit all legally required and/or compliant rest periods or pay rest period premium

27   wages; statutory penalties for failure to timely pay earned wages during employment; statutory

28   penalties for failure to provide accurate wage statements; statutory waiting time penalties in the

31

form of continuation wages for failure to timely pay employees all wages due upon separation of employment; and claims for injunctive relief and restitution under California Business and Professions Code sections 17200, *et seq.*, for the following reasons: Defendants operate throughout California; Defendants employed Plaintiff and putative class members in locations throughout California, including but not limited to Riverside County, at 15555 Meridian Pkwy, Riverside, California 92518, more than two-thirds of putative class members are California citizens; the principal violations of California law occurred in California; no other class actions have been filed against Defendants in the last four (4) years alleging wage and hour violations; the conduct of Defendants forms a significant basis for Plaintiff's and putative class members' claims; and Plaintiff and putative class members seek significant relief from Defendants.

**III.    <u>PARTIES</u>**

3.    Plaintiff brings this action on behalf of himself and other members of the general public similarly situated. The named Plaintiff and the class of persons on whose behalf this action is filed are current, former, and/or future employees of Defendants as direct employees as well as temporary employees employed through temp agencies who work as hourly non-exempt employees. At all times mentioned herein, the currently named Plaintiff is and was a resident of California and was employed by Defendants in the State of California within the four (4) years prior to the filing of this Complaint.

4.    Defendants employed Plaintiff as an hourly non-exempt employee from in or around August 2020 to present.

5.    Plaintiff is informed and believes and thereon alleges that Defendants employed him and other hourly non-exempt employees throughout the State of California and therefore their conduct forms a significant basis of the claims asserted in this matter.

6.    Plaintiff is informed and believes and thereon alleges that Defendant SWIFT BEEF COMPANY is authorized to do business within the State of California and is doing business in the State of California and/or that Defendants DOES 1-50 are, and at all times relevant hereto were, persons acting on behalf of Defendant SWIFT BEEF COMPANY in the establishment of, or ratification of, the aforementioned illegal wage and hour practices or policies. Defendant SWIFT

BEEF COMPANY operates in Riverside County and employed Plaintiff and putative class members in Riverside County, including but not limited to, at 15555 Meridian Pkwy, Riverside, California 92518.

7.    Plaintiff is informed and believes and thereon alleges that Defendant DOES 51-100 are individuals unknown to Plaintiff. Each of the individual Defendant is sued individually in his or her capacity as an agent, shareholder, owner, representative, supervisor, independent contractor and/or employee of each Defendant and participated in the establishment of, or ratification of, the aforementioned illegal wage and hour practices or policies.

8.    Plaintiff is unaware of the true names of Defendant DOES 1-100. Plaintiff sues said Defendants by said fictitious names and will amend this Complaint when the true names and capacities are ascertained or when such facts pertaining to liability are ascertained, or as permitted by law or by the Court. Plaintiff is informed and believes that each of the fictitiously named Defendants is in some manner responsible for the events and allegations set forth in this Complaint.

9.    Plaintiff is informed and believes and thereon alleges that at all relevant times, each Defendant was an employer, was the principal, agent, partner, joint venturer, officer, director, controlling shareholder, subsidiary, affiliate, parent corporation, successor in interest and/or predecessor in interest of some or all of the other Defendants, and was engaged with some or all of the other defendants in a joint enterprise for profit, and bore such other relationships to some or all of the other defendants so as to be liable for their conduct with respect to the matters alleged in this Complaint. Plaintiff is further informed and believe and thereon allege that Defendants acted pursuant to and within the scope of the relationships alleged above, and that at all relevant times, Defendants knew or should have known about, authorized, ratified, adopted, approved, controlled, aided and abetted the conduct of all other Defendants. As used in this Complaint, "Defendant" means "Defendants and each of them," and refers to the Defendant named in the particular cause of action in which the word appears and includes Defendants SWIFT BEEF COMPANY and DOES 1 to 100, inclusive.

10.    At all times mentioned herein, each Defendant was the co-conspirator, agent,

servant, employee, and/or joint venturer of each of the other Defendants and was acting within the course and scope of said conspiracy, agency, employment, and/or joint venture and with the permission and consent of each of the other Defendants.

11.     Plaintiff makes the allegations in this Complaint without any admission that, as to any particular allegation, Plaintiff bears the burden of pleading, proving, or persuading and Plaintiff reserves all of Plaintiff's rights to plead in the alternative.

## IV.    <u>DESCRIPTION OF ILLEGAL PAY PRACTICES</u>

12.     Pursuant to the applicable Industrial Welfare Commission ("IWC") Wage Order ("Wage Order"), codified at California Code of Regulations, title 8, section 11040, Defendants are employers of Plaintiff within the meaning of Wage Order 4 and applicable Labor Code sections. Therefore, each of these Defendants is jointly and severally liable for the wrongs complained of herein in violation of the Wage Order and the Labor Code.

13.     **Failure to pay wages for all hours worked at the legal minimum wage**: Defendants employed many of their employees, including Plaintiff, as hourly non-exempt employees. In California, an employer is required to pay hourly employees for all "hours worked," which includes all time that an employee is under the control of the employer and all time the employee is suffered and permitted to work. This includes the time an employee spends, either directly or indirectly, performing services which inure to the benefit of the employer.

14.     Labor Code sections 1194 and 1197 require an employer to compensate employees for all "hours worked" at least at the minimum wage rate of pay as established by the IWC and the Wage Orders.

15.     Plaintiff and similarly situated hourly non-exempt employees worked more minutes per shift than Defendants credited them with having worked. Defendants failed to pay Plaintiff and similarly situated employees all wages at the applicable minimum wage for all hours worked due to Defendants' policies, practices, and/or procedures including, but not limited to:

(a) Since the Outbreak of COVID-19, requiring Plaintiff and similarly situated employees to line up to wait to undergo and undergo off-the-clock COVID-19 temperature checks; and

(b) Requiring Plaintiff and similarly situated employees to keep their employer-issued walkie-talkies on their person, monitored, and to respond to calls received on them at all times during their shift, including while off-the-clock during their meal breaks.

16.    Plaintiff and similarly situated employees were not paid for this time resulting in Defendants' failure to pay minimum wage for all the hours Plaintiff and similarly situated employees worked.

17.    Therefore, Defendants suffered, permitted, and required their hourly non-exempt employees to be subject to Defendants' control without paying wages for that time. This resulted in Plaintiff and similarly situated employees working time for which they were not compensated any wages, in violation of Labor Code sections 1194, 1197, and Wage Order 4.

18.    **Failure to authorize or permit all legally required and compliant meal periods and/or failure to pay meal period premium wages:** Defendants often employed hourly non-exempt employees, including the named Plaintiff and similarly situated employees, for shifts longer than five (5) hours in length and shifts longer than ten (10) hours in length.

19.    California law requires an employer to authorize or permit an uninterrupted meal period of no less than thirty (30) minutes no later than the end of the employee's fifth hour of work and a second meal period no later than the employee's tenth hour of work. Labor Code section 512; Wage Order 4, §11. If the employee is not relieved of all duties during a meal period, the meal period shall be considered an "on duty" meal period and counted as time worked. A paid "on duty" meal period is only permitted when (1) the nature of the work prevents an employee from being relieved of all duty and (2) the parties have a written agreement agreeing to on-duty meal periods. If the employee is not free to leave the work premises or worksite during the meal period, even if the employee is relieved of all other duty during the meal period, the employee is subject to the employer's control and the meal period is counted as time worked. If an employer fails to provide an employee a meal period in accordance with the law, the employer must pay the employee one (1) hour of pay at the employee's regular rate of pay for each workday that a legally required and compliant meal period was not provided. Labor Code section 226.7; Wage Order 4, §11.

20.     Here, Plaintiff and similarly situated employees worked shifts long enough to entitle them to meal periods under California law. Nevertheless, Defendants employed policies, practices, and/or procedures that resulted in their failure to authorize or permit meal periods to Plaintiff and similarly situated employees of no less than thirty (30) minutes for each five-hour period of work as required by law. Such policies, practices, and/or procedures included, but were not limited to:

(a) Failing to provide Plaintiff and similarly situated employees' duty-free meal breaks due to Defendant requiring Plaintiff and similarly situated employees to keep their employer-issued walkie-talkies on their person, monitored, and to respond to calls received on them while off-the-clock during their meal breaks.

21.     Additionally, Defendants failed to pay Plaintiff and similarly situated employees a meal period premium wage of one (1) additional hour of pay at their regular rate of compensation for each workday the employees did not receive all legally required and compliant meal periods. Defendants employed policies and procedures which ensured that employees did not receive any meal period premium wages to compensate them for workdays in which they did not receive all legally required and compliant meal periods.

22.     The aforementioned policies, practices, and/or procedures of Defendants resulted in Plaintiff and similarly situated employees not being provided with all legally required and compliant meal periods and/or not receiving premium wages to compensate them for such instances, all in violation of California law.

23.     **Failure to authorize and permit all legally required and compliant rest periods and/or failure to pay rest period premiums:** Defendants often employed non-exempt employees, including the named Plaintiff and similarly situated employees, for shifts of least three-and-a-half (3.5) hours.

24.     California law requires every employer to authorize and permit an employee a rest period of ten (10) net minutes for every four (4) hours worked or major fraction thereof. Labor Code section 226.7; Wage Order 4, §12. If the employer fails to authorize or permit a required rest period, the employer must pay the employee one (1) hour of pay at the employee's regular rate of

compensation for each workday the employer did not authorize or permit a legally required rest period. *Id.* Under California law, "[e]mployees are entitled to 10 minutes' rest for shifts from three and one-half to six hours in length, 20 minutes for shifts of more than six hours up to 10 hours, 30 minutes for shifts of more than 10 hours up to 14 hours, and so on." *Brinker Restaurant Corp. v. Sup. Ct. (Hohnbaum)* (2012) 53 Cal.4th 1004, 1029; Labor Code section 226.7; Wage Order 4, §12. Rest periods, insofar as practicable, shall be in the middle of each work period. Wage Order 4, §12. Additionally, the rest period requirement "obligates employers to permit – and authorizes employees to take – off-duty rest periods." *Augustus v. ABM Security Services, Inc.*, (2016) 5 Cal.5th 257, 269. That is, during rest periods employers must relieve employees of all duties and relinquish control over how employees spend their time. *Id.*

25.    In this case, Plaintiff and similarly situated employees regularly worked shifts of more than three-and-a-half (3.5) hours. Nevertheless, Defendants employed policies, practices, and/or procedures that resulted in their failure to authorize or permit all legally required and compliant rest periods to Plaintiff and similarly situated employees. Such policies, practices, and/or procedures included, but were not limited to:

(a) Failing to provide Plaintiff and similarly situated employees' duty-free rest breaks due to Defendant requiring Plaintiff and similarly situated employees to keep their employer-issued walkie-talkies on their person, monitored, and to respond to calls received on them at all times during their shift including during rest breaks.

26.    Additionally, Defendants failed to pay Plaintiff and similarly situated employees a rest period premium wage of one (1) additional hour of pay at their regular rate of compensation for each workday the employees did not receive all legally required and compliant rest periods. Defendants employed policies and procedures which ensured that employees did not receive any rest period premium wages to compensate them for workdays in which they did not receive all legally required and compliant rest periods.

27.    The aforementioned policies, practices, and/or procedures of Defendants resulted in Plaintiff and similarly situated employees not being provided with all legally required and compliant rest periods and/or not receiving premium wages to compensate them for such

instances, all in violation of California law.

28.    **Failure to timely pay earned wages during employment**: In California, wages must be paid at least twice during each calendar month on days designated in advance by the employer as regular paydays, subject to some exceptions. Labor Code section 204(a). Wages earned between the 1st and 15th days, inclusive, of any calendar month must be paid between the 16th and the 26th day of that month and wages earned between the 16th and the last day, inclusive, of any calendar month must be paid between the 1st and 10th day of the following month. *Id*. Other payroll periods such as those that are weekly, biweekly, or semimonthly, must be paid within seven (7) calendar days following the close of the payroll period in which wages were earned. Labor Code section 204(d).

29.    As a derivative of Plaintiff's claims above, Plaintiff alleges that Defendants failed to timely pay Plaintiff's and similarly situated employees' earned wages (including minimum wages, meal period premium wages, and/or rest period premium wages), in violation of Labor Code section 204.

30.    Defendants' aforementioned policies, practices, and/or procedures resulted in their failure to pay Plaintiff and similarly situated employees their earned wages within the applicable time frames outlined in Labor Code section 204.

31.    **Failure to provide accurate wage statements**: Labor Code section 226(a) provides, *inter alia*, that, upon paying an employee his or her wages, the employer must "furnish each of his or her employees ... an itemized statement in writing showing (1) gross wages earned, (2) total hours worked by the employee, except for any employee whose compensation is solely based on a salary and who is exempt from payment of overtime under subdivision (a) of Section 515 or any applicable order of the Industrial Welfare Commission, (3) the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis, (4) all deductions, provided, that all deductions made on written orders of the employee may be aggregated and shown as one item, (5) net wages earned, (6) the inclusive dates of the pay period for which the employee is paid, (7) the name of the employee and his or her social security number, (8) the name and address of the legal entity that is the employer, and (9) all applicable

hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee."

32.     As a derivative of Plaintiff's claims above, Plaintiff alleges that Defendants failed to provide accurate wage and hour statements to him and other similarly situated employees who were subject to Defendants' control for uncompensated time and who did not receive all their earned wages (including minimum wages, meal period premium wages, and/or rest period premium wages), in violation of Labor Code section 226.

33.     **Failure to timely pay final wages**: An employer is required to pay all unpaid wages timely after an employee's employment ends. The wages are due immediately upon termination or within seventy-two (72) hours of resignation. Labor Code sections 201, 202.

34.     As a result of the aforementioned violations of the Labor Code, Plaintiff alleges that he, and on information and belief, other similarly situated employees, were not paid their final wages in a timely manner as required by Labor Code section 203. Minimum wages for all hours worked, meal period premium wages, and/or rest period premium wages (all described above), were not paid at the time of Plaintiff's and other similarly situated employees' separation of employment, whether voluntarily or involuntarily, as required by Labor Code sections 201, 202, and 203.

## V.     CLASS DEFINITIONS AND CLASS ALLEGATIONS

35.     Plaintiff brings this action on behalf of himself, on behalf of others similarly situated, and on behalf of the general public, and as members of a Class defined as follows:

A.     **Minimum Wage Class**: All current and former hourly non-exempt employees employed by Defendants as direct employees as well as temporary employees employed through temp agencies in California at any time from four (4) years prior to the filing of the initial Complaint in this matter through the date notice is mailed to a certified class who were not paid at least minimum wage for all time they were subject to Defendants' control.

B.     **Meal Period Class**: All current and former hourly non-exempt employees employed by Defendants as direct employees as well as temporary employees employed through temp agencies in California at any time from four (4) years prior to the filing of the initial

Complaint in this matter through the date notice is mailed to a certified class who worked shifts more than five (5) hours yet Defendants failed to authorize or permit all required duty-free meal periods of not less than thirty (30) minutes.

C.    **Rest Period Class**: All current and former hourly non-exempt employees employed by Defendants as direct employees as well as temporary employees employed through temp agencies in California at any time from four (4) years prior to the filing of the initial Complaint in this matter through the date notice is mailed to a certified class who worked shifts of at least three-and-a-half (3.5) hours who did not receive all required duty-free rest periods of a net ten (10) minutes for every four (4) hours worked or major fraction thereof.

D.    **Pay Day Class**: All current and former hourly non-exempt employees employed by Defendants as direct employees as well as temporary employees employed through temp agencies in California at any time from four (4) years prior to the filing of the initial Complaint in this action through the date notice is mailed to a certified class who were not timely paid earned wages during their employment.

E.    **Wage Statement Class**: All current and former hourly non-exempt employees employed by Defendants as direct employees as well as temporary employees employed through temp agencies in California at any time from one (1) year prior to the filing of the initial Complaint in this action through the date notice is mailed to a certified class who received inaccurate or incomplete wage and hour statements.

F.    **Waiting Time Class**: All current and former hourly non-exempt employees employed by Defendants as direct employees as well as temporary employees employed through temp agencies in California at any time from three (3) years prior to the filing of the initial Complaint in this action through the date notice is mailed to a certified class who did not receive payment of all unpaid wages upon separation of employment within the statutory time period.

G.    **California Class**: All aforementioned classes are herein collectively referred to as the "California Class."

36.    There is a well-defined community of interest in the litigation and the classes are ascertainable:

**40**

A.      **Numerosity**: While the exact number of class members in each class is unknown to Plaintiff at this time, the Plaintiff classes are so numerous that the individual joinder of all members is impractical under the circumstances of this case.

B.      **Common Questions Predominate**: Common questions of law and fact exist as to all members of the Plaintiff classes and predominate over any questions that affect only individual members of each class. The common questions of law and fact include, but are not limited to:

i.      Whether Defendants violated Labor Code sections 1194 and 1197 by not paying wages at the minimum wage rate for all time that the Minimum Wage Class Members were subject to Defendants' control;

ii.      Whether Defendants violated Labor Code sections 512 and 226.7, as well as the applicable Wage Order, by employing the Meal Period Class Members without providing all compliant and/or required meal periods and/or paying meal period premium wages;

iii.      Whether Defendants violated Labor Code section 226.7 by employing the Rest Period Class Members without providing all compliant and/or required rest periods and/or paying rest period premium wages;

iv.      Whether Defendants violated Labor Code section 204 by employing Pay Day Class Members without timely paying them all earned wages during their employment;

v.      Whether Defendants failed to provide the Wage Statement Class Members with accurate itemized statements at the time they received their itemized statements;

vi.      Whether Defendants failed to provide the Waiting Time Class Members with all of their earned wages upon separation of employment within the statutory time period;

vii.      Whether Defendants committed unlawful business acts or practice within the meaning of Business and Professions Code sections 17200, *et seq.*;

viii.      Whether Class Members are entitled to unpaid wages, penalties, and other relief pursuant to their claims;

ix.      Whether, as a consequence of Defendants' unlawful conduct, the

**41**

Class Members are entitled to restitution, and/or equitable relief; and

x.    Whether Defendants' affirmative defenses, if any, raise any common issues of law or fact as to Plaintiff and as to Class Members as a whole.

C.    **Typicality**: Plaintiff's claims are typical of the claims of the class members in each of the classes. Plaintiff and members of the Minimum Wage Class sustained damages arising out of Defendants' failure to pay wages at least at minimum wage for all time the employees were subject to Defendants' control. Plaintiff and members of the Meal Period Class sustained damages arising out of Defendants' failure to provide non-exempt employees with all required meal periods and/or meal periods that were duty-free and not less than thirty (30) minutes and/or failure to pay meal period premium wages as compensation. Plaintiff and members of the Rest Period Class sustained damages arising out of Defendants' failure to provide non-exempt employees with all required rest periods and/or rest periods that were duty-free and of a net ten (10) minutes and/or failure to pay rest period premium wages as compensation. Plaintiff and members of the Pay Day Class sustained damages arising out of Defendants' failure to timely pay them all wages earned during their employment in compliance with Labor Code section 204. Plaintiff and members of the Wage Statement Class sustained damages arising out of Defendants' failure to furnish them with accurate itemized wage statements in compliance with Labor Code section 226. Plaintiff and members of the Waiting Time Class sustained damages arising out of Defendants' failure to provide all unpaid yet earned wages due upon separation of employment within the statutory time limit.

D.    **Adequacy of Representation**: Plaintiff will fairly and adequately protect the interests of the members of each class. Plaintiff has no interest that is adverse to the interests of the other class members.

E.    **Superiority**: A class action is superior to other available means for the fair and efficient adjudication of this controversy. Because individual joinder of all members of each class is impractical, class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would engender.

**42**

The expenses and burdens of individual litigation would make it difficult or impossible for individual members of each class to redress the wrongs done to them, while important public interests will be served by addressing the matter as a class action. The cost to and burden on the court system of adjudication of individualized litigation would be substantial, and substantially more than the costs and burdens of a class action. Individualized litigation would also present the potential for inconsistent or contradictory judgments.

F.      **Public Policy Consideration**: Employers throughout the state violate wage and hour laws. Current employees often are afraid to assert their rights out of fear of direct or indirect retaliation. Former employees fear bringing actions because they perceive their former employers can blacklist them in their future endeavors with negative references or by other means. Class actions provide the class members who are not named in the Complaint with a type of anonymity that allows for vindication of their rights.

## FIRST CAUSE OF ACTION

**FAILURE TO PAY WAGES FOR ALL HOURS OF WORK AT THE LEGAL MINIMUM WAGE RATE IN VIOLATION OF LABOR CODE SECTIONS 1194 AND 1197**

**(Against All Defendants by Plaintiff and the Minimum Wage Class)**

37.     Plaintiff incorporates all paragraphs above as though fully set forth herein.

38.     At all times relevant to this Complaint, Plaintiff and the Minimum Wage Class were hourly non-exempt employees of Defendants.

39.     Pursuant to Labor Code sections 1194, 1197, and the Wage Order, Plaintiff and the Minimum Wage Class are entitled to receive wages for all hours worked, i.e., all time they were subject to Defendants' control, and those wages must be paid at least at the minimum wage rate in effect during the time the employees earned the wages.

40.     Defendants' policies, practices, and/or procedures required Plaintiff and the Minimum Wage Class to be engaged, suffered, or permitted to work without being paid wages for all of the time in which they were subject to Defendants' control.

41.     Defendants employed policies, practices, and/or procedures including, but not limited to:

43

(a)  Since the Outbreak of COVID-19, requiring Plaintiff and the Minimum Wage Class to line up to wait to undergo and undergo off-the-clock COVID-19 temperature checks; and

(b) Requiring Plaintiff and the Minimum Wage Class to keep their employer-issued walkie-talkies on their person, monitored, and to respond to calls received on them at all times during their shift, including while off-the-clock during their meal breaks.

42.    Plaintiff and the Minimum Wage Class were not paid for this time resulting in Defendants' failure to pay minimum wage for all the hours Plaintiff and the Minimum Wage Class worked.

43.    As a result of Defendants' unlawful conduct, Plaintiff and the Minimum Wage Class have suffered damages in an amount subject to proof, to the extent that they were not paid wages at a minimum wage rate for all hours worked.

44.    Pursuant to Labor Code sections 1194 and 1194.2, Plaintiff and the Minimum Wage Class are entitled to recover unpaid minimum wage, interest thereon, liquidated damages in the amount of their unpaid minimum wage, and attorneys' fees and costs.

## SECOND CAUSE OF ACTION

### FAILURE TO AUTHORIZE OR PERMIT MEAL PERIODS IN VIOLATION OF LABOR CODE SECTIONS 512 AND 226.7

**(Against All Defendants by Plaintiff and the Meal Period Class)**

45.    Plaintiff incorporates all paragraphs above as though fully set forth herein.

46.    At all times relevant to this Complaint, Plaintiff and the Meal Period Class were hourly non-exempt employees of Defendants, covered by Labor Code sections 512 and 226.7 and the Wage Order.

47.    California law requires an employer to authorize or permit an employee an uninterrupted meal period of no less than thirty (30) minutes in which the employee is relieved of all duties and the employer relinquishes control over the employee's activities no later than the end of the employee's fifth hour of work and a second meal period no later than the employee's tenth hour of work. Labor Code sections 226.7, 512; Wage Order 4, §11; *Brinker Rest. Corp. v. Super Ct. (Hohnbaum)* (2012) 53 Cal.4th 1004. If the employer requires the employee to remain at

the work site or facility during the meal period, the meal period must be paid. This is true even where the employee is relieved of all work duties during the meal period. *Bono Enterprises, Inc. v. Bradshaw* (1995) 32 Cal.App.4th 968. Labor Code section 226.7 provides that if an employee does not receive a required meal or rest period that "the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each work day that the meal or rest period is not provided."

48.     In this case, Plaintiff and the Meal Period Class worked shifts long enough to entitle them to meal periods under California law. Nevertheless, Defendants employed policies, practices, and/or procedures that resulted in their failure to authorize or permit meal periods to Plaintiff and the Meal Period Class of no less than thirty (30) minutes for each five-hour period of work as required by law. Such policies, practices, and/or procedures included, but were not limited to:

(a) Failing to provide Plaintiff and the Meal Period Class duty-free meal breaks due to Defendant requiring Plaintiff and the Meal Period Class to keep their employer-issued walkie-talkies on their person, monitored, and to respond to calls received on them while off-the-clock during their meal breaks.

49.     Additionally, Defendants failed to pay Plaintiff and the Meal Period Class one (1) hour of pay at their regular rate of pay for each workday they did not receive all legally required and legally compliant meal periods. Defendants lacked a policy and procedure for compensating Plaintiff and the Meal Period Class with premium wages when they did not receive all legally required and legally compliant meal periods.

50.     Defendants' unlawful conduct alleged herein occurred in the course of employment of Plaintiff and the Meal Period Class and such conduct has continued through the filing of this Complaint.

51.     Because Defendants failed to provide employees with meal periods in compliance with the law, Defendants are liable to Plaintiff and the Meal Period Class for one (1) hour of additional pay at the regular rate of compensation for each workday that Defendants did not provide all legally required and legally compliant meal periods, pursuant to Labor Code section

226.7 and the Wage Order.

52.     Plaintiff, on behalf of himself and the Meal Period Class seeks damages and all other relief allowable, including a meal period premium wage for each workday Defendants failed to provide all legally required and legally compliant meal periods, plus pre-judgment interest.

### THIRD CAUSE OF ACTION

### FAILURE TO AUTHORIZE OR PERMIT REQUIRED REST PERIODS IN VIOLATION OF LABOR CODE SECTION 226.7

### (Against All Defendants by Plaintiff and the Rest Period Class)

53.     Plaintiff incorporates all paragraphs above as though fully set forth herein.

54.     At all times relevant to this Complaint, Plaintiff and the Rest Period Class were employees of Defendants, covered by Labor Code section 226.7 and Wage Order 4.

55.     California law requires that "[e]very employer shall authorize and permit all employees to take rest periods, which insofar as practicable shall be in the middle of each work period. The authorized rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof…." Wage Order 4, §12. Employees are entitled to 10 minutes rest for shifts from three and one-half to six hours in length, 20 minutes for shifts of more than six hours up to 10 hours, 30 minutes for shifts of more than 10 hours up to 14 hours, and so on." *Brinker Restaurant Corp. v. Sup. Ct. (Hohnbaum)* (2012) 53 Cal.4th 1004, 1029; Labor Code section 226.7. Additionally, the rest period requirement "obligates employers to permit – and authorizes employees to take – off-duty rest periods." *Augustus v. ABM Security Services, Inc.*, (2016) 5 Cal.5th 257, 269. That is, during rest periods employers must relieve employees of all duties and relinquish control over how employees spend their time. *Id*. If an employer fails to provide an employee a rest period in accordance with the applicable provisions of this Order, the employer shall pay the employee one (1) hour of pay at the employee's regular rate of compensation for each work day that the rest period is not provided." Wage Order 4, §12; Labor Code section 226.7.

56.     In this case, Plaintiff and the Rest Period Class regularly worked shifts of more than three-and-a-half (3.5) hours. Nevertheless, Defendants employed policies, practices, and/or

**46**

procedures that resulted in their failure to authorize or permit all legally required and compliant rest periods to Plaintiff and the Rest Period Class. Such policies, practices, and/or procedures included, but were not limited to:

(a) Failing to provide Plaintiff and the Rest Period Class duty-free rest breaks due to Defendant requiring Plaintiff and the Rest Period Class to keep their employer-issued walkie-talkies on their person, monitored, and to respond to calls received on them at all times during their shift including during rest breaks.

57.     Additionally, Defendants failed to pay Plaintiff and the Rest Period Class one (1) hour of pay at their regular rate of pay for each workday they did not receive all legally required and legally compliant rest periods. Defendants lacked a policy and procedure for compensating Plaintiff and the Rest Period Class with premium wages when they did not receive all legally required and legally compliant rest periods.

58.     Defendants' unlawful conduct alleged herein occurred in the course of employment of Plaintiff and the Rest Period Class and such conduct has continued through the filing of this Complaint.

59.     Because Defendants failed to provide employees with rest periods in compliance with the law, Defendants are liable to Plaintiff and the Rest Period Class for one (1) hour of additional pay at the regular rate of compensation for each workday that Defendants did not provide all legally required and legally compliant rest periods, pursuant to Labor Code section 226.7 and the Wage Order.

60.     Plaintiff, on behalf of himself and the Rest Period Class seeks damages and all other relief allowable, including a rest period premium wage for each workday Defendants failed to provide all legally required and legally compliant rest periods, plus pre-judgment interest.

## FOURTH CAUSE OF ACTION

### FAILURE TO TIMELY PAY EARNED WAGES DURING EMPLOYMENT IN VIOLATION OF LABOR CODE SECTION 204

**(Against All Defendants by Plaintiff and the Pay Day Class)**

61.     Plaintiff incorporates all paragraphs above as though fully set forth herein.

47

62.     Plaintiff and the Pay Day Class have been employed by Defendants in the State of California. In California, wages must be paid at least twice during each calendar month on days designated in advance by the employer as regular paydays, subject to some exceptions. Labor Code section 204(a). Wages earned between the 1st and 15th days, inclusive, of any calendar month must be paid between the 16th and the 26th day of that month and wages earned between the 16th and the last day, inclusive, of any calendar month must be paid between the 1st and 10th day of the following month. *Id*. Other payroll periods such as those that are weekly, biweekly, or semimonthly, must be paid within seven (7) calendar days following the close of the payroll period in which wages were earned. Labor Code section 204(d).

63.     As a derivative of Plaintiff's claims above, Plaintiff alleges that Defendants failed to timely pay Plaintiff's and the Pay Day Class' earned wages (including minimum wages, meal period premium wages, and/or rest period premium wages), in violation of Labor Code section 204.

64.     Defendants' aforementioned policies, practices, and/or procedures resulted in their failure to pay Plaintiff and the Pay Day Class their earned wages within the applicable time frames outlined in Labor Code section 204.

65.     Defendants' failure to timely pay Plaintiff and the Pay Day Class their earned wages in accordance with Labor Code section 204 was willful. Defendants had the ability to timely pay all wages earned by hourly workers in accordance with Labor Code section 204, but intentionally adopted policies or practices incompatible with the requirements of Labor Code section 204. When Defendants failed to timely pay Plaintiff and the Pay Day Class all earned wages, they knew what they were doing and intended to do what they did.

66.     As a result of Defendants' unlawful conduct, Plaintiff and the Pay Day Class have suffered damages in an amount subject to proof, to the extent that they were not timely paid their earned wages pursuant to Labor Code section 204.

67.     Pursuant to Labor Code section 210, Plaintiff and the Pay Day Class are entitled to recover civil penalties as follows: (1) for any initial violation, one hundred dollars ($100) for each failure to pay each employee; and (2) for each subsequent violation, or any willful or intentional

**48**

violation, two hundred dollars ($200) for each failure to pay each employee, plus twenty-five (25%) percent of the amount unlawfully withheld.

## FIFTH CAUSE OF ACTION

### FAILURE TO PROVIDE COMPLETE AND ACCURATE WAGE STATEMENTS IN VIOLATION OF LABOR CODE SECTION 226

**(Against All Defendants by Plaintiff and the Wage Statement Class)**

68.    Plaintiff incorporates all paragraphs above as though fully set forth herein.

69.    At all times relevant to this Complaint, Plaintiff and the Wage Statement Class were hourly, non-exempt employees of Defendants, covered by Labor Code section 226.

70.    Pursuant to Labor Code section 226, subdivision (a), Plaintiff and the Wage Statement Class were entitled to receive, semimonthly or at the time of each payment of wages, an itemized wage statement accurately stating the following:

(1) gross wages earned, (2) total hours worked by the employee, except for any employee whose compensation is solely based on a salary and who is exempt from payment of overtime under subdivision (a) of Section 515 or any applicable order of the Industrial Welfare Commission, (3) the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis, (4) all deductions, provided that all deductions made on written orders of the employee may be aggregated and shown as one item, (5) net wages earned, (6) the inclusive dates of the period for which the employee is paid, (7) the name of the employee and his or her social security number, except that by January 1, 2008, only the last four digits of his or her social security number or an employee identification number other than a social security number may be shown on the itemized statement, (8) the name and address of the legal entity that is the employer, and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee.

71.    As a derivative of Plaintiff's claims above, Plaintiff alleges that Defendants failed to provide accurate wage and hour statements to him and the Wage Statement Class who were subject to Defendants' control for uncompensated time and who did not receive all their earned wages (including minimum wages, meal period premium wages, and/or rest period premium wages), in violation of Labor Code section 226.

72.    Defendants provided Plaintiff and the Wage Statement Class with itemized statements which stated inaccurate information including, but not limited to, the number of hours worked, the gross wages earned, and the net wages earned.

73.    Defendants' failure to provide Plaintiff and the Wage Statement Class with

accurate wage statements was knowing and intentional. Defendants had the ability to provide Plaintiff and the Wage Statement Class with accurate wage statements but intentionally provided wage statements they knew were not accurate. Defendants knowingly and intentionally put in place practices which deprived employees of wages and resulted in Defendants knowingly and intentionally providing inaccurate wage statements. These practices included Defendants' failure to include all hours worked and all wages due.

74.     As a result of Defendants' unlawful conduct, Plaintiff and the Wage Statement Class have suffered injury. The absence of accurate information on their wage statements has prevented earlier challenges to Defendants' unlawful pay practices, will require discovery and mathematical computations to determine the amount of wages owed, and will cause difficulty and expense in attempting to reconstruct time and pay records. Defendants' conduct led to the submission of inaccurate information about wages and amounts deducted from wages to state and federal government agencies. As a result, Plaintiff and the Wage Statement Class are required to participate in this lawsuit and create more difficulty and expense for Plaintiff and the Wage Statement Class from having to reconstruct time and pay records than if Defendants had complied with their legal obligations.

75.     Pursuant to Labor Code section 226(e), Plaintiff and the Wage Statement Class are entitled to recover fifty (50) dollars per employee for the initial pay period in which a section 226 violation occurred and one hundred dollars per employee per violation for each subsequent pay period, not to exceed an aggregate penalty of four thousand (4,000) dollars per employee.

76.     Pursuant to Labor Code section 226(h), Plaintiff and the Wage Statement Class are entitled to bring an action for injunctive relief to ensure Defendants' compliance with Labor Code section 226(a). Injunctive relief is warranted because Defendants continue to provide currently employed Wage Statement Class members with inaccurate wage statements in violation of Labor Code section 226(a) and currently employed Wage Statement Class members have no adequate legal remedy for the continuing injuries that will be suffered as a result of Defendants' ongoing unlawful conduct. Injunctive relief is the only remedy available for ensuring Defendants' compliance with Labor Code section 226(a).

**50**

77.    Pursuant to Labor Code sections 226(e) and 226(h), Plaintiff and the Wage Statement Class are entitled to recover the full amount of penalties due under section 226(e), reasonable attorneys' fees, and costs of suit.

## SIXTH CAUSE OF ACTION

**FAILURE TO PAY ALL WAGES TIMELY UPON SEPARATION OF EMPLOYMENT IN VIOLATION OF LABOR CODE SECTIONS 201, 202, AND 203**

**(Against All Defendants by Plaintiff and the Waiting Time Class)**

78.    Plaintiff incorporates all paragraphs above as though fully set forth herein.

79.    At all times relevant to this Complaint, Plaintiff and the Waiting Time Class were employees of Defendants, covered by Labor Code sections 201 and 202.

80.    An employer is required to pay all unpaid wages timely after an employee's employment ends. The wages are due immediately upon termination or within seventy-two (72) hours of resignation. Labor Code sections 201, 202. If an employee gave seventy-two (72) hours previous notice, they were entitled to payment of all wages earned and unpaid at the time of resignation. *Id*.

81.    Defendants failed to pay Plaintiff and on information and belief, the Waiting Time Class, with all wages earned and unpaid prior to separation of employment, in accordance with either Labor Code section 201 or 202. Plaintiff is informed and believes and thereon alleges that at all relevant times within the limitations period applicable to this cause of action, Defendants maintained a policy or practice of not paying hourly employees all earned wages timely upon separation of employment.

82.    Defendants' failure to pay Plaintiff and the Waiting Time Class with all wages earned prior to separation of employment timely in accordance with Labor Code sections 201 and 202 was willful. Defendants had the ability to pay all wages earned by hourly workers prior to separation of employment in accordance with Labor Code sections 201 and 202, but intentionally adopted policies or practices incompatible with the requirements of Labor Code sections 201 and 202. Defendants' practices include failing to pay at least minimum wage for all time worked, meal period premium wages, and/or rest period premium wages. When Defendants failed to pay

**51**

Plaintiff and the Waiting Time Class all earned wages timely upon separation of employment, they knew what they were doing and intended to do what they did.

83.    Pursuant to either Labor Code section 201 or 202, Plaintiff and the Waiting Time Class are entitled to all wages earned prior to separation of employment that Defendants have yet to pay them.

84.    Pursuant to Labor Code section 203, Plaintiff and the Waiting Time Class are entitled to continuation of their wages, from the day their earned and unpaid wages were due until paid, up to a maximum of thirty (30) days.

85.    As a result of Defendants' conduct, Plaintiff and the Waiting Time Class have suffered damages in an amount, subject to proof, to the extent they were not paid for all wages earned prior to separation of employment.

86.    As a result of Defendants' conduct, Plaintiff and the Waiting Time Class have suffered damages in an amount, subject to proof, to the extent they were not paid all continuation wages owed under Labor Code section 203.

87.    Plaintiff and the Waiting Time Class are entitled to recover the full amount of their unpaid wages, continuation wages under Labor Code section 203, and interest thereon.

## SEVENTH CAUSE OF ACTION

**UNFAIR BUSINESS PRACTICES, IN VIOLATION OF BUSINESS AND PROFESSIONS CODE SECTIONS 17200, ET SEQ.**

**(Against All Defendants by Plaintiff and the California Class)**

88.    Plaintiff incorporates all paragraphs above as though fully set forth herein.

89.    The unlawful conduct of Defendants alleged herein constitutes unfair competition within the meaning of Business and Professions Code section 17200. This unfair conduct includes Defendants' use of policies, practices, and/or procedures which resulted in: failure to pay employees at least at the minimum wage rate for all hours which they worked; failure to authorize or permit all legally required and/or compliant meal periods or pay meal period premium wages; failure to authorize or permit all legally required and/or compliant rest periods or pay rest period premium wages; failure to timely pay wages during employment; failure to provide accurate wage

and hour statements; and failure to timely pay all wages due upon separation of employment. Due to their unfair and unlawful business practices in violation of the Labor Code, Defendants have gained a competitive advantage over other comparable companies doing business in the State of California that comply with their obligations to pay minimum wages for all hours worked; authorize or permit all legally required and/or compliant meal periods or pay meal period premium wages; authorize or permit all legally required and/or compliant rest periods or pay rest period premium wages; timely pay wages during employment; provide accurate wage and hour statements; and timely pay all wages due upon separation of employment.

90.    As a result of Defendants' unfair competition as alleged herein, Plaintiff and the California Class have suffered injury in fact and lost money or property, as described in more detail above.

91.    Pursuant to Business and Professions Code section 17203, Plaintiff and the California Class are entitled to restitution of all wages and other monies rightfully belonging to them that Defendants failed to pay and wrongfully retained by means of their unlawful and unfair business practices. Plaintiff also seeks an injunction against Defendants on behalf of the California Class enjoining Defendants, and any and all persons acting in concert with them, from engaging in each of the unlawful policies, practices, and/or procedures set forth herein.

## **PRAYER FOR RELIEF**

**WHEREFORE, PLAINTIFF ON HIS OWN BEHALF AND ON BEHALF OF THOSE SIMILARLY SITUATED, PRAYS AS FOLLOWS:**

**ON THE FIRST, SECOND, THIRD, FOURTH, FIFTH, SIXTH, AND SEVENTH, CAUSES OF ACTION:**

1.    That the Court determine that this action may be maintained as a class action (for the entire California Class and/or any and all of the specified sub-classes) pursuant to Code of Civil Procedure section 382 and any other applicable law;

2.    That the named Plaintiff be designated as a class representative for the California Class (and all sub-classes thereof);

3.    For a declaratory judgment that the policies, practices, and/or procedures

complained herein are unlawful; and

4.    For an injunction against Defendants enjoining them, and any and all persons acting in concert with them, from engaging in each of the unlawful policies, practices, and/or procedures set forth herein.

**ON THE FIRST CAUSE OF ACTION:**

1.    That Defendants be found to have violated the minimum wage provisions of the Labor Code and the IWC Wage Order as to Plaintiff and the Minimum Wage Class;

2.    For damages, according to proof, including but not limited to unpaid wages;

3.    For any and all legally applicable penalties;

4.    For liquidated damages pursuant to Labor Code section 1194.2;

5.    For pre-judgment interest, including but not limited to that recoverable under Labor Code section 1194, and post-judgment interest;

6.    For attorneys' fees and costs of suit, including but not limited to that recoverable under Labor Code section 1194;

7.    For pre-judgment interest, including but not limited to that recoverable under Labor Code section 218.6, and post-judgment interest; and

8.    For such other further relief, in law and/or equity, as the Court deems just or appropriate.

**ON THE SECOND CAUSE OF ACTION:**

1.    That Defendants be found to have violated the meal period provisions of the Labor Code and the IWC Wage Order as to Plaintiff and the Meal Period Class;

2.    For damages, according to proof, including unpaid premium wages;

3.    For any and all legally applicable penalties;

4.    For pre-judgment interest, including but not limited to that recoverable under Labor Code section 218.6, and post-judgment interest; and

5.    For such other further relief, in law and/or equity, as the Court deems just or appropriate.

**ON THE THIRD CAUSE OF ACTION:**

**54**

---

**COMPLAINT**

25

1.       That Defendants be found to have violated the rest period provisions of the Labor Code and the IWC Wage Order as to Plaintiff and the Rest Period Class;

2.       For damages, according to proof, including unpaid premium wages;

3.       For any and all legally applicable penalties;

4.       For pre-judgment interest, including but not limited to that recoverable under Labor Code section 218.6, and post-judgment interest; and

5.       For such other further relief, in law and/or equity, as the Court deems just or appropriate.

### ON THE FOURTH CAUSE OF ACTION:

1.       That Defendants be found to have violated Labor Code 204 as to Plaintiff and the Pay Day Class;

2.       For damages, according to proof;

3.       For any and all legally applicable penalties, including but not limited to those recoverable pursuant to Labor Code section 210(a);

4.       For pre-judgment interest, including but not limited to that recoverable under Labor Code section 218.6, and post-judgment interest; and

5.       For such other further relief, in law and/or equity, as the Court deems just or appropriate.

### ON THE FIFTH CAUSE OF ACTION:

1.       That Defendants be found to have violated the provisions of the Labor Code regarding accurate itemized paystubs as to Plaintiff and the Wage Statement Class;

2.       For damages and/or penalties, according to proof, including damages and/or statutory penalties under Labor Code section 226, subdivision (e), and any other legally applicable damages or penalties;

3.       For pre-judgment interest and post-judgment interest;

4.       For an injunction against Defendants enjoining them, and any and all persons acting in concert with them, from engaging in violations of Labor Code section 226, subdivision (a);

5.       For attorneys' fees and costs of suit, including but not limited to those recoverable under Labor Code section 226, subdivision (e); and

6.       For such other further relief, in law and/or equity, as the Court deems just or appropriate.

## ON THE SIXTH CAUSE OF ACTION:

1.       That Defendants be found to have violated the provisions of the Labor Code regarding payment of all unpaid wages due upon resignation or termination as to Plaintiff and the Waiting Time Class;

2.       For damages and/or penalties, according to proof, including damages and/or statutory penalties under Labor Code section 203 and any other legally applicable damages or penalties;

3.       For pre-judgment interest, including under Labor Code section 218.6, and post-judgment interest; and

4.       For such other further relief, in law and/or equity, as the Court deems just or appropriate.

## ON THE SEVENTH CAUSE OF ACTION:

1.       That Defendants be found to have violated Business and Professions Code sections 17200, *et seq.*, for the conduct alleged herein as to the California Class;

2.       A declaratory judgment that the practices complained herein are unlawful;

3.       An injunction against Defendants enjoining them, and any and all persons acting in concert with them, from engaging in each of the unlawful practices, policies and patterns set forth herein;

4.       For restitution to the full extent permitted by law; and

5.       For such other further relief, in law and/or equity, as the Court deems just or appropriate.

**56**

Dated: January 9, 2023

Respectfully submitted,
**LAVI & EBRAHIMIAN, LLP**

By: _____

Joseph Lavi, Esq.
Vincent C. Granberry, Esq.
Danielle E. Montero, Esq.
Attorneys for Plaintiff
FRANCISCO J. MEZA,
on behalf of himself and others similarly situated

## **DEMAND FOR JURY TRIAL**

Plaintiff FRANCISCO J. MEZA demands a trial by jury for himself and the California Class on all claims so triable.

Dated: January 9, 2023

Respectfully submitted,
**LAVI & EBRAHIMIAN, LLP**

By: _____

Joseph Lavi, Esq.
Vincent C. Granberry, Esq.
Danielle E. Montero, Esq.
Attorneys for Plaintiff
FRANCISCO J. MEZA,
on behalf of himself and others similarly situated

57

Electronically FILED by Superior Court of California, County of Riverside on 01/10/2023 05:06 PM
Case Number CVRI2300103 0000045069247 - Marita C. Ford, Interim Executive Officer/Clerk of the Court By Viviana Gonzalez, Clerk

**CM-010**

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Joseph Lavi, Esq. (SBN 209776); Vincent C. Granberry, Esq. (SBN 276483) Danielle E. Montero, Esq. (SBN 333945) LAVI & EBRAHIMIAN, LLP 8889 W. Olympic Boulevard, Suite 200 Beverly Hills, California 90211 | |

TELEPHONE NO.: T: (310) 432-0000    FAX NO.: F: (310) 432-0001
ATTORNEY FOR *(Name):* PLAINTIFF Francisco J. Meza

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Riverside
STREET ADDRESS: 4050 Main Street
MAILING ADDRESS: 4050 Main Street
CITY AND ZIP CODE: Riverside, CA 92501
BRANCH NAME: Riverside Historic Courthouse

CASE NAME: Meza v. Swift Beef Company, et al.

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: |
|---|---|---|
| [X] Unlimited (Amount demanded exceeds $25,000) [ ] Limited (Amount demanded is $25,000 or less) | [ ] Counter [ ] Joinder Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | CVRI2300103 |
| | | JUDGE: |
| | | DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)

**Employment**
[ ] Wrongful termination (36)
[X] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)

**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)

**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)

**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
[ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition *(not specified above)* (43)

2. This case [X] is [ ] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties     d. [X] Large number of witnesses
   b. [X] Extensive motion practice raising difficult or novel     e. [ ] Coordination with related actions pending in one or more courts
       issues that will be time-consuming to resolve         in other counties, states, or countries, or in a federal court
   c. [X] Substantial amount of documentary evidence     f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. [X] monetary  b. [X] nonmonetary; declaratory or injunctive relief  c. [ ] punitive

4. Number of causes of action *(specify):* Seven (7)

5. This case [X] is [ ] is not a class action suit.

6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: January 9, 2023

Vincent C. Granberry, Esq.
_____          _____
(TYPE OR PRINT NAME)                      (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on **all** other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

**58**

| Form Adopted for Mandatory Use Judicial Council of California CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740; Cal. Standards of Judicial Administration, std. 3.10 |
|---|---|---|

Legal Solutions Plus

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**CM-010**

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

**CASE TYPES AND EXAMPLES**

**Auto Tort**
Auto (22)—Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) (*if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto*)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/ Wrongful Death
Product Liability (*not asbestos or toxic/environmental*) (24)
Medical Malpractice (45)
  Medical Malpractice– Physicians & Surgeons
  Other Professional Health Care Malpractice
Other PI/PD/WD (23)
  Premises Liability (e.g., slip and fall)
  Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
  Intentional Infliction of Emotional Distress
  Negligent Infliction of Emotional Distress
  Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) (*not civil harassment*) (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice (*not medical or legal*)
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
  Breach of Rental/Lease Contract (*not unlawful detainer or wrongful eviction*)
  Contract/Warranty Breach—Seller Plaintiff (*not fraud or negligence*)
  Negligent Breach of Contract/ Warranty
  Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
  Collection Case—Seller Plaintiff
  Other Promissory Note/Collections Case
Insurance Coverage (*not provisionally complex*) (18)
  Auto Subrogation
  Other Coverage
Other Contract (37)
  Contractual Fraud
  Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property (*not eminent domain, landlord/tenant, or foreclosure*)

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) (*if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential*)

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
  Writ–Administrative Mandamus
  Writ–Mandamus on Limited Court Case Matter
  Writ–Other Limited Court Case Review
Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims (*arising from provisionally complex case type listed above*) (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
  Abstract of Judgment (Out of County)
  Confession of Judgment (*non-domestic relations*)
  Sister State Judgment
  Administrative Agency Award (*not unpaid taxes*)
  Petition/Certification of Entry of Judgment on Unpaid Taxes
  Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint (*not specified above*) (42)
  Declaratory Relief Only
  Injunctive Relief Only (*non-harassment*)
  Mechanics Lien
  Other Commercial Complaint Case (*non-tort/non-complex*)
  Other Civil Complaint (*non-tort/non-complex*)

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition (*not specified above*) (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief from Late Claim
  Other Civil Petition

**59**

Electronically FILED by Superior Court of California, County of Riverside on 01/09/2023 05:05 PM
Case Number CVRI2300103 0000045069248 - Marita C. Ford, Interim Executive Officer/Clerk of the Court By Viviana Gonzalez, Clerk

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF RIVERSIDE**

| | |
|---|---|
| ☐ **BANNING** 311 E. Ramsey St., Banning, CA 92220 | ☐ **MURRIETA** 30755-D Auld Rd., Suite 1226, Murrieta, CA 92563 |
| ☐ **BLYTHE** 265 N. Broadway, Blythe, CA 92225 | ☐ **PALM SPRINGS** 3255 E. Tahquitz Canyon Way, Palm Springs, CA 92262 |
| ☐ **CORONA** 505 S. Buena Vista, Rm. 201, Corona, CA 92882 | ☒ **RIVERSIDE** 4050 Main St., Riverside, CA 92501 |
| ☐ **MORENO VALLEY** 13800 Heacock St., Ste. D201, Moreno Valley, CA 92553 | |

RI-CI032

ATTORNEY OR PARTY WITHOUT ATTORNEY (*Name, State Bar Number and Address*)

Joseph Lavi, Esq. (SBN 209776); Vincent C. Granberry, Esq. (SBN 276483)
Danielle E. Montero, Esq. (SBN 333945)
LAVI & EBRAHIMIAN, LLP
8889 W. Olympic Boulevard, Suite 200, Beverly Hills, Ca 90211

TELEPHONE NO: (310) 432-0000    FAX NO. (*Optional*) (310) 432-0001
E-MAIL ADDRESS (*Optional*): dmontero@lelawfirm.com; wht2@lelawfirm.com
ATTORNEY FOR (*Name*): PLAINITFF Francisco J. Meza

*FOR COURT USE ONLY*

PLAINTIFF/PETITIONER: Francisco J. Meza

DEFENDANT/RESPONDENT: Swift Beef Company, et al.

CASE NUMBER:

CVRI2300103

**CERTIFICATE OF COUNSEL**

The undersigned certifies that this matter should be tried or heard in the court identified above for the reasons specified below:

☐    The action arose in the zip code of: 92518 _____

☐    The action concerns real property located in the zip code of: _____

☐    The Defendant resides in the zip code of: _____

For more information on where actions should be filed in the Riverside County Superior Courts, please refer to Local Rule 3115 at www.riverside.courts.ca.gov.

I certify (or declare) under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date January 9, 2023 _____

Vincent C. Granberry, Esq. _____
(TYPE OR PRINT NAME OF ☒ ATTORNEY ☐ PARTY MAKING DECLARATION)

► _____
(SIGNATURE)

Approved for Mandatory Use
Riverside Superior Court
RI-CI032 [Rev. 07/15/21]

**CERTIFICATE OF COUNSEL**

Local Rule 3117
riverside.courts.ca.gov/localfrms/localfrms.shtml

Case 5:23-cv-00236-JLS-SGE Document 1-1 Filed 02/10/23 Page 61 of 169 Page ID #:61

Case Number CVRI2300103 0000045069249 - Marita C. Ford, Interim Executive Officer/Clerk of the Court By Viviana Gonzalez, Clerk
Electronically FILED by Superior Court of California, County of Riverside on 01/09/2023 05:06 PM

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

**NOTICE TO DEFENDANT:** SWIFT BEEF COMPANY; and DOES 1 to
*(AVISO AL DEMANDADO):* 100, inclusive

**YOU ARE BEING SUED BY PLAINTIFF:** FRANCISCO J. MEZA, on
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):* behalf of himself and
others similarly situated

---

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

---

The name and address of the court is:
*(El nombre y dirección de la corte es):*

Riverside County Superior Court
Riverside Historic Courthouse
4050 Main Street
Riverside, CA 92501

**CASE NUMBER:**
*(Número del Caso):*

CVRI2300103

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*

Joseph Lavi, Esq. (SBN 209776);Vincent C. Granberry, Esq. (SBN 276483  T: (310) 432-0000      F: (310) 432-0001
Danielle E. Montero, Esq. (SBN 333945)
LAVI & EBRAHIMIAN, LLP
8889 W. Olympic Boulevard, Suite 200, Beverly Hills, CA 90211

DATE:                                                                          Clerk, by _____ V. Gonzalez _____, Deputy
*(Fecha)* 01/09/2023                                                          *(Secretario)*                                         *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

1. [ ] as an individual defendant.
2. [ ] as the person sued under the fictitious name of *(specify):*

3. [ ] on behalf of *(specify):*

   under: [ ] CCP 416.10 (corporation)                    [ ] CCP 416.60 (minor)
          [ ] CCP 416.20 (defunct corporation)            [ ] CCP 416.70 (conservatee)
          [ ] CCP 416.40 (association or partnership)      [ ] CCP 416.90 (authorized person)
          [ ] other *(specify):*

4. [ ] by personal delivery on *(date):*


[SEAL]
GC68150(g)

**61**

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Legal Solutions Plus

Code of Civil Procedure §§ 412.20, 465

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF RIVERSIDE

Historic Court House
4050 Main Street, Riverside, CA 92501
www.riverside.courts.ca.gov

**Case Number:**   CVRI2300103

**Case Name:**   MEZA vs SWIFT BEEF COMPANY

JOSEPH LAVI
8889 W OLYMPIC BLVD STE 200

Beverly Hills, CA 90211

## NOTICE OF CASE MANAGEMENT CONFERENCE

The Case Management Conference is scheduled as follows:

| Hearing Date | Hearing Time | Department |
|---|---|---|
| 03/13/2023 | 8:30 AM | Department 10 |
| Location of Hearing: | | |
| 4050 Main Street, Riverside, CA 92501 | | |

No later than 15 calendar days before the date set for the case management conference or review, each party must file a case management statement and serve it on all other parties in the case.  CRC, Rule 3.725.

The plaintiff/cross-complainant shall serve a copy of this notice on all defendants/cross-defendants who are named or added to the complaint and file proof of service.

Any disqualification pursuant to CCP Section 170.6 shall be filed in accordance with that section.

**Remote Appearance at Hearing:** The court **strongly encourages** parties and counsel to appear remotely for non-evidentiary hearings in civil cases.  Pursuant to local rule 3132, persons intending to appear remotely shall notify all opposing parties of their intention to appear remotely before the hearing.  Notice may be given informally, including by telephone, email, or text message. To appear remotely, on the day of the hearing, either use your computer, mobile device, or dial (833) 568-8864 (toll free) or (669) 254-5252, when prompted enter:

Meeting ID: 161-888-5460 #
Access Code: Press the # key (no number after the #)

Please MUTE your phone until your case is called, and it is your turn to speak.  It is important to note that you must call twenty (20) minutes prior to the scheduled hearing time to check in or there may be a delay in your case being heard.

CI-NOCMC
(Rev. 03/02/22)

**62**

|  | Interpreter services are available upon request.  If you need an interpreter, please complete and submit the online Interpreter Request Form (https://riverside.courts.ca.gov/Divisions/InterpreterInfo/ri-in007.pdf) or contact the clerk's office and verbally request an interpreter. All requests must be made in advance with as much notice as possible, and prior to the hearing date in order to secure an interpreter. |
|  | Assistive listening systems, computer-assisted real time captioning, or sign language interpreter services are available upon request if at least 5 days notice is provided.  Contact the Office of the ADA Coordinator by calling (951) 777-3023 or TDD (951) 777-3769 between 8:00 am and 4:30 pm or by emailing ADA@riverside.courts.ca.gov to request an accommodation.  A *Request for Accommodations by Persons With Disabilities and Order* (form MC-410) must be submitted when requesting an accommodation.  (Civil Code section 54.8.) |

## CERTIFICATE OF MAILING

I certify that I am currently employed by the Superior Court of California, County of Riverside, and that I am not a party to this action or proceeding.  In my capacity, I am familiar with the practices and procedures used in connection with the mailing of correspondence.  Such correspondence is deposited in the outgoing mail of the Superior Court.  Outgoing mail is delivered to and mailed by the United States Postal Service, postage prepaid, the same day in the ordinary course of business.  I certify that I served a copy of the Notice of Case Management Conference on this date, by depositing said copy as stated above.

Dated: 01/10/2023

MARITA C. FORD,
Interim Court Executive Officer/Clerk of the Court

by: _____

V. Gonzalez, Deputy Clerk

CI-NOCMC
(Rev. 03/02/22)

**63**

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF RIVERSIDE

Historic Court House
4050 Main Street, Riverside, CA 92501
www.riverside.courts.ca.gov

**Case Number:**    CVRI2300103

**Case Name:**    MEZA vs SWIFT BEEF COMPANY

FRANCISCO J MEZA

## NOTICE OF CASE MANAGEMENT CONFERENCE

The Case Management Conference is scheduled as follows:

| Hearing Date | Hearing Time | Department |
|---|---|---|
| 03/13/2023 | 8:30 AM | Department 10 |
| Location of Hearing: **4050 Main Street, Riverside, CA 92501** | | |

No later than 15 calendar days before the date set for the case management conference or review, each party must file a case management statement and serve it on all other parties in the case.  CRC, Rule 3.725.

The plaintiff/cross-complainant shall serve a copy of this notice on all defendants/cross-defendants who are named or added to the complaint and file proof of service.

Any disqualification pursuant to CCP Section 170.6 shall be filed in accordance with that section.

**Remote Appearance at Hearing:** The court **strongly encourages** parties and counsel to appear remotely for non-evidentiary hearings in civil cases.  Pursuant to local rule 3132, persons intending to appear remotely shall notify all opposing parties of their intention to appear remotely before the hearing.  Notice may be given informally, including by telephone, email, or text message. To appear remotely, on the day of the hearing, either use your computer, mobile device, or dial (833) 568-8864 (toll free) or (669) 254-5252, when prompted enter:

Meeting ID: 161-888-5460 #
Access Code: Press the # key (no number after the #)

Please MUTE your phone until your case is called, and it is your turn to speak.  It is important to note that you must call twenty (20) minutes prior to the scheduled hearing time to check in or there may be a delay in your case being heard.

CI-NOCMC
(Rev. 03/02/22)

**64**

| | |
|---|---|
|  | Interpreter services are available upon request.  If you need an interpreter, please complete and submit the online Interpreter Request Form (https://riverside.courts.ca.gov/Divisions/InterpreterInfo/ri-in007.pdf) or contact the clerk's office and verbally request an interpreter. All requests must be made in advance with as much notice as possible, and prior to the hearing date in order to secure an interpreter. |
|  | Assistive listening systems, computer-assisted real time captioning, or sign language interpreter services are available upon request if at least 5 days notice is provided.  Contact the Office of the ADA Coordinator by calling (951) 777-3023 or TDD (951) 777-3769 between 8:00 am and 4:30 pm or by emailing ADA@riverside.courts.ca.gov to request an accommodation.  A *Request for Accommodations by Persons With Disabilities and Order* (form MC-410) must be submitted when requesting an accommodation.  (Civil Code section 54.8.) |

## CERTIFICATE OF MAILING

I certify that I am currently employed by the Superior Court of California, County of Riverside, and that I am not a party to this action or proceeding.  In my capacity, I am familiar with the practices and procedures used in connection with the mailing of correspondence.  Such correspondence is deposited in the outgoing mail of the Superior Court.  Outgoing mail is delivered to and mailed by the United States Postal Service, postage prepaid, the same day in the ordinary course of business.  I certify that I served a copy of the Notice of Case Management Conference on this date, by depositing said copy as stated above.

Dated: 01/10/2023

MARITA C. FORD,
Interim Court Executive Officer/Clerk of the Court


by: _____
          V. Gonzalez, Deputy Clerk

CI-NOCMC
(Rev. 03/02/22)

**65**

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF RIVERSIDE

Historic Court House
4050 Main Street, Riverside, CA 92501
www.riverside.courts.ca.gov

**Case Number:**   CVRI2300103

**Case Name:**   MEZA vs SWIFT BEEF COMPANY

SWIFT BEEF COMPANY

### NOTICE OF CASE MANAGEMENT CONFERENCE

The Case Management Conference is scheduled as follows:

| Hearing Date | Hearing Time | Department |
|---|---|---|
| 03/13/2023 | 8:30 AM | Department 10 |
| Location of Hearing: **4050 Main Street, Riverside, CA 92501** | | |

No later than 15 calendar days before the date set for the case management conference or review, each party must file a case management statement and serve it on all other parties in the case.  CRC, Rule 3.725.

The plaintiff/cross-complainant shall serve a copy of this notice on all defendants/cross-defendants who are named or added to the complaint and file proof of service.

Any disqualification pursuant to CCP Section 170.6 shall be filed in accordance with that section.

**Remote Appearance at Hearing:** The court **strongly encourages** parties and counsel to appear remotely for non-evidentiary hearings in civil cases.  Pursuant to local rule 3132, persons intending to appear remotely shall notify all opposing parties of their intention to appear remotely before the hearing.  Notice may be given informally, including by telephone, email, or text message. To appear remotely, on the day of the hearing, either use your computer, mobile device, or dial (833) 568-8864 (toll free) or (669) 254-5252, when prompted enter:

Meeting ID: 161-888-5460 #
Access Code: Press the # key (no number after the #)

Please MUTE your phone until your case is called, and it is your turn to speak.  It is important to note that you must call twenty (20) minutes prior to the scheduled hearing time to check in or there may be a delay in your case being heard.

CI-NOCMC
(Rev. 03/02/22)

**66**

 Interpreter services are available upon request.  If you need an interpreter, please complete and submit the online Interpreter Request Form (https://riverside.courts.ca.gov/Divisions/InterpreterInfo/ri-in007.pdf) or contact the clerk's office and verbally request an interpreter. All requests must be made in advance with as much notice as possible, and prior to the hearing date in order to secure an interpreter.

 Assistive listening systems, computer-assisted real time captioning, or sign language interpreter services are available upon request if at least 5 days notice is provided.  Contact the Office of the ADA Coordinator by calling (951) 777-3023 or TDD (951) 777-3769 between 8:00 am and 4:30 pm or by emailing ADA@riverside.courts.ca.gov to request an accommodation.  A *Request for Accommodations by Persons With Disabilities and Order* (form MC-410) must be submitted when requesting an accommodation.  (Civil Code section 54.8.)

## CERTIFICATE OF MAILING

I certify that I am currently employed by the Superior Court of California, County of Riverside, and that I am not a party to this action or proceeding.  In my capacity, I am familiar with the practices and procedures used in connection with the mailing of correspondence.  Such correspondence is deposited in the outgoing mail of the Superior Court.  Outgoing mail is delivered to and mailed by the United States Postal Service, postage prepaid, the same day in the ordinary course of business.  I certify that I served a copy of the Notice of Case Management Conference on this date, by depositing said copy as stated above.

Dated: 01/10/2023

MARITA C. FORD,
Interim Court Executive Officer/Clerk of the Court

by: _____
V. Gonzalez, Deputy Clerk

CI-NOCMC
(Rev. 03/02/22)

**67**

Notice has been printed for the following Firm/Attorneys or Parties: CVRI2300103


LAVI, JOSEPH                                          MEZA, FRANCISCO J
8889 W OLYMPIC BLVD STE 200

Beverly Hills, CA 90211


SWIFT BEEF COMPANY

**68**

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF RIVERSIDE

Historic Court House
4050 Main Street, Riverside, CA 92501
www.riverside.courts.ca.gov

**Case Number:**    CVRI2300103

**Case Name:**    MEZA vs SWIFT BEEF COMPANY

## NOTICE OF DEPARTMENT ASSIGNMENT

The above entitled case is assigned to the Honorable Harold W. Hopp in Department 10  for All Purposes.

Any disqualification pursuant to CCP section 170.6 shall be filed in accordance with that section.

The court follows California Rules of Court, Rule 3.1308(a)(1) for tentative rulings (see Riverside Superior Court Local Rule 3316).  Tentative Rulings for each law and motion matter are posted on the internet by 3:00 p.m. on the court day immediately before the hearing at http://riverside.courts.ca.gov/tentativerulings.shtml.  If you do not have internet access, you may obtain the tentative ruling by telephone at (760) 904-5722.

To request oral argument, you must (1) notify the judicial secretary at (760) 904-5722 and (2) inform all other parties, no later than 4:30 p.m. the court day before the hearing.  If no request for oral argument is made by 4:30 p.m., the tentative ruling will become the final ruling on the matter effective the date of the hearing.

The filing party shall serve a copy of this notice on all parties.

| | |
|---|---|
| <br /> | Interpreter services are available upon request.  If you need an interpreter, please complete and submit the online Interpreter Request Form (https://riverside.courts.ca.gov/Divisions/InterpreterInfo/ri-in007.pdf) or contact the clerk's office and verbally request an interpreter. All requests must be made in advance with as much notice as possible, and prior to the hearing date in order to secure an interpreter. |
| | Assistive listening systems, computer-assisted real time captioning, or sign language interpreter services are available upon request if at least 5 days notice is provided.  Contact the Office of the ADA Coordinator by calling (951) 777-3023 or TDD (951) 777-3769 between 8:00 am and 4:30 pm or by emailing ADA@riverside.courts.ca.gov to request an accommodation.  A *Request for Accommodations by Persons With Disabilities and Order* (form MC-410) must be submitted when requesting an accommodation.  (Civil Code section 54.8.) |

Dated: 01/10/2023

MARITA C. FORD,
Interim Court Executive Officer/Clerk of the Court

by: _____

V. Gonzalez, Deputy Clerk

CI-NODACV
(Rev. 02/16/21)

**69**

SUPERIOR COURT OF THE STATE OF CALIFORNIA, COUNTY OF RIVERSIDE

| | | |
|---|---|---|
| CASE TITLE:  Meza v. Swift Beef Company | Department 10 | **F I L E D**<br>SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF RIVERSIDE |
| CASE NO.:    CVRI2300103 | | **JAN 1 1 2023** |
| DATE:        January 10, 2023 | | |
| PROCEEDING:  Class Action Case Management Order #1 | | E. Escobedo |

Unless otherwise ordered, this Case Management Order ("CMO") shall govern the management of this case.

### A.    IN GENERAL

1.    The Court finds that this is a complex case.  *Cal. Rules of Court*, rules 3.400(c)(6), 3.403(b).  The clerk shall impose fees accordingly. The court will entertain objections to this designation at the next Case Management Conference or status conference.

2.    This case has been assigned to Department 10, Judge Harold W. Hopp, for all purposes, including case management, law and motion, and trial.

3.    The plaintiff shall serve a copy of this CMO on any defendant who has not yet appeared, and shall file proof of service promptly thereafter.

### B.    CASE MANAGEMENT AND THE CASE PROGRESSION PLAN

1.    The Court finds that this case involves exceptional circumstances that are likely to prevent this case from meeting the goals and deadlines set by *California Rules of Court*, rule 3.713(b).  Accordingly, this case is exempt from those case disposition time goals.  *Id.*, rule 3.714(c)(1).  With the input from the parties, the Court shall develop a case progression plan with the goal of disposing of the case within three years. *Id.*, rule 3.714(c)(2).

2.    Prior to the next Case Management Conference, counsel for the parties shall meet and confer regarding the joint statement required by RSC Local Rule 3160.

3.    Not later than five court days in advance of the next Case Management Conference, all parties that have appeared shall file the joint statement required by rule 3160 instead of Judicial Council form CM-110 [case management statement]. In addition to the items listed in Rule 3160, the statement shall:

a.    Advise the Court whether any of the parties or their counsel are aware of any other class action, putative class action, or other type of representative or collective action in this or any other jurisdiction that asserts claims similar to those here on behalf of

a class, putative class, or other group of individuals that in any way overlaps with the putative class alleged here.

b.   Describe the parties' case progression plan, which shall include at least (i) a statement as to whether the parties agree to pursue mediation and (ii) a plan of the informal discovery and any formal discovery to be conducted in preparation for mediation, class certification, or both.

4.   At least five court days before any subsequent Case Management Conference, Status Conference, or Trial Setting Conference, the parties shall file a joint statement that:

a.   Describes the status of the case, including (i) the results of any mediation or other settlement efforts, (ii) the degree to which the case progression plan has been implemented and (iii) any changes or additions to the case progression plan; and

b.   Identifies any issues or concerns that either party wishes to discuss with the Court.

5.   If mediation is unsuccessful, the case progression plan shall be expanded prior to the next status conference to include (a) a pre-certification discovery schedule, (b) a deadline for filing a motion for class certification, and a proposed briefing schedule for that motion.

6.   The Court intends to conduct all Case Management Conferences and Status Conferences informally, in chambers. Should an appearance be necessary, the Court will inform all counsel via email and/or telephone.


C.   <u>MEDIATION</u>

The court expects the parties to engage in private mediation at the earliest practicable time, i.e., as soon as all parties have obtained – preferably through informal means – sufficient information from the opposing party(s) to enable them to engage in meaningful mediation.


D.   <u>DISCOVERY</u>

1.   Counsel are encouraged to engage in informal discovery rather than relying on formal discovery. The Court does not stay or otherwise limit informal discovery.

2.   The discovery stay under RSC Local Rule 3160(B) is vacated as to interrogatories concerning the identity of and contact information for members of the putative class. Any such interrogatories propounded by the plaintiff to the defendant shall be accompanied by (a) a proposed *Belaire West* notice, (b) the name of a proposed third-party administrator, and (c) a proposal regarding the allocation of the cost of the notice.

3.   All other formal discovery concerning class-certification issues is stayed pending further order of the court. Requests for leave to propound formal discovery concerning class-certification issues may be made either by submitting a declaration and proposed order or by making an oral request at status conferences or at informal conferences with the Court

in accordance with paragraph 5 below.  The Court will grant such a request if the applicant demonstrates:

a.    That the parties have met and conferred to discuss both (i) the scope and sources of the information needed either to permit a meaningful mediation or to support or oppose a class-certification motion and (ii) whether the parties would agree to exchange that information informally;

b.    That the parties were unable to reach an agreement; and

c.    The discovery is reasonably necessary either (i) to permit a meaningful mediation or (ii) to make or oppose a certification motion.

4.    All formal discovery concerning solely the merits of the plaintiff's claims (as opposed to whether a class should be certified to prosecute those claims) is stayed until a motion regarding class certification has been granted.

5.    No discovery motions may be filed without leave of court.  If a discovery dispute arises:

a.    The parties shall meet and confer either in person or by telephone in a good-faith effort to resolve the dispute.  If, despite that effort, the parties are unable to resolve the dispute, then counsel shall contact the clerk of this department to schedule an informal conference at which the court will discuss the dispute with counsel and, if not resolved to the parties' satisfaction, will consider any request for leave to file a formal motion.

b.    The conference may be conducted by telephone or in person, as counsel prefer.  Prior to the conference, the party seeking relief shall provide the clerk of this department with a brief (two-to-three sentence) description in writing of the reason for the conference.  If the conference is to be by telephone, counsel shall also provide the clerk with the call-in telephone number and passcode.

c.    If the opposing side will not agree to participate in the informal conference, then the moving party shall bring an ex parte application for leave to file a discovery motion.

d.    Requesting an IDC tolls the deadline for the discovery motion. *Cal. Civ. Proc. Code* § 2016.080(c)(2).)  If the court grants the IDC request, tolling ends on the date the IDC is complete.

e.    If the court denies the IDC request, tolling ends on the date the court gives notice of the denial, subject to *California Code of Civil Procedure*, section 1013(a).

f.    If the court takes no action on the request, tolling ends 30 calendar days after the request. *Cal. Civ. Proc. Code* § 2016.080(d).

## E.   REQUESTS FOR DISMISSAL OF CLASS CLAIMS

If the plaintiff seeks to dismiss or otherwise abandon either the entire action, any cause of action asserted on behalf of the putative class, or any defendant against whom any cause of action is asserted on behalf of the class, Court approval must be sought as follows:

1.  The plaintiff shall not use the preprinted Request for Dismissal, Judicial Council form
    CIV-110.  Instead, the request shall be made by the submission to the court of an
    Application for Dismissal that includes: (a) a declaration from plaintiff's counsel; (b) a
    declaration from each named plaintiff; and (c) a proposed order of dismissal.

2.  The declarations shall state whether the plaintiff has attempted to settle the plaintiff's
    individual claims, and if so, the status of those negotiations.

3.  The declarations must comply with *California Rules of Court*, rule 3.770(a), pertaining to
    any consideration being paid for the dismissal.  Because the purpose of that rule is to avoid
    collusion between the parties to the detriment of the potential class members, the showing
    must be made by declaration rather than by stipulation.

4.  If the dismissal is in exchange for any consideration other than a waiver of costs, the
    declaration of plaintiff's counsel shall authenticate a fully executed copy of any settlement
    agreement. In addition, the declaration shall address each of the following:

    a.  What is the form and value of the consideration, how was it calculated, and to
        whom is it to be paid?

    b.  Is the plaintiff required to execute a release in addition to a dismissal? If so, what is
        the scope of that release?

    c.  How is the retention of that consideration either by the plaintiff or the plaintiff's
        attorney consistent with their respective fiduciary duties to the class? In particular,
        if the plaintiff has negotiated a settlement of any individual claim against any
        defendant separate from the representative claims, and that settlement provides for
        the payment to any plaintiff of consideration other than a waiver of costs, the
        declaration shall as to each such individual claim:

        i.   Estimate both (A) the total amount of damages, monetary penalties,
             attorney's fees and costs, interest, or other relief that the plaintiff would be
             awarded if the action were entirely successful at trial on that claim, and (B)
             the total amount of damages, monetary penalties, attorney's fees and costs,
             interest, or other relief that the plaintiff could reasonably expect to be
             awarded at trial, taking into account the likelihood of prevailing and other
             attendant risks;

        ii.  Briefly describe the basis for those estimates; and

        iii. Describe the form and value of the consideration to be paid in satisfaction of
             that claim.

5.  The declarations by plaintiff and plaintiff's counsel shall state (a) whether the declarant
    has ever informed any of the putative class members – whether formally or informally,
    orally or in writing, individually or as a group – of the preparation, filing, or pendency of
    the action, and (b) if so, both (i) the nature and extent of that information and (ii) whether
    the declarant knows or has a means of discovering the name and mailing address of the
    putative class member or members to whom that information was communicated.

6.   If the dismissal is in exchange for no consideration other than a waiver of costs, the request shall explain the reason for the dismissal. If the reason is that the named plaintiff no longer wishes to prosecute the case on behalf of the putative class:

   a.   The plaintiff shall explain the reason for his or her change of heart.  Simply stating that the plaintiff no longer wishes to represent the class is not sufficient.

   b.   The plaintiff's counsel shall explain why counsel wishes to abandon the class claims rather than locate a new class representative.

7.   Any request shall explain why the putative class members will not be prejudiced by the requested dismissal.

8.   If the complaint alleges any claims under *California Labor Code* section 2699 (PAGA), and the plaintiff intends to dismiss any of those representative claims because the plaintiff has negotiated a settlement of individual claims against any defendant separate from the representative claims, and that settlement provides for the payment to any plaintiff of any consideration (other than a waiver of costs) that is in addition to or instead of PAGA penalties, the plaintiff's counsel's declaration shall describe the information required by section G.9.


F.   <u>MOTIONS & APPLICATIONS GENERALLY</u>

1.   A party making an ex parte application must, inter alia, "[a]ttempt to determine whether the opposing party will appear to oppose the application." *Cal. Rules of Court*, rule 3.1204(a)(2).  That attempt shall be made by telephone.  Written notice asking the opposing party to inform the moving party of the opposing party's intentions is not sufficient.

2.   A party desiring an order shortening time for notice of a motion shall not bring an ex parte application for such an order until that party has first (a) reserved the earliest available hearing date for the motion and (b) filed the motion.  The Court will not deem the ex parte application as constituting the motion to be heard.


G.   <u>MOTIONS FOR PRELIMINARY APPROVAL OF SETTLEMENT</u>

If the matter is settled, a motion for preliminary approval of the settlement must be filed.  All applications for such approval shall be made by noticed motion, and shall be supported by declaration.  In order to aid the Court's review, all declarations filed in support of a motion for preliminary approval shall include appropriate headings that identify the specific paragraph of Section G which is being addressed.  For example, counsel's estimate of the number of individuals in the class should be preceded by a heading that identifies G(3)(a)(1), and counsel's estimate of the recovery by the average class member if the settlement were approved should be preceded by heading that identifies G(3)(a)(iv).

1. <u>Settlement Agreements in General</u>

   a. The settlement agreement shall not provide that any order, notice, form, or judgment shall include any provision that this order prohibits from being included in such a document. (See §§ G.3 through G.10 and I, *infra*.)

   b. The settlement agreement shall be written, signed by all necessary parties, and filed, either in the form of a separate stipulation or as an authenticated attachment to a declaration of counsel.

2. <u>Notices of Settlement</u>

   Regardless of the terms of the proposed settlement, counsel shall not file a Notice of Settlement of Entire Case (Judicial Council form CM-200).

3. <u>The Motion in General</u>

   a. The motion shall be supported by a declaration from the plaintiff's attorney that, inter alia:

      i. Sets forth the attorney's estimate of the number of individuals in the class and for any settlement that includes a claim for statutory penalties under PAGA, sets forth the attorney's estimate of the number of aggrieved employees employed during the applicable PAGA period.

      ii. (A) Sets forth the attorney's estimate of the total amount of damages, monetary penalties or other relief that the class would be awarded on each claim if that claim were entirely successful at trial; (B) explains how that estimate was calculated; and (C) states the collective total for all of the claims.

      iii. Sets forth: (A) the attorney's estimate as to each claim of the total amount of damages, monetary penalties or other relief that the class could reasonably expect to be awarded at trial, taking into account difficulties of proof, the defendant's defenses, and other attendant risks; (B) the attorney's reasons for those estimates; (C) the likely award at trial for all claims collectively.

      iv. Sets forth the attorney's estimate of the recovery by the average class member, exclusive of any amounts payable under the settlement of any PAGA claim, if the settlement were approved. If the recovery by different class members will vary, the attorney shall also estimate the range (high and low) of possible recoveries.

      v. Sets forth the attorney's estimate of the recovery by the individual aggrieved employees under the proposed settlement of any PAGA claim.

      vi. Describes in detail the nature and extent of the formal and informal discovery exchanged and other factual investigation conducted to determine the size of the class and the strength of the class claims.

vii.  States (A) whether the attorney is aware of any class, representative or other collective action in any other court in this or any other jurisdiction that asserts claims similar to those asserted in this action on behalf of a class or group of individuals some or all of whom would also be members of the class defined in this action and (B) whether the attorney made reasonable inquiry of other members of the attorney's law firm and any associated law firm to determine whether those individuals are aware of any such similar actions. If any such similar actions are known to exist, the declaration shall also state (C) the name and case number of any such case, the nature of the claims asserted, the definition of the class or other parties on whose behalf the action is brought, and the procedural status of that case.

b.  The motion shall be supported by a declaration from the defendant's attorney that states (i) whether the attorney is aware of any class, representative or other collective action in any other court in this or any other jurisdiction that asserts claims similar to those asserted in this action on behalf of a class or group of individuals some or all of whom would also be members of the class defined in this action and (ii) the name and case number of any such case, the nature of the claims asserted, the definition of the class or other parties on whose behalf the action is brought, and the procedural status of that case.

c.  The motion shall describe how the value of any uncashed checks, unpaid cash residue, or other unclaimed or abandoned funds will be distributed.

i.  In a wage-and-hour case or any other case seeking relief on behalf of a class of employees, the Court believes that redistribution of the value of uncashed settlement check to those class members who have cashed their checks will better serve the public interest and the interest of the class than distribution in the manner otherwise prescribed by *California Code of Civil Procedure* section 384(b). If one or more of the parties disagree, then the motion shall be supported by a declaration from a party or the party's counsel explaining the factual basis for the disagreement.

ii.  In any other type of case, the motion shall describe the intended distribution of unclaimed funds in accordance with *California Code of Civil Procedure* section 384(b), and shall explain the reason for choosing proposed recipient as opposed to other potential recipients considered.

iii.  The motion shall be supported by a declaration from a knowledgeable person from the proposed recipient. The declaration shall:

A.  Establish that the recipient is a nonprofit organization, foundation, or program of the type described in that subdivision.

B.  Describe the history of the recipient, the types of projects that it has conducted or supported over the last five years, and any particular use to which it would intend to devote the unpaid residue if received.

    C.    Describe the geographic area in which the recipient operates in general, and the nature and extent of the services it provides in Riverside County in particular.

   iv.   The declarations of the attorneys for the plaintiff and for the defendant shall describe both (A) any relationship between the proposed recipient and (1) any class representative or other party, (2) any officer, director, or manager of any party, or (3) any attorney or law firm for any party, and (B) the inquiries the attorney made to determine whether there is any such relationship.

   v.   The agreement shall not provide that the unclaimed funds be deposited into the Industrial Relations Unpaid Wage Fund. *Cal. Lab. Code* § 96.6. That fund is limited to wages or monetary benefits determined by the Labor Commissioner to be due to an employee after an investigation by the Labor Commissioner, and thus will not accept wages, penalties or interest distributed as part of the settlement of a lawsuit brought by a plaintiff other than the Labor Commissioner.

d.   If the settlement contemplates the use of an administrator to implement the terms of the settlement, the motion shall be supported by:

   i.   A declaration from the plaintiff's attorney, stating whether bids were sought from multiple potential administrators and, if so, the results of that competitive bidding. If the parties did not select the lowest bidder, the declaration shall explain that decision.

   ii.   A declaration from the administrator describing:

    A.    The administrator's experience;

    B.    The fee to be charged by the administrator to perform the services described in the settlement agreement and proposed order;

    C.    Whether that fee is (1) fixed, (2) hourly, or (3) hourly with a cap; and

    D.    How the fee was calculated.

e.   Any release to be given by the participating class members (other than the class representatives) shall be limited to:

   i.   The defendants named in the complaint, together with their officers, directors, employees and agents. If any other parties are sought to be released, the motion shall both (A) identify those other parties by name and (B) explain the facts that justify their inclusion.

   ii.   The claims stated in the complaint and those based solely upon the facts alleged in the complaint.

   iii.   Liability that arose during the class period as defined by the settlement agreement.

Page 8 of 17

iv.  Any release of claims for PAGA penalties shall bind only the named plaintiff and the State of California and shall release only those claims described in the notice sent by plaintiff to the LWDA, and only to the extent that they are alleged in the complaint.  An example of an acceptable release is as follows: "Plaintiff releases all claims for statutory penalties that could have been sought by the Labor Commissioner for the violations identified in Plaintiff's pre-filing letter to the LWDA; Plaintiff does not release any aggrieved employee's claim for wages or damages."

f.  If notice is not to be given by first class mail to addresses believed to be current, the motion shall discuss the proposed method of giving notice, the alternative methods considered, and the reasons that the proposed method is the one most likely to give actual notice to the greatest number of class members.

g.  If the settlement requires any of the class members to submit claims, the motion shall explain why a claim process is reasonably necessary.  If the defendant knows (A) the identity of the class members, (B) their addresses or former addresses, and (C) the facts necessary to calculate the recovery of each class member, the Court will require a strong showing of necessity for a claims process.

h.  If the settlement provides that any portion of the consideration paid or deposited by the defendant may revert to the defendant, the motion shall explain (i) the circumstances under which that reversion would occur, (ii) the maximum amount of any reversion, and (iii) why that reversion is fair.

i.  If the settlement includes compensation for unpaid wages, the motion shall describe how the employer's share of any applicable payroll taxes will be handled. The Court suggests that the employer's share not be paid out of the gross settlement fund.  The Court is not likely to include the amount of those payments when calculating the plaintiff's counsel's percentage attorney's fee.

j.  The motion shall describe how individual settlement payments will be allocated for tax purposes among wages, interest and non-PAGA penalties and how such allocation was determined.  Payments to aggrieved employees pursuant to the settlement of any PAGA claim should be addressed separately and allocated solely as penalties.  The 25% portion of PAGA penalties payable to aggrieved employees should not be included as part of the net settlement amount.

k.  The documents that will be read by or used by the class members – the proposed notice, objection form, exclusion form, and any claim form – shall be drafted in a manner that is likely to be readily understood by the members of the class.

i.  In particular, they shall not contain any Latin terms (such as et al. and et seq.), any legal terms of art (such as nonexempt and class certification), or any unfamiliar symbols or abbreviations (such as §, LLC, and IWO).

ii.  To assist the Court in determining whether those documents comply with that directive, the motion shall be supported by a declaration of the defendant

on personal knowledge concerning the likely age, education, and experience of the class members, and of their ability to read and comprehend English.

4. <u>The Proposed Order</u>

a. The motion shall be accompanied by a separate proposed order which shall include, as attachments to the order, the proposed notice (*Cal. Rules of Court*, rule 3.769(e)), proposed exclusion form, proposed objection form, any proposed claim form, and any other form that is proposed to accompany the notice. The Court is likely to modify those proposed forms. Therefore, the Court will not issue an order that merely incorporates by reference the forms attached to the settlement agreement.

b. The settlement agreement shall not be attached to the order.

c. Counsel shall carefully review both the terms and the terminology of the order and accompanying forms (notice, objection form, exclusion form, and any claim form) to confirm that the various documents are internally consistent, consistent with each other, and consistent with the settlement agreement.

d. The order shall state the name of any settlement administrator, and shall describe the nature of the services that the administrator will be required to perform, either directly or by reference to the settlement agreement.

e. The order shall provide that the notice shall be accompanied by an exclusion form that the class members may use. The order shall provide that any exclusion form shall be submitted to the settlement administrator rather than filed with the court. The order shall not require the class member to send copies of the exclusion form to counsel, but may require the settlement administrator to do so. The order shall provide that the settlement administrator shall file a declaration concurrently with the filing of any motion for final approval, authenticating a copy of every exclusion form received by the administrator.

f. The proposed order shall provide that the notice shall be accompanied by an objection form that the class members may use. The order shall provide that any objection shall be submitted to the settlement administrator rather than filed with the court. The order shall not require the class member to send copies of the objection form to counsel, but may require the settlement administrator to do so. The order shall provide that the settlement administrator shall file a declaration concurrently with the filing of any motion for final approval, authenticating a copy of every objection form received by the administrator.

g. Neither the order, the notice, nor the objection form shall require an objecting party to do either of the following, either personally or through counsel:

i. To appear at the hearing on the motion for final approval for that party's objection to be considered.

ii. To file or serve, or to state in the objection, a notice of intention to appear at the hearing on the motion for final approval.

h.  The order shall provide a proposed date for the Final Approval Hearing.  The order
    shall require that either counsel or the administrator must give notice to any
    objecting party of any continuance of the hearing of the motion for final approval.

i.  Neither the order nor the notice shall purport to enjoin the class members from
    filing any actions or administrative claims or proceedings pending the final hearing
    on the settlement, or for any other period.

j.  If notice is to be given by mail, and if the class members will be required to submit
    a claim form, the order shall provide:

    i.   That the notice be accompanied by a stamped envelope addressed to the
         claims administrator; and

    ii.  That the claims administrator be required to send a reminder notice to every
         class member from whom no claim or exclusion request is received within
         30 days of mailing the notice.

5.  <u>The Proposed Notice</u>

    a.  The notice shall include an estimate of the likely recovery by the individual class
        member to whom the notice is sent, if known.  If it is not known, the notice shall
        include an estimate of the likely recovery by the average class member.  If the
        recovery by different members will vary, the notice shall also include an estimate of
        the range of possible recoveries.

    b.  To avoid discouraging any dissenting class members from objecting to the proposed
        settlement, the notice shall clearly indicate that the Court has determined only that
        there is sufficient evidence to suggest that the proposed settlement might be fair,
        adequate, and reasonable, and that any final determination of those issues will be
        made at the final hearing.

    c.  The notice shall advise the class members of where they can find the settlement
        agreement, by describing (i) the full title and filing date either of the settlement
        agreement or of the declaration or other document to which the agreement was
        attached when filed with the Court, (ii) the address of the courthouse to which the
        case is assigned, and (iii) the address of the court's website at which the case file
        can be viewed on-line.

    d.  Neither the notice nor the documents enclosed with it shall describe any settlement
        administrator as the "claims administrator" unless the class members are required to
        submit claims.

    e.  The notice shall include a description of any release being given by the class
        members.

    f.  If the action includes a claim for statutory penalties under PAGA, the notice shall
        explain what PAGA is and advise class members/aggrieved employees that they
        may neither object to nor opt out of the PAGA settlement.  The Notice shall also

Page 11 of 17

80

describe the terms of the settlement of the PAGA claim, including who is an aggrieved employee and shall provide an estimate of the individual aggrieved employee's share of the penalties and advise aggrieved employees that the payments will be reported on a Form 1099.

6.    The Proposed Claim Form

The information required to be provided by the class member on any claim form shall not exceed the minimum information necessary to (a) identify the claimant, (b) process the claim, and (c) contact the claimant to clarify any uncertainties.

7.    The Proposed Objection Form

a.    The objection form shall (i) instruct the objecting class member that the objection must be mailed or delivered to the settlement administrator, (ii) state the name and address of the settlement administrator, and (iii) state the date by which the objection must be mailed or otherwise delivered.

b.    The information required to be provided by an objecting class member on the objection form shall not exceed the minimum information necessary to (i) identify the objector as a person entitled to object to the settlement, (ii) describe the nature of and basis for the objection, and (iii) contact the objector to clarify any uncertainties.

c.    If a claim must be submitted to participate in the settlement, the objection form shall remind the objector that, to participate in the settlement in the event that the objection is overruled, the objector must also submit a claim.

8.    The Proposed Exclusion Form

a.    The exclusion form shall (i) instruct the class member seeking exclusion that the exclusion form must be mailed or delivered to the settlement administrator, (ii) state the name and address of the settlement administrator, and (iii) state the date by which the exclusion form must be mailed or otherwise delivered.

b.    The information required to be provided by a class member on the exclusion form shall not exceed the minimum information necessary to (i) identify the person as a class member and (ii) contact the person to clarify any uncertainties.

c.    The exclusion form shall indicate that exclusion from the class settlement will not result in exclusion from any PAGA settlement.

9.    PAGA Penalties

a.    If the action includes a claim for statutory penalties under PAGA, the motion shall explain the terms of any settlement of that claim.

b.    If the settlement provides for the payment of penalties under PAGA, the motion shall be accompanied by a declaration describing how the penalties were calculated and otherwise establishing facts sufficient to allow the Court to review and approve

those penalties as required by *California Labor Code* section 2699(*l*). In particular, the declaration shall explain:

    i.    The nature of the alleged violations;

    ii.    The number of alleged individual violations, including both the length of the relevant employment period and the number of employees allegedly employed during that period;

    iii.    The total amount of penalties for which the defendant is potentially liable if all allegations are proven;

    iv.    The total amount of penalties defendant is likely to be found liable at trial considering the weight of the evidence, the clarity of the applicable law, and the strength of any factual or legal defense likely to be asserted by the defendant;

    v.    The likelihood that any violations would be proven to have been knowing and intentional;

    vi.    Any facts that tend to suggest that the imposition of the total amount of statutory penalties for which the defendant would be likely to be found liable at trial would be unjust, arbitrary and oppressive, or confiscatory;

    vii.    How the amount of the agreed-upon penalties was calculated or otherwise arrived at; and

    viii.    Any other factors that are material to a determination that the amount of the agreed-upon penalties is fair.

  c.    All PAGA penalties shall be distributed among all aggrieved employees, even those who opt out of the class settlement.

  d.    Any release of claims for PAGA penalties:

    i.    Shall bind only the named plaintiff and the State of California;

    ii.    Shall release only the defendant named in the complaint, together with its officers, directors, employees and agents. If any other parties are sought to be released, the motion shall both (i) identify those other parties by name and (ii) explain the facts that justify their inclusion; and

    iii.    Shall release only those claims described in the notice sent by the plaintiff to the LWDA, and only to the extent that they are alleged in the complaint.

    iv.    An example of an acceptable release is as follows: "Plaintiff releases all claims for statutory penalties that could have been sought by the Labor Commissioner for the violations identified in Plaintiff's pre-filing letter to the LWDA; Plaintiff does not release any aggrieved employee's claim for wages or damages."

10.    <u>Revised Documents</u>

Page 13 of 17

If the Court either denies the motion or continues the hearing on the motion, and if the plaintiff thereafter files any amended settlement agreement, order, notice or form in support of either that motion or a renewed motion, the plaintiff shall file a declaration authenticating a "red-lined" version of the amended document, showing how the earlier version was modified.

## H.    MOTIONS FOR FINAL APPROVAL OF A SETTLEMENT

If a motion for preliminary approval is granted, the plaintiff must thereafter move for final approval of the settlement.

1.    The order granting preliminary approval will set the date for the hearing on the plaintiff's motion for final approval.  Promptly after the entry of that order, the plaintiff shall reserve a law and motion hearing on the date set in the order.

2.    Any request for a "service," "enhancement," or "incentive" payment to a named class representative shall be supported by a declaration from the proposed recipient in which the declarant:

a.    Describes the services performed by the declarant to further the prosecution of the action;

b.    Estimates the time incurred by the declarant in performing those services;

c.    Describes any risks assumed or benefits received by the declarant in prosecuting the action;

d.    Describes any adverse consequences actually suffered by the declarant as a result of prosecuting the action; and

e.    States the amount that the declarant expects to receive as a class member.

3.    Any request of attorney's fees shall be supported by a declaration of plaintiff's counsel that provides evidence of the total amount of time spent by counsel, a description of the work performed, the reasonableness of the fees charged and a detailed description of the costs actually incurred.  Additionally, if relevant, the request for fees shall also advise the Court whether there is an agreement about how attorney fees will be paid, including fee splitting, and whether the client(s) has been given written notice.

4.    Any request for compensation for expenses incurred by the plaintiff's attorneys shall be supported by a detailed declaration or other evidence describing the date, nature, and amount of each expense incurred.

5.    The motion shall be accompanied by a declaration from the settlement administrator. That declaration shall:

a.    Describe both (i) the administrator's distribution of the notice, objection form, exclusion form, and any claim form, and (ii) the results thereof.  If claims are required, the declaration shall describe the number of claims received and the total

value of the claims. The declaration shall clearly distinguish between valid forms and any forms that are untimely, incomplete, or otherwise invalid.

b.  Attach and authenticate (i) a copy of the final version of the notice and of all forms enclosed with it, including the objection form, the exclusion form, and any claim form, (ii) a copy of every objection form received, and (iii) a copy of every exclusion form received. If the reasons stated on any objection form are in a language other than English, the administrator shall include a translation into English.

c.  Describe (i) the services performed by the administrator to the date of the declaration, (ii) the time and expenses incurred to perform those services, and (iii) either the fee charged for those the services or the agreed-upon flat fee.

d.  Describe (i) the services to be performed by the administrator after the date of the declaration, (ii) the estimated time and expenses needed to perform those services, and (iii) either the estimated fee for those the services or the agreed-upon flat fee.

6.  If the settlement includes compensation for unpaid wages, and if the employer's share of the payroll taxes is to be paid out of the settlement funds, the motion shall be supported by a declaration estimating the amount of those taxes.

7.  The motion shall be accompanied by a proposed judgment or, if counsel prefer, a proposed combined order and judgment.

8.  The judgment shall require that:

a.  Any envelope transmitting a settlement distribution to a class member shall bear the notation, "YOUR CLASS ACTION SETTLEMENT CHECK IS ENCLOSED."

b.  Any settlement distribution check shall be negotiable for at least 90 days but not more than 180 days from the date of mailing.

c.  The administrator shall mail a reminder postcard to any class member whose settlement distribution check has not been negotiated within 60 days after the date of mailing.

d.  If (i) any of the class members are current employees of the defendant, (ii) the distribution mailed to those employees is returned to the administrator as being undeliverable, and (iii) the administrator is unable to locate a valid mailing address, the administrator shall arrange with the defendant to have those distributions delivered to the employees at their place of employment.

9.  The first reference in the judgment to the settlement agreement shall include a statement of (a) the title of the settlement agreement, (b) the date the agreement was filed, and (c) the name of the document to which the agreement was attached, if any.

10.  The judgment shall state the names of any class members who excluded themselves from the settlement, if any.

11. If multiple law firms represent the plaintiff, the judgment shall separately state the fees and expenses to be paid to each firm.

12. If the settlement agreement provides for the distribution of any funds to a *cy pres* recipient, the judgment shall state the recipient's name and address, and shall describe the circumstances under which funds would be paid to that recipient.

13. The judgment shall not:

   a. Expose the class members to a potential contempt charge by barring or otherwise enjoining the class members from prosecuting the released claims.

   b. Include a provision that the class members shall be deemed to have agreed not to sue on any released claims, or any other provision that may expose the class members to potential liability for either breach of contract or misrepresentation.

   c. Provide for the dismissal of the action. (Cal. Rules of Court, rule 3.769(h).)

14. The judgment may restrict the plaintiff and the defendant from offering the settlement agreement into evidence in actions between each other, but shall not purport to prevent other parties from doing so or to otherwise predetermine its admissibility in litigation involving third parties.

15. The judgment shall describe both the text of the notice of entry of judgment to be given to the class members *California Rules of Court*, rule 3.771(b), the party or person required to give that notice, and the manner in which that notice is to be given.

16. If the Court either denies the motion for final approval or continues the hearing on the motion, and if the plaintiff thereafter files any amended proposed order or judgment, or other document in support of either that motion or a renewed motion, the plaintiff shall file a declaration authenticating a "red-lined" version of the amended document, showing how the earlier version was modified.

17. The order granting the motion for final approval shall provide a date for the Final Report (Nonappearance) Hearing and a deadline for the filing of a report concerning the amount of money distributed.

I. FINAL REPORT (NONAPPEARANCE) HEARING

Any report pursuant to *California Code of Civil Procedure* section 384(b), shall be filed within 5 court days of the nonappearance hearing and shall be in the form of a declaration from the administrator or other declarant with personal knowledge of the facts, and, if there is unpaid residue to be distributed, shall be accompanied by a proposed amended judgment. The report shall be in the form of a declaration from the settlement administrator or other declarant with personal knowledge of the facts, and to describe (i) the date the checks were mailed, (ii) the total number of checks mailed to class members, (iii) the average amount of those checks, (iv) the number of checks that remain uncashed, (v) the total value of those uncashed checks, (vi) the average amount of the uncashed checks, and (vii) the nature and date of the disposition of those unclaimed funds.

If applicable, the proposed amended judgment shall require counsel for Plaintiff to send a copy of any amended judgment which distributes funds to a cy pres recipient to the Judicial Council in compliance with *California Code of Civil Procedure* section 384.5. Further the correspondence by counsel shall include a cover letter providing the Judicial Council with the information required pursuant to *California Government Code* section 68520. Proof of Service shall be filed with the court within 15 days of the filing of the judgment.

J.    MOTIONS REGARDING CLASS CERTIFICATION

1.    No motion for class certification or to deny class certification shall be filed without leave of court. Before leave to file such a motion is requested, the Court expects the parties to have exhausted efforts to mediate a resolution of the case.

2.    At the time that the Court grants leave of court to file either a motion for class certification or a motion denying class certification, the Court will also establish a briefing schedule and will set a status conference on a date after the reply brief is due. At the status conference, the Court will determine the date on which the motion will be heard. The hearing date may be far enough in the future to allow for further mediation.

3.    If multiple classes or subclasses are alleged, the motion shall address the issues of definition, ascertainability and numerosity separately as to each class or subclass.

4.    If multiple class representatives are proposed, the motion shall address the issues of typicality and adequacy of representation separately as to each representative.

5.    If multiple class claims are alleged, the motion shall address the issue of whether common questions of law and fact predominate separately as to each such claim.

6.    A motion for class certification shall include:

    a.    A trial plan that explains how the plaintiff will establish a prima facie case at trial. If the plaintiff intends to rely upon statistical evidence to prove any portion of any class claim, the plan shall describe that evidence and how it will be used to promote manageability. If the defendant has raised any affirmative defenses that rely upon individual evidence, the plan that explains how those defenses can be litigated.

    b.    A declaration of proposed class counsel, describing his or her experience in representing a class at trial.

Harold W. Hopp
Judge of the Superior Court

Page 17 of 17

86

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF RIVERSIDE

Historic Court House
4050 Main Street, Riverside, CA 92501

**Case Number:**    CVRI2300103

**Case Name:**    MEZA vs SWIFT BEEF COMPANY

## CERTIFICATE OF MAILING

I certify that I am currently employed by the Superior Court of California, County of Riverside, and that I am not a party to this action or proceeding. In my capacity, I am familiar with the practices and procedures used in connection with the mailing of correspondence. Such correspondence is deposited in the outgoing mail of the Superior Court. Outgoing mail is delivered to and mailed by the United States Postal Service, postage prepaid, the same day in the ordinary course of business. I certify that I served a copy of the foregoing notice on this date, by depositing said copy as stated above.

Notices Mailed: Class Action Case Management Order #1

Dated: 01/11/2023

MARITA C. FORD,
Interim Court Executive Officer/Clerk of the Court

by: _____
E. Escobedo, Deputy Clerk

CW-CCM
(Rev. 08/24/17)

87

Notice has been printed for the following Firm/Attorneys or Parties: CVRI2300103

LAVI, JOSEPH
8889 W OLYMPIC BLVD STE 200

Beverly Hills, CA 90211

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF RIVERSIDE

Historic Court House
4050 Main Street, Riverside, CA 92501

**Case Number:**   CVRI2300103

**Case Name:**   MEZA vs SWIFT BEEF COMPANY

JOSEPH LAVI
8889 W OLYMPIC BLVD STE 200

Beverly Hills, CA 90211

### CERTIFICATE OF MAILING

I certify that I am currently employed by the Superior Court of California, County of Riverside, and that I am not a party to this action or proceeding.  In my capacity, I am familiar with the practices and procedures used in connection with the mailing of correspondence.  Such correspondence is deposited in the outgoing mail of the Superior Court.  Outgoing mail is delivered to and mailed by the United States Postal Service, postage prepaid, the same day in the ordinary course of business.  I certify that I served a copy of the foregoing notice on this date, by depositing said copy as stated above.

Notices Mailed: Class Action Case Management Order #1

Dated: 01/11/2023

MARITA C. FORD,
Interim Court Executive Officer/Clerk of the Court

by: _____

E. Escobedo, Deputy Clerk

CW-CCM
(Rev. 08/24/17)

**89**

Notice has been printed for the following Firm/Attorneys or Parties: CVRI2300103

LAVI, JOSEPH
8889 W OLYMPIC BLVD STE 200

Beverly Hills, CA 90211

**90**

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF RIVERSIDE

Historic Court House
Court Ruling re: Class Action Case Management Order #1

01/11/2023
8:30 AM
Department 10

**CVRI2300103**
**MEZA vs SWIFT BEEF COMPANY**

Honorable Harold W. Hopp, Judge
E. Escobedo, Courtroom Assistant
Court Reporter: None

**APPEARANCES:**

No Appearances

Court deems case complex pursuant to Section CRC 3.400.
Minute entry completed.

**91**

# Exhibit B

# JOINT STIPULATION OF SETTLEMENT AGREEMENT AND RELEASE

This Joint Stipulation of Settlement Agreement and Release is made and entered between and among Defendant Swift Beef Company and Defendant JBS USA Food Company Holdings (collectively, "Defendant") and Plaintiff Silvia Valdivia De Cabrera and Plaintiff Eddie Duron ("Plaintiffs"), on their own behalf and on behalf of a putative class and each of its Class Members (as defined herein) in *Silvia Valdivia De Cabrera v. Swift Beef Company,* Case No. 5:18-cv-02551-PSG-E, and *Eddie Duron v. JBS USA Food Company Holdings*, Case No. 5:19-cv-00702-PSG-E (together, "the Litigation"), with the assistance of counsel. Plaintiffs and Defendant are referred to in this Agreement collectively as the "Parties." Subject to the approval of the Court, the Parties agree that the Litigation and the Released Claims and PAGA Released Claims (as defined herein) shall be fully and finally compromised, settled and released, and dismissed with prejudice and final judgment be entered upon the terms and conditions as set forth herein.

## I. DEFINITIONS

In addition to the other terms defined in this Agreement, the terms below have the following meanings:

**1.** **Administration Costs**: The costs and expenses incurred by the Settlement Administrator to administer this Settlement. All Administration Costs shall be paid from the Qualified Settlement Fund.

**2.** **Agreement, Settlement Agreement, or Settlement**: The settlement agreement memorialized in this document, subject to approval by the Court, entitled "Joint Stipulation of Settlement Agreement and Release."

**3.** **Attorneys' Fee Award**: The amount, not to exceed Two Hundred Forty Nine Thousand Nine Hundred Ninety Nine Dollars and Ninety Nine Cents ($249,999.99), which Plaintiffs' attorneys will request the Court to approve. The Attorneys' Fee Award

1

**93**

Case 5:23-cv-00236-RSG-E Document 1-1 Filed 02/10/23 Page 94 of 169 Page ID
#:94
Case 5:10-cv-02991-PSG-E Document 41-1 Filed 05/06/20 Page 91 of 80 Page ID #:402

shall be finally approved by the Court.  The Attorneys' Fee Award shall be paid from the Qualified Settlement Fund.  Defendant will not oppose Class Counsel's application for an Attorneys' Fee Award.  If the Court awards less than the amount requested, the Net Settlement Amount shall be recalculated to reflect the actual Attorneys' Fee Award, and shall not be a reason to invalidate or terminate this Agreement.  Class Counsel shall disclose to the Court the existence of any fee sharing agreements between and among them.

4. **Class**:  All current and former non-exempt employees employed by Defendant in the State of California at any time from November 2, 2014, to the date the Court grants Preliminary Approval. Defendant has provided Plaintiffs a list of 1,138 current and former non-exempt employees for the time period November 2, 2014 through May 9, 2019 with each class member's dates of employment. The parties estimate the size of the class will increase due to additional workweeks and new hires.

5. **Class Counsel**:  Andranik Tsarukyan and Armen Zenjiryan of Remedy Law Group LLP and Shaun Setareh of Setareh Law Group.

6. **Class Data**:  The information Defendant will provide to the Settlement Administrator as defined in Section III.9.b.i below.

7. **Class Member**:  Each person eligible to participate in this Settlement who is a member of the Class as defined above.  If such person is incompetent or deceased, the person's legal guardian, executor, heir or successor-in-interest.

8. **Class Notice or Notice**:  The Notice of Class Action Settlement, substantially similar to the form attached hereto as **Exhibit A**, or as otherwise approved by the Court, which is to be mailed to Class Members.

9. **Class Representatives or Plaintiffs**: Silvia Valdivia De Cabrera and Eddie Duron will ask the Court to be approved as the Class Representatives.  Defendant will not oppose this request.

10. **Class Representative Enhancement Payment**: The amount the Court awards to Plaintiff Silvia Valdivia De Cabrera and Plaintiff Eddie Duron for their service as Class Representatives, which will not exceed Seven Thousand Five Hundred Dollars ($7,500.00) for each Plaintiff, for the efforts taken by them on behalf of the Class. This payment shall be paid from the Qualified Settlement Fund. Defendant will not oppose Plaintiffs' request for a Class Representative Enhancement Payment, which shall be subject to approval of the Court. If the Court awards less than the amount requested, the Net Settlement Amount shall be recalculated to reflect the actual Class Representative Enhancement Payment, and shall not be a reason to invalidate or terminate this Agreement.

11. **Cost Award**: The amount that the Court orders to be paid to Class Counsel for payment of recoverable litigation costs, which shall not exceed Ten Thousand Dollars ($10,000.00). The Cost Award will be paid from the Qualified Settlement Fund and Defendant will not oppose Class Counsel's Cost Award request. The Cost Award is subject to Court approval. If the Court awards less than the amount requested, the Net Settlement Amount shall be recalculated to reflect the actual Cost Award, and shall not be a reason to invalidate or terminate this Agreement. The Cost Award approved by the Court shall encompass, without limitation, all work performed and costs and expenses incurred by, or at the direction of, any attorney purporting to represent the Class through the Effective Date, including costs to be incurred in connection with approval by the Court of the Settlement, and all work to be performed and costs and expenses, if any, incurred in connection with administering the Settlement through entry of judgment with prejudice.

12. **Counsel for Defendant**: Attorneys Kelly K. Robinson and Jonathon Watson of Sherman & Howard L.L.C.

13. **Defendant**: Swift Beef Company, JBS USA Food Company Holdings, and any defendant identified in *Duron v. JBS USA Food Company Holdings* (Civil Action 5:19-

cv-00702-PSG-E) pending in the United States District Court for the Central District of California, as that action may be severed, amended, or remanded to the state court.

14.    **Effective Final Settlement Date**:  Shall be the date when all of the following events have occurred: (a) this Stipulation has been executed by all Parties and Class Counsel and Defendant's Counsel; (b) the Court has given preliminary approval to the Settlement; (c) Class Notice has been given to Class Members providing them an opportunity to exclude themselves from the Settlement; (d) the Court has held a Final Approval Hearing and entered a final order approving this Stipulation; and (e) the time for appeal, if applicable, has expired. If no objection was made to the Settlement, there is no right to appeal and the Effective Date is the date the Court signs the final order and judgment. If an objection has been filed, the Effective Date means: (i) the date of final affirmation of the Final Approval Hearing, the expiration of the time for, or the denial of, a petition to review, or if review is granted, the date of final affirmation of the Final Approval Hearing following review pursuant to the grant; or (ii) the date of final dismissal of any appeal from the Final Approval Hearing or the final dismissal of any proceeding to review the Final Approval Hearing, provided the final affirmation of the Final Approval Hearing is affirmed and not reversed in any part; or (iii) if no appeal is filed, the expiration date of the time for the filing or noticing of any appeal from the Court's final affirmation of the Final Approval Hearing.

15.    **Exclusion Form**:  Election Not to Participate or Opt-out statement by a Class Member, as described further in Section III.9.d.

16.    **Final Approval Hearing**: The final hearing held to ascertain the fairness, reasonableness, and adequacy of the Settlement.

17.    **Final Judgment or Final Approval**:  The final order entered by the Court finally approving this Agreement and entering judgment.

4

18. **Gross Settlement Amount or GSA**: The total value of the Settlement is a non-reversionary amount of Seven Hundred Fifty Thousand Dollars ($750,000.00) to be paid into the Qualified Settlement Fund by Defendant as a full settlement of the Litigation, Released Claims, and PAGA Released Claims. The GSA shall cover: (1) the Net Settlement Amount to be paid to Participating Class Members; (2) the Attorneys' Fee Award and Cost Award to Class Counsel for attorneys' fees and costs, as approved by the Court; (3) the Class Representative Enhancement payment to the Class Representatives, as approved by the Court; (4) Administration Costs, as approved by the Court; (5) Required Tax Withholding; and (6) the California Labor Code Private Attorneys General Act of 2004 (Cal. Labor Code §§ 2698 *et seq.*) ("PAGA") Payment, as approved by the Court. No portion of the Gross Settlement Amount will revert to Defendant, unless the Settlement is not approved by the Court or is otherwise voided or terminated. The Gross Settlement Amount does not include Employer's Payroll Taxes, which shall be paid separately and in addition to the GSA by Defendant.

19. **Individual Settlement Share(s)**: The amount payable to each Participating Class Member under the terms of this Settlement Agreement after Required Tax Withholding. Class Members are not required to submit a claim form to receive their Individual Settlement Shares pursuant to this Agreement.

20. **LWDA**: The California Labor and Workforce Development Agency. Class Counsel shall be responsible for timely submitting any copies of judgments or orders that are required to be submitted to the LWDA.

21. **Net Settlement Amount or NSA**: The total amount of money available for payout to Participating Class Members, which is the GSA less Required Tax Withholding, the Attorneys' Fee Award, Cost Award, Class Representative Enhancement, the PAGA Payment, and Administration Costs. For avoidance of doubt, the NSA does not include Employer's Payroll Taxes, which shall be paid separately by Defendant. In other words,

5

the NSA is the portion of the GSA that will be distributed to Class Members who do not validly and timely complete an Exclusion Form.

22.     **PAGA Employees**:  All current and former non-exempt employees employed by Defendant in the State of California at any time from November 30, 2017 to the date the Court grants Preliminary Approval. PAGA Employees are not required to submit a claim form to receive their share of the PAGA Fund pursuant to this Agreement.

23.     **PAGA Fund**:  Twenty-five percent (25%) of the PAGA Payment to be distributed to PAGA Employees.

24.     **PAGA Payment**:  The PAGA Payment consists of Seven Thousand Five Hundred Dollars ($7,500.00) of the Gross Settlement Amount allocated to satisfy the PAGA penalties claim as alleged in the Litigation.  Subject to the approval of the Court, seventy-five percent (75%) of the PAGA Payment or Five Thousand Six Hundred Twenty-Five Dollars ($5,625.00) shall be paid to the LWDA, and twenty-five percent (25%) of the PAGA Payment or One Thousand Eight Hundred Seventy-Five Dollars ($1,875.00) shall be distributed to PAGA Employees. In the event the LWDA or the Court rejects this allocation, the Parties will meet and confer with the Court and the LWDA to reach a penalty allocation acceptable to all Parties and the Court that does not materially alter the terms of the Settlement, nor require Defendant to pay more than the GSA. The Settlement Administrator will provide proof of service of the PAGA Payment made to the LWDA to the Parties.

25.     **Participating Class Members**:  All Class Members who do not submit a valid and timely Exclusion Form.

26.     **Employer's Payroll Taxes:**  Defendant's share of applicable federal, state, or local payroll taxes, including those collected/paid under authority of the Federal Insurance Contributions Act, Federal Unemployment Tax Act, and/or State Unemployment Tax Act, attributable to Participating Class Members' Individual

Settlement Shares that constitute wages. The amount of Employer's Payroll Taxes shall be determined by the Settlement Administrator but shall not be paid out of the Qualified Settlement Fund. Employer's Payroll Taxes shall be paid by Defendant separately and in addition to any payment obligations set forth in this Agreement.

27. **Preliminary Approval or Preliminary Approval Order**: The Court's order preliminarily approving the proposed Settlement.

28. **Qualified Settlement Fund or QSF**: A fund within the meaning of Section 468B of the Internal Revenue Code of 1986, as amended, and the Treasury Regulations promulgated thereunder, that is established by the Settlement Administrator for the benefit of Participating Class Members, PAGA Employees, Plaintiffs and Class Counsel. This amount shall be made up of the Gross Settlement Amount.

29. **Released Claims**: The claims that Plaintiffs and the other Participating Class Members are releasing in exchange for the consideration provided for by this Agreement include any and all claims, liabilities, demands, causes of actions, rights, and obligations for (1) failure to provide meal periods; (2) failure to provide rest periods; (3) failure to pay overtime wages; (4) failure to pay minimum wages; (5) failure to maintain required records; (6) failure to provide accurate wage statements; (7) failure to pay wages upon separation of employment; (8) any related claims, including for unfair business practices in violation of California's Business and Professions Code, Section 17200, and (9) any and all claims under federal or state law, statutory, constitutional, contractual or common law claims that were or could have been pled based upon the factual allegations contained in the Litigation, except those under the Fair Credit Reporting Act, Investigative Consumer Reporting Agencies Act, or Consumer Credit Reporting Agencies Act. The Released Claims include all claims described above—that is, those claims that are or reasonably could have been asserted in the Litigation, except those under the Fair Credit Reporting Act, Investigative Consumer Reporting Agencies Act, or Consumer Credit

Reporting Agencies Act—whether known or unknown, which may arise out of or directly or indirectly relate to such facts alleged in the Litigation, including all claims for wages, overtime pay, premium pay such as meal and rest period premiums, final wages, waiting time penalties, minimum wages, penalties such as penalties for incorrect wage statements, wages due on termination, any and all equitable relief, liquidated damages or any pay, premium, or civil or statutory penalty provided for under the California Labor Code, California's Business and Professions Code, or other applicable wage-and-hour statute. Thus, if a Class Member participates in the Settlement, then even if the Class Member discovers facts in addition to or different from those that he or she now knows or believes to be true or otherwise fails to discover facts, with respect to the subject matter of the Released Claims, those claims will remain released and forever barred. Class Members who do not timely opt out will be deemed to have acknowledged and agreed that their claims for wages and/or penalties in the Litigation are undisputed. Class Members will be deemed to have acknowledged and agreed that California Labor Code Section 206.5 is not applicable to the Settlement. That section provides in pertinent part as follows:

> **"An employer shall not require the execution of a release of a claim or right on account of wages due, or to become due, or made as an advance on wages to be earned, unless payment of those wages has been made."**

The Released Claims shall extend from November 2, 2014 through the date the Court grants Preliminary Approval (the "Released Period").

30. **PAGA Released Claims**: The claims that Plaintiffs and other PAGA Employees are releasing in exchange for the PAGA Payment provided for by this Agreement include all claims, liabilities, demands, causes of action, rights, penalties, and obligations of any nature under the California Private Attorneys General Act of 2004 (Cal. Labor Code §§ 2698 *et seq.*). Without limiting the generality of the foregoing, PAGA Released Claims include all claims that are or reasonably could have been asserted in the

8

**100**

First Amended Complaint, whether known or unknown, which may arise out of or directly or indirectly relate to such facts alleged in the First Amended Complaint, including all claims for wages, overtime pay, premium pay such as meal and rest period premiums, final wages, waiting time penalties, minimum wages, penalties such as penalties for incorrect wage statements, wages due on termination, any and all equitable relief, liquidated damages or any pay, premium, or civil or statutory penalty, and any derivative violation under PAGA. The PAGA Released Claims shall extend from November 30, 2017 through the date the Court grants Preliminary Approval (the "PAGA Released Period"). In order for the Released Parties to achieve a full and complete release, each PAGA Employee acknowledges that this Settlement is intended to release all PAGA claims of any nature, including any PAGA claims that could be made in *Eddie Duron v. JBS USA Food Company Holdings* (Case No. 5:19-cv-00702-PSG-E), as that action may be severed, amended, or remanded to the state court.

31. **Released Parties**: Defendant and its past, present and future parent companies, subsidiaries, affiliates, divisions, and agents and their respective partners, principals, managers, officers, directors, employees, shareholders, members, advisors, consultants, insurers and reinsurers, subrogees, auditors, heirs, personal or legal representatives, accountants, attorneys, trustees, assigns, real or alleged alter egos, predecessors, successors, transferees, managing agents, and investors. Without limiting the generality of the foregoing, the Released Parties include Swift Beef Company, JBS USA, LLC, JBS USA Holdings, Inc., JBS USA, JBS USA, Inc., Swift & Company, Inc., Pilgrim's Pride Corporation, JBS USA Food Company, and JBS USA Food Company Holdings.

32. **Release Period**: November 2, 2014 through the date the Court grants Preliminary Approval.

9

33. **PAGA Release Period**: November 30, 2017 through the date the Court grants Preliminary Approval.

34. **Response Deadline**: Forty-five (45) calendar days from the initial mailing of the Notice (and in the case of a re-mailed Notice, forty- five (45) days from the original distribution or fourteen (14) days from the date of re-mailing, whichever is greater). If the Response Deadline is a Saturday, Sunday, or holiday, then the Response Deadline shall be extended to the next calendar day that is not a Saturday, Sunday, or holiday ("holiday" is one that is observed by the Court).

35. **Required Tax Withholding**: Participating Class Members' shares of applicable federal, state, or local payroll taxes, including those collected/paid under authority of the Federal Insurance Contributions Act, Federal Unemployment Tax Act, and/or State Unemployment Tax Act, attributable to Participating Class Members' Individual Settlement Shares that constitute wages. Required Tax Withholding amounts shall be determined by the Settlement Administrator and will be paid out of the Qualified Settlement Fund.

36. **Settlement Administration**: The Settlement Administrator will conduct all Settlement Administration duties as described in this Settlement Agreement and as ordered by the Court.

37. **Settlement Administrator**: The third-party administrator Phoenix Class Action Administration Solutions to administer this Settlement. The Court will approve the appointment of a third-party administrator.

38. **Court**: United States District Court for the Central District of California, acting in Case No. 5:18-cv-02551-PSG-E and in Case No. 5:19-cv-00702-PSG-E.

10

## II.    <u>RECITALS</u>

1.      Plaintiff Silvia Valdivia De Cabrera filed her action on November 2, 2018 in Riverside County Superior Court of the State of California and thereafter was removed to the United States District Court for the Central District of California and bears Case No. 5:18-cv-02551-PSG-E. On February 5, 2019, Plaintiff filed a First Amended Complaint, claiming Defendant (a) failed to provide meal breaks by requiring Class Members to take less than 30-minute meal periods or to work through meal periods without premium payments; (b) failed to provide compensated 10-minute rest breaks for every four hours worked; (c) failed to compensate Class Members with overtime wages for all hours worked in excess of 8 hours per day and/or 40 hours per week; (d) failed to pay minimum wage for all hours worked in a payroll period, including all hours worked by, among other things, requiring Class Members to work off the clock, through meal and rest periods, and due to inaccurate time recording; (e) failed to maintain required records reflecting, among other things, total daily hours worked by Class Members, applicable rates of pay, all deductions, meal periods, when each employee begins and ends the day, and accurate itemized wages statements; (f) failed to provide timely, accurate, and itemized wage statements in writing with all required information; (g) failed to pay wages upon separation of employment; and (h) violated the Business and Professions Code and Private Attorneys General Act.

2.      Plaintiff Eddie Duron filed his action on March 13, 2019 in Riverside County Superior Court of the State of California and thereafter was removed to the United States District Court for the Central District of California and bears Case No. 5:19-cv-00702-RGK-(SHKx). Relating to this settlement, Plaintiff Duron's complaint alleges Defendant (a) failed to provide meal breaks by requiring Class Members to take less than 30-minute meal periods or to work through meal periods without premium payments; (b) failed to provide compensated 10-minute rest breaks for every four hours worked; (c) failed to compensate Class Members with overtime wages for all hours worked in excess of 8

11

**103**

hours per day and/or 40 hours per week and failed to pay minimum wage for all hours worked in a payroll period, including all hours worked by, among other things, requiring Class Members to work off the clock, through meal and rest periods, and due to inaccurate time recording; (d) failed to provide timely, accurate, and itemized wage statements in writing with all required information; (e) failed to pay wages upon separation of employment; and (f) violated the Business and Professions Code.

3. Defendant answered Plaintiffs' complaints, denying all allegations.

4. The Parties conducted investigation and discovery of the facts and law. Defendant produced documents relating to its policies, practices, and procedures regarding paying non-exempt employees for all hours worked; meal and rest period policies; and general payroll policies and procedures. As part of Defendant's production, Plaintiffs also reviewed and analyzed time records, pay records, and information relating to the size and scope of the Class, as well as data permitting Plaintiffs to understand the number of workweeks as defined by the Class. Plaintiffs' review and analysis of such records, with the assistance of an expert statistician, showed that some material factual allegations underlying Plaintiffs' claims are not substantiated. Plaintiffs believe that the above-described investigation and evaluation, as well as the information exchanged during the arms-length settlement negotiations, are more than sufficient to assess the merits of the respective Parties' positions and to compromise the issues on a fair and equitable basis. Plaintiffs' independent investigation and discovery of the facts and law underlying this Settlement provides a sound understanding of the merits of their respective positions to evaluate the worth of the claims, potential amount of recovery, and defenses asserted. The Parties believe the proposed Settlement is fair, adequate, and reasonable, given the costs, risks, and probability of success, if the Litigation continued. The Parties have independently assessed: (a) the nature of the monetary relief; (b) the amount and manner of equitable distribution of compensation to be provided to Participating Class Members;

12

104

(c) the circumstances in which amounts available for payment in Settlement might not be paid to Class Members; (d) the notices that will be provided to Class Members, which will explain Class Members' options to freely opt-out of the Settlement or object to the Settlement; and (e) the scope of the Released Claims and PAGA Released Claims.

5. **Benefits of Settlement to Class Members**. Plaintiffs and Class Counsel recognize the expense and length of continued proceedings necessary to continue the litigation against Defendant through trial and through any possible appeals. Plaintiffs and Class Counsel also have taken into account the uncertainty and risk of further litigation, the potential outcome, and the difficulties and delays inherent in such litigation. Class Counsel has a sound understanding of the Parties' respective positions and has assessed the amount in controversy and the realistic range of outcomes of the Litigation. Plaintiffs and Class Counsel have conducted extensive settlement negotiations, including formal conversations and written correspondence with Defendant. Based on the foregoing, Plaintiffs and Class Counsel believe the Settlement set forth in this Agreement is a fair, adequate, and reasonable settlement, and is in the best interests of the Class Members.

6. **Defendant's Reasons for Settlement**. Defendant recognizes that the defense of this Litigation will be protracted and expensive. Substantial amounts of time, energy, and resources of Defendant has been and, unless this Settlement is made, will continue to be devoted to the defense of the claims asserted by Plaintiffs. Defendant takes into account all relevant factors, present and potential, and its extensive assessment of the claims and defenses in this Litigation. Defendant, therefore, has agreed to settle in the manner and upon the terms set forth in this Agreement to put to rest the Litigation, Released Claims, and PAGA Released Claims.

7. **Defendant's Denial of Wrongdoing**. Nothing in this Stipulation shall be construed as or deemed to be an admission by any Party of any liability, culpability, negligence, or wrongdoing toward any other Party, or any other person, and the Parties

13

specifically disclaim any liability, culpability, negligence, or wrongdoing. Defendant generally and specifically denies any and all liability or wrongdoing of any sort with regard to any of the claims alleged, makes no concessions or admissions of liability of any sort, and contends that for any purpose other than this Settlement, the Litigation is not appropriate for class treatment. Neither this Agreement, nor any document referred to or contemplated herein, nor any action taken to carry out this Agreement, is or may be construed as, or may be used as an admission, concession, or indication by or against Defendant or any of the Released Parties of any fault, wrongdoing, or liability whatsoever. Nor should the Agreement be construed as an admission, other than for settlement purposes only, that Plaintiffs can serve as adequate Class Representatives. There has been no final determination by any court as to the merits of the claims asserted by Plaintiffs against Defendant or as to whether a class or classes should be certified, other than for settlement purposes only.

8.      **Plaintiffs' Claims**. Plaintiffs assert that Defendant's defenses are without merit. However, in the event that this Settlement is finally approved by the Court, Plaintiffs, Class Members, and Class Counsel will not oppose Defendant's efforts to use this Agreement to prove that Plaintiffs and Class Members have resolved and are forever barred from re-litigating the Released Claims and PAGA Released Claims.

### III.      SETTLEMENT TERMS AND CONDITIONS

1.      **Gross Settlement Amount**. Subject to the terms and conditions of this Agreement, and apart from Employer's Payroll Taxes, the maximum Gross Settlement Amount that Defendant is obligated to pay under this Settlement Agreement is Seven Hundred Fifty Thousand Dollars ($750,000.00). The Settlement is intended to fully, finally, and forever resolve, discharge, and settle the Released Claims and PAGA Released Claims based on and subject to the terms and conditions set forth in this Settlement Agreement. Except Employer's Payroll Taxes, the Gross Settlement Amount shall constitute the only

14

Case 5:23-cv-00286-PSG-E Document 1 Filed 02/10/23 Page 107 of 169 Page ID
Case 5:18-cv-02531-PSG-E Document 41-1 Filed 08/06/20 Page 44 of 80 Page ID #:415
#:107

payment required by Defendant pursuant to the Settlement. In the event (a) the class size for the time period November 2, 2014 through May 9, 2019 exceeds 1,138 class members by more than 10% or (b) the total number of workweeks for all class members for the time period November 2, 2014 through May 9, 2019 is greater than 10% of the total number of workweeks represented by Defendant during that time period, the Gross Settlement Amount shall be increased by the average workweek amount for each additional workweek during that time period. The foregoing exception is based on information and data Defendant has provided Plaintiff about the class for the time period November 2, 2014 through May 9, 2019. To avoid confusion, the class is not limited to 1,138 members or for the time period November 2, 2014 through May 9, 2019.

2. **Settlement Class Certification**. Solely for the purposes of this Settlement, the Parties stipulate and agree to certification of the claims asserted on behalf of Class Members by Plaintiffs. As such, the Parties stipulate and agree that in order for this Settlement to occur, the Court must certify the Class for the purpose of settlement as defined in this Agreement.

3. **Conditional Nature of Stipulation for Certification**. The Parties stipulate and agree to the certification of the claims asserted on behalf of Plaintiffs and Class Members for purposes of this Settlement only. If the Settlement does not become effective, the fact that the Parties were willing to stipulate to certification as part of the Settlement shall not be admissible or used in any way in connection with the question of whether the Court should certify any claims in a non-settlement context in this Litigation or in any other lawsuit. If the Settlement does not become effective, Defendant reserves the right to contest any issues relating to class certification and liability.

4. **Appointment of Class Representative**. The Parties stipulate and agree Plaintiffs shall be appointed as the representatives for the Class.

15

Case 5:23-cv-00286-PSG-E   Document 1   Filed 02/10/23   Page 108 of 169   Page ID
#:108
Case 5:18-cv-02531-PSG-E   Document 41-1   Filed 03/06/23   Page 45 of 80   Page ID #:416

    **5.**      **Appointment of Class Counsel**.  The Parties stipulate and agree that the Court appoint Class Counsel to represent the Class.

    **6.**      **Individual Settlement Share**.  Subject to the terms and conditions of this Agreement, the Settlement Administrator will pay an Individual Settlement Share from the Net Settlement Amount to each Participating Class Member.

       a.      **Individual Settlement Share Calculation**.  Each Participating Class Member will receive a proportionate share of the Net Settlement Amount that is equal to (i) the number of weeks he or she worked during the Released Period based on the Class Data provided by Defendant, divided by (ii) the total number of weeks worked by all Participating Class Members based on the same Class Data, (iii) which is then multiplied by the Net Settlement Amount.  For purposes of these payments, a week worked shall be defined as any regular workweek in which the Class Member received wages for three or more calendar days (whether wages were paid for actually working those days or while on paid, approved vacation or sick leave).  If any Class Member opts out of the Settlement, his or her share will be added to the Net Settlement Amount and the Individual Settlement Share Calculation will be recalculated.

       b.      **Payment to PAGA Employees**.  The PAGA Fund that is paid to each PAGA Employee shall be determined based on the following formula:  the payment to PAGA Employees will be based on the number of weeks employed by Defendant by each PAGA Employee during the PAGA Released Period.  The amount to be paid per workweek employed by a PAGA Employee will be calculated on a pro rata basis by dividing the value of the portion of the PAGA Fund that will be paid to each PAGA Employee by the total number of weeks employed by all PAGA Employees during the PAGA Released Period.  For the purpose of this definition, a week of employment means three or more calendar days whether wages were paid or actually worked or while on sick leave, vacation, or paid time off. The payment to the PAGA Employees is on account of a

Settlement of the PAGA Released Claims. As such, it shall not be treated as wages, and the Settlement Administrator shall issue a Form 1099 to each PAGA Employee for this payment. For the avoidance of doubt, an individual who is both a Participating Class Member and a PAGA Employee will receive the sum of: (1) a payment based on its allocated share of the PAGA Fund and (2) an Individual Settlement Share.

        c.    **Dispute Resolution**. Any Class Member may dispute his or her Individual Settlement Share Calculation or his or her share of the PAGA Fund, if the Class Member believes Defendant's records regarding weeks of employment are inaccurate, by submitting information to the Settlement Administrator no later than the Response Deadline. The Settlement Administrator will jointly work with the Parties to resolve the dispute in good faith. Defendant's records will be presumed determinative, unless the Class Member produces pay stubs, wage statements or other documents which conflict with Defendant's records. If the Parties cannot agree over the workweeks to be credited, the Settlement Administrator shall make the final decision based on the information presented by the Class Member and Defendant.

        d.    **Tax Withholdings**. Each Participating Class Member's gross Individual Settlement Share will be apportioned as follows: 20% wages and 80% interest and penalties, which is subject to the approval of the Court. The Settlement Administrator shall calculate the total Required Tax Withholding and Employer's Payroll Taxes due as a result of the wage portion of all Individual Settlement Shares. The amounts paid as wages by the Settlement Administrator shall be subject to all tax obligations and withholdings customarily associated with wages, and required withholdings shall be reported by Forms W-2. Payment of all amounts will be made subject to backup withholding unless a duly executed W-9 form is received from the payee(s). The amounts paid as penalties and interest shall be subject to all authorized and required withholdings other than the tax withholdings customarily made from employees' wages and shall be reported by IRS 1099

17

forms. The Settlement Administrator will withhold Required Tax Withholding from each Participating Class Members' Individual Settlement Share.

      e.    **No Additional Compensation**. The Parties agree that the Individual Settlement Shares and PAGA Fund are not additional compensation for purposes of calculating the "regular rate" of pay under California or federal law for the period during which it is received, and no additional compensation is required as a result of such payment. Any claim to entitlement to any additional compensation by Participating Class Members is expressly waived under the terms of the Settlement.

      f.    **Defendant's Duty to Comply with CAFA**. Defendant shall comply with the requirements of the Class Action Fairness Act (28 U.S.C. § 1715), which provides, in relevant part, that "[n]ot later than 10 days after a proposed settlement of a class action is filed in court, each defendant that is participating in the proposed settlement shall serve upon the appropriate State official of each State in which a class member resides and the appropriate Federal official, a notice of the proposed settlement[.]"

      **7.**    **Settlement Disbursement.** Subject to the terms and conditions of this agreement, the Settlement Administrator will make the following payments from the Gross Settlement Amount:

      a.    **To the Plaintiffs Silvia Valdivia De Cabrera and Eddie Duron**: In addition to their respective Individual Settlement Share, and subject to the Court's approval, Plaintiffs each will receive up to Seven Thousand Five Hundred Dollars ($7,500.00) as a Class Representative Enhancement Payment. The Settlement Administrator will pay the Class Representative Enhancement Payment out of the Qualified Settlement Fund. Payroll and income taxes will not be withheld from the Class Representative Enhancement Payment. IRS Forms 1099 will be issued to Plaintiffs with

respect to their Class Representative Enhancement Payment.  Plaintiffs shall be responsible for the payment of any and all taxes with respect to the Class Representative Enhancement Payment and shall hold Defendant harmless from any and all liability with regard thereto.

b.  **To Class Counsel**.  Class Counsel will apply to the Court for, and Defendant agrees not to oppose, a total Attorneys' Fee Award not to exceed Two Hundred Forty Nine Thousand Nine Hundred Ninety Nine Dollars and Ninety Nine Cents ($249,999.99) and a Cost Award not to exceed Ten Thousand Dollars ($10,000.00). The Settlement Administrator will pay the court-approved amounts for the Attorneys' Fee Award and Cost Award out of the Gross Settlement Fund.  IRS Forms 1099 will be issued to Class Counsel by the Settlement Administrator for these payments.  The approval by the Court of any such lesser sum(s) shall not be grounds for Plaintiffs and/or Class Counsel to terminate the Settlement.  As a condition of this Settlement, Class Counsel agrees to pursue fees and costs only in manner reflected herein, which should reflect all work performed and costs to be incurred in connection with approval by the Court of the Class Settlement and in connection with administering the Settlement through entry of judgment in the Litigation.

c.  **To the Appropriate Tax Authorities**.  The Settlement Administrator will pay Required Tax Withholding in accordance with this Agreement to the appropriate taxing authorities. The Settlement Administrator shall provide Defendant the amount and calculation for Employer's Payroll Taxes, which shall be paid by Defendant to the appropriate tax authorities.

d.  **To the Settlement Administrator**.  The Settlement Administrator will pay to itself Administration Costs (reasonable fees and expenses) approved by the Court not to exceed a total of Fifteen Thousand Dollars ($15,000.00).  This will be paid out of the Qualified Settlement Fund.

Case 5:23-cv-00286-PSG-E Document 1-1 Filed 02/10/23 Page 112 of 169 Page ID
Case 5:18-cv-02531-PSG-E Document 41-1 Filed 03/06/20 Page 45 of 80 Page ID
#:112

     e.    **To Class Members**. The Settlement Administrator will pay Participating Class Members according to the Individual Settlement Share calculations set forth above. All payments to Participating Class Members shall be made from the Qualified Settlement Fund.

     f.    **PAGA Payment**. The Parties allocate Seven Thousand Five Hundred Dollars ($7,500.00) to the PAGA claims. Of that amount, the Settlement Administrator will pay seventy-five percent (75%), or Five Thousand Six Hundred Twenty-Five Dollars ($5,625.00), to the LWDA and twenty-five percent (25%), or One Thousand Eight Hundred Seventy-Five Dollars ($1,875.00), will be in the PAGA Fund for distribution to PAGA Employees. The Settlement Administrator will provide proof of service of the PAGA Payment provided to the LWDA to the Parties.

    **8.**    **Appointment of Settlement Administrator**. The Parties have selected Phoenix Class Action Administration Solutions as the Settlement Administrator. Pursuant to an order of the Court, the Settlement Administrator will be responsible for maintaining and administering the Qualified Settlement Fund. The Settlement Administrator shall be responsible for preparing, printing, and mailing the Class Notice; keeping track of any objections or requests for exclusion from Class Members; handling inquiries from Class Members; performing skip traces and remailing Notices and Individual Settlement Shares to Class Members; calculating Employer's Payroll Taxes as required by any taxing authority; calculating and paying Required Tax Withholding as required by any taxing authority; calculating each Class Member's Individual Settlement Share; calculating each PAGA Employee's PAGA Payment; providing weekly status reports to Defendant's Counsel and Class Counsel, which is to include updates on any objections or requests for exclusion that have been received; providing a due diligence declaration for submission to the Court prior to the Final Approval Hearing; mailing Individual Settlement Shares to Participating Class Members; mailing the PAGA Fund to individual PAGA Employees;

calculating and mailing seventy-five percent (75%) of the PAGA Payment to the LWDA as ordered by the Court; distributing the Attorneys' Fee Award and Cost Award to Class Counsel; printing and providing Class Members and Plaintiffs with W-2s and 1099 forms as required under this Agreement and applicable law; providing a due diligence declaration for submission to the Court upon the completion of the Settlement; providing any funds remaining in the QSF as a result of uncashed checks as ordered by the Court, including the administration of related tax items; providing notice of the final judgment to the class by posting for no less than 90 days the final judgment on a website created or maintained by the Settlement Administrator;  and for such other tasks as the Parties mutually agree.  The Settlement Administrator will carry out any additional duties as set forth in this Agreement or as ordered by the Court.

     **9.**      **<u>Procedure for Approving Settlement</u>.**

        a.      **Motion for Preliminary Approval and Conditional Certification.**

        (i)      Plaintiffs will move for an order conditionally certifying the Class for settlement purposes only, giving Preliminary Approval of the Settlement, setting a date for the Final Approval Hearing, and approving the Class Notice.

        (ii)      At the Preliminary Approval hearing, the Class Counsel will appear, support the granting of the motion, and submit a proposed order that grants conditional certification of the Class and Preliminary Approval of the Settlement; appoints the Class Representative, Class Counsel, and Settlement Administrator; approves the Class Notice; and sets the Final Approval Hearing.

        (iii)      Should the Court decline to Preliminarily Approve all material aspects of the Settlement, the Settlement will be null and void, and the Parties will have no further obligations under it.  The Parties agree that, if the Court declines to preliminarily approve non-material aspects of the Settlement, the Parties will work cooperatively to make such changes required by the Court.  In the event that the Settlement

Agreement is null and void, the Parties will each be responsible to pay to the Settlement Administrator one-third of the Administration Costs actually incurred not to exceed a total of Fifteen Thousand Dollars ($15,000.00).

   b. **Notice to Class Members**.  After the Court enters its Preliminary Approval Order, every Class Member will be provided with the Class Notice in accordance with the following procedure:

    (i) Within forty-five (45) days after entry of the Preliminary Approval Order, Defendant shall deliver to the Settlement Administrator the following information about each Class Member for the Release Period in an Excel spreadsheet or other electronic database:  (1) first and last name; (2) last known mailing address and phone number; (3) social security number; and (4) dates of employment for each Class Member (collectively "Class Data").  If any or all of this information is unavailable to Defendant, Defendant will so inform Class Counsel and the Parties will make their best efforts to reconstruct or otherwise agree upon how to deal with the unavailable information.  The Settlement Administrator will conduct a search on the National Change of Address database for the address of all former Defendant employee Class Members prior to mailing. The Class Data shall be based on Defendant's records.  The Database shall be marked "Confidential Attorneys' and Settlement Administrator's Eyes Only" and be held in the strictest confidence. The Settlement Administrator shall not disclose or divulge the contents of the Database to any Class Member, including Plaintiffs, or to any third party. The Settlement Administrator shall use commercially reasonable efforts to avoid inadvertent or unauthorized disclosure or use of such data other than as permitted by this Settlement Agreement and shall destroy the data (and all copies) in a complete and secure manner when such data is no longer required for purposes of this Settlement Agreement.

    (ii) Within fourteen (14) days after receipt of the Class Data, the Settlement Administrator will mail the Class Notice to all identified Class Members via

first-class regular U.S. Mail, using the mailing address information provided by Defendant and the results of the search on the National Change of Address database performed on all former Defendant employee Class Members.

(iii)     If a Class Notice is returned because of an incorrect address, within seven (7) days from receipt of the returned Class Notice, the Settlement Administrator will conduct a search for a more current address for the Class Member and re-mail the Class Notice to the Class Member. The Settlement Administrator will use the National Change of Address Database and skip traces to attempt to find the current address. The Settlement Administrator will be responsible for taking reasonable steps to trace the mailing address of any Class Member for whom a Class Notice is returned by the U.S. Postal Service as undeliverable. These reasonable steps shall include, at a minimum, the tracking of all undelivered mail; performing address searches for all mail returned without a forwarding address; and promptly re-mailing to Class Members for whom new addresses are found. If the Settlement Administrator is unable to locate a better address, the Class Notice shall be re-mailed to the original address. If the Class Notice is re-mailed, the Settlement Administrator will note for its own records the date and address of each re-mailing. It will be presumed that, if an envelope containing the Class Notice re-mailing has not been returned within thirty (30) calendar days of the mailing, the Class Member received the Class Notice.

(iv)     If any Exclusion Form received is incomplete or deficient, the Settlement Administrator shall send a letter informing the Class Member of the deficiency and allow fourteen (14) days to cure the deficiency. If after the cure period the Exclusion Form is not cured, it will be determined that the Class Member did not exclude himself from the Settlement and will be bound by the Settlement.

(v)     The Settlement Administrator shall provide a weekly status report to the Parties. As part of its weekly status report, the Settlement Administrator will

inform Class Counsel and Defendant's Counsel of the number of Class Notices mailed, the number of Class Notices returned as undeliverable, the number of Notices re-mailed, and the number of Exclusion Forms received.

(vi)     No later than fourteen (14) days after the Response Deadline, the Settlement Administrator will serve on the Parties a declaration of due diligence setting forth its compliance with its obligations under this Agreement.  The declaration from the Settlement Administrator shall also be filed with the Court by Class Counsel no later than ten (10) days before the Final Approval Hearing.  Before the Final Approval Hearing, the Settlement Administrator will supplement its declaration of due diligence if any material changes occur from the date of the filing of its prior declaration.

c.     **Objections to Settlement**.  The Class Notice will provide that the Class Members who wish to object to the Settlement must do so in writing, signed, dated, and mailed to the Settlement Administrator postmarked no later than the Response Deadline.  A Class Member who desires to object but who fails to comply with the time and objection procedure set forth herein shall be deemed to have not objected, which means they will be bound by the release of Released Claims, will be deemed to participate in the Settlement and shall become a Settlement Participant.

(i)     **Format**.  Any Objections shall:  (a) state the objecting person's full name, address, and telephone number; (b) state the words "Notice of Objection" or "Formal Objection"; (c) describe, in clear and concise terms, the grounds for objection; (d) indicate whether the Class Member is represented by counsel; (e) indicate whether the Class Member would like to appear at the Final Approval Hearing; and (f) reasonably identify the Litigation.

(ii)     **Option to Appear**.  Class Members may (though are not required to) appear at the Final Approval Hearing, either in person or through the objector's own counsel.  A timely filed valid objection will still be considered even if an objecting

24

Class Member does not appear at the Final Approval Hearing, either in person or through the objector's own counsel. Class Members may withdraw their objections, if any, at any time in writing to the Settlement Administrator. Class Members who submit an objection shall remain subject to and bound by the Released Claims provisions in this Settlement in any order granting Final Approval upon its Effective Date.

   d.  **Request for Exclusion from the Settlement ("Opt-Out")**. Members of the Settlement Class shall have forty-five (45) days from the distribution of the Class Notice (and in the case of a re-mailed Class Notice, forty- five (45) days from the original distribution or fourteen (14) days from the date of re-mailing, whichever is greater) to request to opt out. The Class Notice will provide that Class Members who wish to exclude themselves from the Settlement must mail to the Settlement Administrator an Exclusion Form. To be valid, a written request to opt out must: (1) state the Class Member's name, last four digits of his or her social security number, address and telephone number; (2) state that the Class Member wishes to opt out from the Settlement; (3) be signed by the Class Member or his or her lawful representative; and (4) be postmarked no later than the Response Deadline. Members of the Settlement Class who opt-out shall still be entitled to a PAGA Payment and still are subject to the release of the PAGA Released Claims.

    (i)  **Confirmation of Authenticity**. If there is a question about the authenticity of a signed request for exclusion, the Settlement Administrator may demand additional proof of the Class Member's identity. Any Class Member who returns a timely, valid, and executed Exclusion Form will not participate in or be bound by the Settlement and subsequent judgment and will not receive an Individual Settlement Share. A Class Member who does not complete and mail a timely Exclusion Form will automatically be included in the Settlement, will receive an Individual Settlement Share, and will be bound by all terms and conditions of the Settlement, if the Settlement is

25

Case 5:23-cv-00286-BSG-E Document 1 Filed 02/10/23 Page 118 of 169 Page ID
Case 5:18-cv-02531-PSG-E Document 41-1 Filed 08/06/20 Page 55 of 80 Page ID #:426
#:118

approved by the Court, and by the subsequent judgment, regardless of whether he or she has objected to the Settlement.

(ii)    **Report**.  No later than seven (7) days after the Response Deadline, the Settlement Administrator will provide the Parties with a complete and accurate accounting of the number of Class Notices mailed to Class Members, the number of Class Notices returned as undeliverable, the number of Class Notices re-mailed to Class Members, the number of re-mailed Class Notices returned as undeliverable, the number of Class Members who objected to the Settlement and copies of their submitted objections, the number of Class Members who returned valid Exclusion Forms and copies of those Exclusion Forms, and the number of Class Members who returned invalid Exclusion Forms.

(iii)    **Defendant's Option to Terminate**.  If more than five percent (5%) of the Class Members submit Exclusion Forms, Defendant, at its sole option, may withdraw from the Settlement and this Agreement is null and void.

(iv)    If a Class Member submits both a timely and valid Exclusion Form and timely and valid objection, the objection will be rejected and the Class Member's Exclusion Form will be accepted.

e.    **No Solicitation of Objection or Requests for Exclusion**.  Neither the Parties nor Class Counsel will solicit or otherwise encourage directly or indirectly any Class Member to object to the Settlement, request exclusion from the Settlement, or appeal from the Judgment.

f.    **Motion for Final Approval.**

(i)    Class Counsel will file unopposed motions and memoranda in support of Final Approval of the Settlement as described herein.  Class Counsel will also move the Court for an order of Final Approval (and associated entry of Judgment) releasing and barring any Released Claims of the Class Members who do not opt out of the Settlement.

26

(ii)     If the Court does not grant Final Approval of the Settlement, or if the Court's Final Approval of the Settlement is reversed or materially modified on appellate review, then this Settlement will become null and void.  If that occurs, the Parties will have no further obligations under the Settlement, including any obligation by Defendant to pay the Gross Settlement Amount or any amounts that otherwise would have been owed under this Agreement.  Further, should this occur, the Parties agree they shall be equally responsible for one-third of the Settlement Administrator's Administration Costs incurred through that date.  An award by the Court of a lesser amount than sought by Plaintiffs and Class Counsel for the Class Representative Enhancement, Attorneys' Fee Award, or Cost Award will not constitute a material modification to the Settlement within the meaning of this paragraph.  Notwithstanding the foregoing, the Parties and Class Counsel will cooperate with each other and use diligent and reasonable efforts to cure any deficiencies noted by the Court in attempting to secure Final Approval of the Settlement.

(iii)     Upon Final Approval of the Settlement, the Parties shall present to the Court a proposed Final Approval Order, approving of the Settlement and entering Judgment in accordance therewith.  After entry of Judgment, the Court shall have continuing jurisdiction over the Litigation for purposes of:  (1) enforcing this Settlement Agreement; (2) addressing settlement administration matters, and (3) addressing such post-Judgment matters as may be appropriate under Court rules and applicable law.

g.     **Waiver of Right to Appeal**.  Provided that the Judgment is consistent with the terms and conditions of this Agreement, if Class Members do not timely object to the Settlement, then the Class Members waive any and all rights to appeal from the Judgment, including, but not limited to, all rights to any post-judgment proceeding and appellate proceeding, such as a motion to vacate or set aside judgment, and any extraordinary writ, and the Judgment will become non-appealable at the time it is entered.  The waiver of appeal does not include any waiver of the right to oppose any appeal,

27

appellate proceeding, or post-judgment proceeding. Defendant, through its attorneys, shall cooperate with Class Counsel in opposing any appeal, appellate proceeding, or post-judgment proceeding.

   h. **Stay Upon Appeal**. In the event of a timely appeal from the approval of the Settlement and judgment, the judgment shall be stayed, and Defendant shall not be obligated to fund the Gross Settlement Amount or take any other actions required by the Settlement until all appeal rights have been exhausted by operation of law.

   i. **Disbursement of Settlement Shares and Payments**. Subject to the Court finally approving the Settlement, the Settlement Administrator shall distribute funds pursuant to the terms of this Agreement and the Court's Final Approval Order and Judgment. The maximum amount Defendant can be required to pay under this Settlement for any purpose is the Gross Settlement Amount. The Settlement Administrator shall keep Defendant's Counsel and Class Counsel apprised of all distributions from the Gross Settlement Amount. The Settlement Administrator shall respond to questions from Defendant's Counsel and Class Counsel. No person shall have any claim against Defendant, Defendant's Counsel, Plaintiffs, Class Counsel, or the Settlement Administrator based on the distributions and payments made in accordance with this Agreement.

   (i) **Funding the Settlement**: No later than fifteen (15) calendar days after the Effective Final Settlement Date, Defendant shall transfer the Gross Settlement Amount of Seven Hundred Fifty Thousand Dollars ($750,000.00) needed to pay the entire GSA by wiring the funds into a QSF set up and controlled by the Settlement Administrator. In addition, no later than thirty (30) calendar days after the Effective Final Settlement Date, the Settlement Administrator shall provide to Defendant the amount of the employer's share of applicable payroll taxes with respect to the Net Settlement Amount.

Defendant shall transfer this amount into a QSF set up and controlled by the Settlement Administrator within ten (10) business days after receiving the amount.

(ii) **Disbursement**: Within fifty (50) calendar days after the Effective Final Settlement Date, the Settlement Administrator shall calculate and pay all payments due under the Settlement Agreement, including all Individual Settlement Shares, Required Tax Withholding, the payments to PAGA Employees, the Attorneys' Fee Award, the Cost Award, the Class Representative Enhancements, the PAGA Payment, and the Administration Costs. The Settlement Administrator will forward a check for seventy-five percent (75%) of the PAGA Payment to the LWDA for settlement of the PAGA claim.

(iii) **QSF**: The Parties agree, pursuant to an order of the Court, that the QSF will be a "Qualified Settlement Fund" under Section 468B of the Internal Revenue Code of 1986, as amended, and the Treasury Regulations promulgated thereunder, which the Settlement Administrator will be solely responsible for maintaining and administering, including with respect to all distributions. The Settlement Administrator shall be classified as the "administrator" within the meaning of Treasury Regulation § 1.468B-2(k)(3) and shall be responsible, on behalf of the QSF, for filing any and all required federal, state, and local tax returns; for filing all required federal, state, and local information returns; and for ensuring compliance with all tax payment, notice, and withholding requirements with respect to the Gross Settlement Amount. The Parties shall cooperate in securing an order of the Court to establish the QSF in accordance with the terms hereof in conjunction with its Final Approval of the Settlement. The Court will retain jurisdiction over the administration of the QSF. The Parties and Settlement Administrator shall treat the QSF as coming into existence as a Qualified Settlement Fund on the earliest date permitted as set forth in Treasury Regulations Section 1.468B-1, and such election statement shall be attached to the appropriate returns as required by law. Any taxes due as a result of income earned by the QSF will be paid by the QSF.

29

      j.     **Uncashed Checks**.  Participating Class Members and PAGA Employees must cash or deposit their Individual Settlement Share checks and/or their check from the PAGA Fund within one hundred and eighty (180) calendar days after the checks are mailed to them.  If any checks are not redeemed or deposited within ninety (90) days after mailing, the Settlement Administrator will send a reminder postcard indicating that unless the check is redeemed or deposited in the next ninety (90) days, it will expire and become non-negotiable, and offer to replace the check if it was lost or misplaced.  If any checks remain uncashed or not deposited by the expiration of the 90-day period after mailing the reminder notice, the Settlement Administrator will, within two hundred (200) calendar days after the checks are mailed, pay the amount of the uncashed checks to the State Controller's Office Unclaimed Property division as unclaimed property. Any failure to cash any such check within the deadline set forth above will not abrogate or affect that Participating Class Members' waivers or releases of the Released Claims or PAGA Released Claims under this Settlement.

      k.     **Final Report by Settlement Administrator**.  Within ten (10) days after the disbursement of all funds, the Settlement Administrator will serve on the Parties a declaration providing a final report on the disbursements of all funds.  Class Counsel will be responsible for submitting such a final report to the Court pursuant to the Court's order or request.

      l.     **Documents and Information.**  Assuming Defendant has made all of its required payments under this Settlement Agreement, Plaintiffs and Class Counsel shall destroy all documents and information produced by Defendant within 180 calendar days after the Individual Settlement Shares are issued, including but not limited to Class Data, personnel files, acknowledgements, payroll records, time records and company policies and procedures related. Class Counsel shall provide written confirmation that the

documents have been destroyed within 185 calendar days after the Individual Settlement Shares are issued.

10.  **Release of Claims**.  As of the Effective Final Settlement Date, Class Members who do not submit a timely and valid Request for Exclusion release the Released Parties from the Released Claims during the Released Period.  Participating Class Members shall not to sue or otherwise make a claim against any of the Released Parties for any of the Released Claims.  It is further understood and agreed that Plaintiffs, on behalf of themselves, the LWDA, and the Class, release Defendant and all Released Parties from any and all PAGA Released Claims.  The Parties acknowledge that under the release, the right of the LWDA to investigate the released PAGA claims is not released, but PAGA Released Claims do include any claims for penalties by a PAGA Employee as a result of any such LWDA investigation, and all PAGA Employees are waiving their right to act as a private attorney general, regardless of whether he/she validly Opts-Out/Requests Exclusion from the Settlement.

11.  **Plaintiffs' Release of Claims and General Release**.  As of the Effective Final Settlement Date, and in exchange for the Class Representative Enhancement Payment to the Plaintiffs in an amount ordered by the Court and not to exceed Seven Thousand Five Hundred Dollars ($7,500.00) for each, Plaintiffs agree to a general release of Released Parties from all claims, demands, rights, liabilities, grievances, demands for arbitration, and causes of action of every nature and description whatsoever, known or unknown, pending or threatened, asserted or that might have been asserted, whether brought in tort or in contract, whether under state or federal or local law.  This general release includes all employment-related and non-employment-related claims, whether known or unknown, arising during the Release Period.  Except as otherwise specifically provided under this Settlement Agreement, Plaintiffs expressly waive and relinquish all rights and benefits afforded by Section 1542 of the Civil Code of the State of California, which states:

31

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, THAT IF KNOWN BY HIM OR HER WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

This release excludes any release of any claims not permitted to be released by law. As a free and voluntary act, Plaintiffs agree that they will never seek or accept employment with any Released Party. If Plaintiffs seek or accept employment with any Released Party, their application may be rejected or they may be summarily discharged without any resulting liability to Defendant or the Released Party.

**12.** **Termination of Settlement**. In the event that the Settlement Agreement is terminated, cancelled, declared void or fails to become effective in accordance with its terms, or to the extent termination, cancellation, or voiding of the Settlement Agreement is otherwise provided, and if the Court should for any reason fail to approve the Settlement, or the Court should fail to enter judgment with prejudice, then the Settlement shall be considered null and void, and no payments shall be made or distributed to anyone in accordance with the terms of this Settlement Agreement. The Parties will bear their own costs and fees with regard to the efforts to obtain Court approval, and this Settlement Agreement shall be deemed null and void with no effect on the litigation whatsoever. The Parties will each be responsible to the Settlement Administrator for one-third the costs of such Administration Costs actually incurred not to exceed a total of Fifteen Thousand Dollars ($15,000.00). In such event, the terms and provisions of the Settlement Agreement shall have no further force and effect with respect to the Parties and shall not be used in this Litigation or any other proceeding for any purpose, and any judgment or order entered by the Court in accordance with the terms of the Settlement Agreement shall be treated as

32

vacated, *nunc pro tunc*.  In the event of a termination of settlement, each party should bear its own costs and attorneys' fees.  Notwithstanding the foregoing, the Parties may attempt in good faith to cure any perceived defects in the Settlement to facilitate approval.

      13.    **Miscellaneous Terms.**

           a.    **No Admission of Liability**.  Defendant makes no admission of liability or wrongdoing by virtue of entering into this Agreement.  Defendant reserves the right to contest any issues relating to class certification and liability if the Settlement is not approved.  Defendant denies that it has engaged in any unlawful activity, has failed to comply with the law in any respect, has any liability to anyone under the claims asserted in the Litigation, or that but for the Settlement, a Class should be certified in the Litigation.  This Agreement is entered into solely for the purpose of compromising highly disputed claims.  Nothing in this Agreement is intended or will be construed as an admission by Defendant of liability or wrongdoing.  This Settlement and the Parties' willingness to settle the Litigation will have no bearing on, and will not be admissible in connection with, any litigation (other than solely in connection with this Settlement).  Defendant shall not be required to enter into any consent decree, nor shall Defendant be required to agree to any provision for injunctive relief, or to modify or eliminate any of its personnel, compensation or payroll practices, or adopt any new personnel, compensation or payroll practices, if the Settlement is approved.

           b.    **No Effect on Employee Benefits**.  Neither the Settlement nor any amounts paid under the Settlement will modify any previously credited hours, days, or weeks of service under any employee benefit plan, policy or bonus program sponsored by Defendant.  Such amounts will not form the basis for additional contributions to, benefits under, or any other monetary entitlement under Defendant's sponsored benefit plans, policies or bonus programs, if any.  The payments made under the terms of this Stipulation shall not be applied retroactively, currently, or on a going forward basis, as salary, earnings,

33

wages, or any other form of compensation for the purposes of any of Defendant's benefit plan, policy or bonus program. Defendant retains the right to modify the language of its benefits plans, policies and bonus programs to effect this intent and to make clear that any amounts paid pursuant to this Stipulation are not for "weeks worked," "weeks paid," "weeks of service," or any similar measuring term as defined by applicable plans, policies and bonus programs for purpose of eligibility, vesting, benefit accrual, or any other purpose, and that additional contributions or benefits are not required by this Stipulation. Defendant does not consider the Settlement payments "compensation" for purposes of determining eligibility for, or benefit accrual within, any benefit plans, policies, or bonus programs, or any other plan sponsored by Defendant.

c. **Publicity**. Class Counsel agree to discuss the terms of this Settlement only in declarations submitted to a court to establish their adequacy to serve as class counsel; in declarations submitted to a court in support of motions for preliminary approval, final approval, for attorneys' fees/costs, and any other pleading filed with the Court in conjunction with the Settlement; and in discussions with Class Members in the context of administrating this Settlement until the Preliminary Approval Order is issued. No Court filing will be circulated by Class Counsel nor will Class Counsel post such pleadings on any website, or initiate contact with the press, respond to press inquiries, or issue any press releases or advertisements identifying Defendant in connection with the Released Claims or PAGA Released Claims or about the Settlement. Plaintiffs agree that neither they, nor their spouse or agents, shall publicize the terms of settlement or the lawsuit beyond taking the steps necessary to reach a final resolution and judgment as described in this Settlement Agreement. The Parties, Class Counsel and Defendant's Counsel further agree that none of them will post commentary about this Settlement or the terms of it on any social media website, or through any online or print media outlet, or in any article or blog.

      d.    **Integrated Agreement**. After this Agreement is signed and delivered by all Parties and their counsel, this Agreement and its exhibits will constitute the entire Agreement between the Parties relating to the Settlement, and it will then be deemed that no oral representations, warranties, covenants, or inducements have been made to any Party concerning this Agreement or its exhibits, other than the representations, warranties, covenants, and inducements expressly stated in this Agreement and its exhibits.

      e.    **Authorization to Enter into Settlement Agreement**. Class Counsel and Defendant's Counsel warrant and represent that they are authorized by Plaintiffs and Defendant, respectively, to take all appropriate action required or permitted to be taken by such Parties under this Agreement to effectuate its terms, and to execute any other documents required to effectuate the terms of this Agreement. The Parties and their counsel will cooperate with each other and use their best efforts to effect the implementation of the Settlement. In the event the Parties are unable to reach agreement on the form or content of any document needed to implement this Agreement, or on any supplemental provisions that may become necessary to effectuate the terms of this Agreement, the Parties will seek the assistance of the Court, and in all cases, all such documents, supplemental provisions, and assistance of the Court will be consistent with this Agreement.

      f.    **Exhibits and Headings**. The terms of this Agreement include the terms set forth in the attached exhibits, which are incorporated by this reference as though fully set forth herein. Any exhibits to this Agreement are an integral part of the Settlement and must be approved substantially as written.

      g.    **Interim Stay of Proceedings**. The Parties agree to stay and hold all proceedings in the Litigation in abeyance, except the First through Fourth Causes of Action in *Eddie Duron v. JBS USA Food Company Holdings*, Case No. 5:19-cv-00702-PSG-E, as that action may be severed, amended, or remanded to the state court, under the

Case 5:23-cv-00286-PSG-E  Document 1  Filed 02/10/23  Page 128 of 169  Page ID
#:128
Case 5:18-cv-02531-PSG-E  Document 41-1  Filed 05/06/20  Page 65 of 80  Page ID #:436

Fair Credit Reporting Act, Investigative Consumer Reporting Agencies Act, and Consumer Credit Reporting Agencies Act and such proceedings necessary to implement and complete the Settlement, pending the Final Approval Hearing to be conducted by the Court.

      h.    **Amendment or Modification of Agreement**.  This Agreement, and any and all parts of it, may be amended, modified, changed, or waived only by an express written instrument signed by counsel for all Parties or their successors-in-interest.

      i.    **Agreement Binding on Successors and Assigns**.  This Agreement will be binding upon, and inure to the benefit of, the successors and assigns of the Parties, as previously defined.

      j.    **No Prior Assignment**.  Plaintiffs hereby represent, covenant, and warrant that they have not directly, or indirectly, assigned, transferred, encumbered, or purported to assign, transfer, or encumber to any person or entity any portion of any liability, claim, demand, action, cause of action or rights herein released and discharged.

      k.    **Applicable Law**.  All terms and conditions of this Agreement and its exhibits will be governed by and interpreted according to the laws of the State of California, without giving effect to any conflict of law principles or choice of law principles.

      l.    **Fair, Adequate, and Reasonable Settlement**.  The Parties and their respective counsel believe and warrant that this Agreement reflects a fair, reasonable, and adequate settlement of the Litigation and have arrived at this Agreement through arms-length negotiations, taking into account all relevant factors, current and potential.

      m.    **No Tax or Legal Advice**.  The Parties understand and agree that the Parties are neither providing tax or legal advice nor making representations regarding tax obligations or consequences, if any, related to this Agreement; that Class Members will assume any such tax obligations or consequences that may arise from this Agreement; and that Class Members shall not seek any indemnification from the Parties or any of the Released Parties in this regard.  The Parties agree that, in the event that any taxing body

determines that additional taxes are due from any Class Member, such Class Member assumes all responsibility for the payment of such taxes. Other than the employers' share of payroll taxes as described in this Agreement, the Parties further agree that Defendants shall have no legal obligation to pay, on behalf of the Settlement Class Members, any taxes, deficiencies, levies, assessments, fines, penalties, interests or costs, which may be required to be paid with respect to settlement payments.

n.   **Plaintiffs' Waiver of Right to be Excluded and Object**. By signing this Settlement Agreement, Plaintiffs are bound by the terms stated herein and further agrees not to opt out from the Settlement and agrees not to object to any of the terms of this Settlement Agreement. Any such opt out or objection by Plaintiffs shall therefore be void and of no force or effect. Plaintiffs agree not to disparage the Settlement to Class Members or encourage, in any way, any Class Member to opt out from the Settlement. Plaintiff Silvia Valdivia De Cabrera and Remedy Law Group LLP agree not to assist or aid in the prosecution of the action entitled *Duron v. JBS USA Food Company Holdings* (Civil Action 5:19-cv-00702-PSG-E), pending in the United States District Court for the Central District of California, as that action may be severed, amended, or remanded to the state court, other than as may be necessary to facilitate a settlement or prosecute the claims asserted in the Litigation in the event the Court does not approve this Settlement Agreement.

o.   **Jurisdiction of the Court**.  The Litigation includes claims that would, if proven, authorize the Court to grant relief pursuant to the laws cited therein. If the Settlement is approved, the Court shall retain jurisdiction with respect to the interpretation, implementation, and enforcement of the terms of this Agreement and all orders and judgment entered in connection therewith, and the Parties and their counsel hereto submit to the jurisdiction of the Court for purposes of interpreting, implementing, and enforcing the Settlement embodied in this Agreement and all orders and judgments in connection therewith.

       p.     **Invalidity of Any Provision; Severability**.  Before declaring any provision of this Agreement invalid, the Parties request that the Court first attempt to construe the provisions valid to the fullest extent possible consistent with applicable precedents, so as to define all provisions of this Agreement valid and enforceable.  In the event any provision of this Agreement shall be found unenforceable, the unenforceable provision shall be deemed deleted, and the validity and enforceability of the remaining provisions shall not be affected thereby.

       q.     **Cooperation in Drafting**.  The Parties have cooperated in the drafting and preparation of this Agreement.  This Agreement will not be construed against any Party on the basis that the Party was the drafter or participated in the drafting.

       r.     **Execution in Counterpart**.  This Agreement may be executed in one or more counterparts.  All executed counterparts, and each of them, will be deemed to be one and the same instrument provided that counsel for the Parties will exchange between themselves original signed counterparts.  Facsimile or PDF signatures will be accepted.  Any executed counterpart will be admissible in evidence to prove the existence and contents of this Agreement.

## IV.    EXECUTION BY PARTIES

The Parties hereby execute this Agreement.

Dated: ~~January~~ *February* 11, 2020      **Silvia Valdivia De Cabrera**

*Silvia Valdivia de Cabrera*

Dated: January    , 2020      **Eddie Duron**

_____

38

**130**

p.     **Invalidity of Any Provision; Severability**.  Before declaring any provision of this Agreement invalid, the Parties request that the Court first attempt to construe the provisions valid to the fullest extent possible consistent with applicable precedents, so as to define all provisions of this Agreement valid and enforceable.  In the event any provision of this Agreement shall be found unenforceable, the unenforceable provision shall be deemed deleted, and the validity and enforceability of the remaining provisions shall not be affected thereby.

q.     **Cooperation in Drafting**.  The Parties have cooperated in the drafting and preparation of this Agreement.  This Agreement will not be construed against any Party on the basis that the Party was the drafter or participated in the drafting.

r.     **Execution in Counterpart**.  This Agreement may be executed in one or more counterparts.  All executed counterparts, and each of them, will be deemed to be one and the same instrument provided that counsel for the Parties will exchange between themselves original signed counterparts.  Facsimile or PDF signatures will be accepted. Any executed counterpart will be admissible in evidence to prove the existence and contents of this Agreement.

## IV.    EXECUTION BY PARTIES

The Parties hereby execute this Agreement.

Dated: January   , 2020       **Silvia Valdivia De Cabrera**

Dated: January   , 2020       **Eddie Duron**

38

131

DocuSign Envelope ID: 58E515C4-0620-345E-85E8-1FBB7795197C

Dated: January 22, 2020

**Swift Beef Company**

Name: BRIAN S. PIEDMONTE

Title: HEAD OF CASE READY MEATS


Dated: January 31, 2020

**JBS USA Food Company Holdings**

Name: Nicholas White
Title: General Counsel


**Approved as to Form:**

Dated: January   , 2020

**Remedy Law Group LLP**

Armen Zenjiryan
Andranik Tsarukyan
*Attorneys for Plaintiff Silvia Valdivia De Cabrera,*
*on behalf of herself and all others similarly situated*


Dated: ~~January~~ February 11 , 2020

**Setareh Law Group**

Shaun Setareh
*Attorneys for Plaintiff Eddie Duron on behalf of*
*himself and all others similarly situated*

39

132

Dated: January 22, 2020      **Swift Beef Company**

Name: BRIAN S. PIEDMONTE

Title: HEAD OF CASE READY MEATS

Dated: January 31, 2020      **JBS USA Food Company Holdings**

Name: Nicholas White

Title: General Counsel

**Approved as to Form:**

Dated: ~~January   , 2020~~
     February 24, 2020      **Remedy Law Group LLP**

Andy Tsarukyan

Armen Zenjiryan
Andranik Tsarukyan
*Attorneys for Plaintiff Silvia Valdivia De Cabrera,
on behalf of herself and all others similarly situated*

Dated: January   , 2020      **Setareh Law Group**

Shaun Setareh
*Attorneys for Plaintiff Eddie Duron on behalf of
himself and all others similarly situated*

39

133

Dated: ~~January~~ *February 7*, 2020

**SHERMAN & HOWARD**

Kelly K. Robinson, Esq.
Jonathon Watson, Esq.
*Attorneys for Defendant Swift Beef Company and*
*Defendant JBS USA Food Company Holdings*

40

134

Case 5:23-cv-00286-BSG-E   Document 1   Filed 02/10/23   Page 135 of 169   Page ID 3
Case 5:18-cv-02531-PSG-E   Document 41-1   Filed 05/06/20   Page 21 of 80   Page ID #:443
#:135

# EXHIBIT A

Case 5:23-cv-00236-PSG-E Document 1-1 Filed 02/10/23 Page 136 of 169 Page ID
Case 5:18-cv-02551-PSG-E Document 41-1 Filed 08/06/20 Page 3 of 80 Page ID #:44
#:136

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

*SILVIA VALDIVIA DE CABRERA, et al. v. SWIFT BEEF COMPANY*, Case No. 5:18-CV-02551-PSG-E
*EDDIE DURON, et al. v. JBS USA FOOD COMPANY HOLDINGS*, Case No. 5:19-CV-00702 PSG(Ex)

## NOTICE OF CLASS ACTION AND PRIVATE ATTORNEYS GENERAL ACT SETTLEMENT

*A court authorized this notice. This is not a solicitation.*
*This is not a lawsuit against you and you are not being sued.*
*However, your legal rights are affected by whether you act or don't act.*

**TO:** **All current and former non-exempt employees employed by Defendant in the State of California at any time from November 2, 2014, to [Preliminary Approval date].**

The United States District Court, Central District of California, has granted preliminary approval of a proposed settlement ("Settlement") of the above-captioned actions (collectively, the "Class Action") against Swift Beef Company and JBS USA Food Company Holdings (collectively, "Defendant"). Because your rights may be affected by this Settlement, it is important that you read this Notice of Class Action and Private Attorneys General Act Settlement ("Notice") carefully.

The Court has conditionally certified the following class for settlement purposes ("Class" or "Class Members"):

> All current and former non-exempt employees employed by Defendant in the State of California at any time from November 2, 2014, to [Preliminary Approval date].

The Court has also preliminarily approved a settlement of claims under the Private Attorneys General Act ("PAGA") for "PAGA Employees" who are:

> All current and former non-exempt employees employed by Defendant in the State of California at any time from November 30, 2017, to [Preliminary Approval date].

The purpose of this Notice is to provide a brief description of the claims alleged, the key terms of the Settlement, and your rights and options with respect to the Settlement.

**YOU MAY BE ENTITLED TO MONEY UNDER THE PROPOSED CLASS ACTION SETTLEMENT. PLEASE READ THIS NOTICE CAREFULLY; IT INFORMS YOU ABOUT YOUR LEGAL RIGHTS.**

### CONTENTS OF THIS NOTICE

1. Why have I Received this Notice?...................................................................................... Page 2
2. What is this Class Action About? ...................................................................................... Page 2
3. Am I a Class Member? ...................................................................................................... Page 3
4. How Does this Class Action Settlement Work? ................................................................ Page 3
5. Who are the Attorneys Representing the Plaintiffs?..........................................................Page 3
6. What are My Options?.......................................................................................................Page 4
7. How do I Opt Out or Exclude Myself from this Settlement? ............................................Page 4
8. How do I Object to the Settlement? ..................................................................................Page 5
9. How does this Settlement Affect My Rights?....................................................................Page 5
10. How Much Can I Expect to Receive from this Settlement? ..............................................Page 6
11. How Will the Attorneys for the Class and the Class Representative be Paid? ...................Page 7

12. What are the PAGA Released Claims?..................................................................................Page 7

| 1. | *Why Have I Received this Notice?* |
|----|-----------------------------------|

Defendant's records indicate you may be a Class Member and/or PAGA Employee. The Settlement will resolve all Class Members' Released Claims, as described below, from November 2, 2014 through [Date of Preliminary Approval] (the "Release Period"). You are a member of the Class if you were employed as a non-exempt employee by Defendant in the State of California during the period of November 2, 2014 to [Preliminary Approval date].

A Preliminary Approval Hearing was held on [the date of Preliminary Approval] in the United States District Court, Central District of California. The Court conditionally certified the Class for settlement purposes only and directed that you receive this Notice. The Court also approved the PAGA settlement (described in Question 12 below).

The Court has determined only that there is sufficient evidence to suggest that the proposed Settlement might be fair, adequate, and reasonable, and that any final determination of these issues will be made at the Final Fairness Hearing.

The Court will hold a Final Fairness Hearing concerning the proposed Settlement on [the date of final approval hearing], 2020 at [time a.m./p.m.] before Judge Philip S. Gutierrez located in Department 6A at the United States District Court, Central District of California, 350 West 1st Street, 6th Floor, Los Angeles, California 90012.

| 2. | *What is this Class Action About?* |
|----|-----------------------------------|

The action entitled *SILVIA VALDIVIA DE CABRERA, et al. v. SWIFT BEEF COMPANY*, Case No. 5:18-CV-02551-PSG-E, was commenced in the United States District Court, Central District of California as a putative class action. The action entitled *EDDIE DURON, et al. v. JBS USA FOOD COMPANY HOLDINGS*, Case No. 5:19-CV-00702 PSG(Ex), was commenced in the Riverside County Superior Court of the State of California as a putative class action and then removed to the United States District Court, Central District of California. Plaintiffs Silvia Valdivia De Cabrera and Eddie Duron are referred to herein as "Plaintiffs."

Relating to this Settlement, Plaintiffs' action against Defendant seeks damages, restitution, penalties, interests, costs, attorney's fees, and other relief based on the following alleged causes of action: 1) failure to provide meal periods; 2) failure to provide rest periods; 3) failure to pay overtime wages; 4) failure to pay minimum wage; 5) failure to maintain required records; 6) failure to provide accurate wage statements; 7) failure to pay wages upon separation of employment; 8) violation of Business and Professions Code Sections 17200, *et seq.*; and 9) enforcement of the Private Attorneys General Act ("PAGA").

The Court has not made any determination as to whether the claims advanced by Plaintiffs have any merit. In other words, the Court has not determined whether any laws have been violated, nor has it decided in favor of Plaintiffs or Defendant. Instead, both sides agreed to resolve the Class Action with no decision or admission of who is right or wrong. By agreeing to resolve the Class Action, all parties avoid the risks and cost of a trial. Defendant expressly denies that it did anything wrong or that it violated the law and further denies any liability whatsoever to Plaintiffs, the Class, or PAGA Employees.

-2-
Questions? Call the Settlement Administrator toll free at [phone number]

137

Case 5:23-cv-00236-PSG-E   Document 1   Filed 02/10/23   Page 138 of 169   Page ID
Case 5:13-cv-02531-PSG-E   Document 41-1   Filed 08/06/20   Page 5 of 80   Page ID #:446
#:138

| 3. | Am I a Class Member? |
|---|---|

You are a member of the Class if you were employed as a non-exempt employee by Defendant in the State of California at any time during the period of November 2, 2014 to [Preliminary Approval date].

| 4. | How Does this Class Action Settlement Work? |
|---|---|

In this Class Action, Plaintiffs sued on behalf of themselves and all other similarly-situated employees. Plaintiffs and these other current and former employees comprise a "Class" and are "Class Members" for purposes of Settlement. The Settlement of this Class Action resolves the Released Claims of all Class Members except for Class Members who exclude themselves from the Class by requesting to be excluded in the manner set forth below.

Plaintiffs and Class Counsel believe the Settlement is fair and reasonable. The Court must also review the terms of the Settlement and determine if it is fair and reasonable to the Class. The Court file has the Settlement documents, which explain the Settlement in greater detail. If you would like copies of the Settlement documents, you can contact Plaintiffs' counsel, whose contact information is below, and they will provide you with a copy via e-mail free of charge.

| 5. | Who are the Attorneys Representing the Class? |
|---|---|

| Attorneys for Plaintiff and the Class | |
|---|---|
| Andranik Tsarukyan, Bar No. 258241<br>Armen Zenjiryan, Bar No. 261073<br>REMEDY LAW GROUP LLP<br>610 E. Providencia Avenue, Unit B<br>Burbank, CA  91501<br>Telephone:  818.422.5941<br><br>Shaun Setareh, Bar No. 204514<br>Thomas Segal, Bar No. 222791<br>SETAREH LAW GROUP<br>315 S. Beverly Drive, Suite 315<br>Beverly Hills, CA 90212<br>Telephone: 310.888.7771<br>Fax: 310.888-0109<br><br>Attorneys for Plaintiffs,<br>SILVIA VALDIVIA DE CABRERA and EDDIE DURON | |

The Court has conditionally decided that REMEDY LAW GROUP LLP and SETAREH LAW GROUP are qualified to represent you and all other Class Members simultaneously. As part of this Settlement, Plaintiffs' Counsel is working on your behalf. If you want your own attorney, you may hire one at your own cost.

-3-
Questions? Call the Settlement Administrator toll free at [phone number]

138

| 6. | **What are My Options?** |
|---|---|

The purpose of this Notice is to inform you of the proposed Settlement and of your options. Each option has its consequences, which you should understand before making your decision. Your rights regarding each option, and the steps you must take to select each option, are summarized below and explained in more detail in this Notice.

***Important Note*: *Defendant will take no actions against you in any way because you participate or do not participate in this Settlement.***

- **DO NOTHING:**       If you do nothing and the Court grants final approval of the Settlement, you will become part of this Class Action and will receive an Individual Settlement Share based on the total number of workweeks you were employed by Defendant during the Release Period. As a result, you will waive all of the Released Claims, as defined in Section 9 below, against Defendant and all Released Parties, and you will give up your right to file a lawsuit against any Released Parties based on the Released Claims as defined in Section 9 below.

- **OPT OUT:**       If you do not want to participate as a Class Member, you may "opt out," which will remove you from the Class and this Class Action. If the Court grants final approval of the Settlement, you will not receive an Individual Settlement Share and you will not give up the right to sue the Released Parties for any of the Released Claims as defined in Section 9 below. If you are a PAGA Employee, you will, however, still release the PAGA Released Claims and receive a payment from the PAGA Fund (described in Question 12).

- **OBJECT:**       You may file a legal objection to the proposed Settlement. If you would like to object, you may not opt out of this Settlement.

The procedures for opting out and objecting are set forth below in the sections entitled "How do I Opt Out or Exclude Myself from this Settlement" and "How do I Object to the Settlement?"

| 7. | *How do I Opt Out or Exclude Myself from this Settlement?* |
|---|---|

If you do not wish to participate in the Settlement, you may be excluded (i.e., "opt out") by sending a timely written Request for Exclusion that contains your name, address, telephone number, the last four digits of your Social Security number, and the names of the cases and case numbers for the Class Action (*Silvia Valdivia De Cabrera v. Swift Beef Company,* Case No. 5:18-CV-02551-PSG-E, and *Eddie Duron v. JBS USA Food Company Holdings*, Case No. 5:19-CV-00702-PSG-E). If you opt out of the Settlement, you will not be releasing the claims set forth in Question 9.

The Exclusion Form must be signed, dated, and mailed by First Class U.S. Mail, postmarked no later than [the Response Deadline], to: De Cabrera & Duron Class Action, c/o Phoenix Class Action Administration Solutions, 1411 N. Batavia St., Suite 105, Orange, CA 92863.

-4-
Questions? Call the Settlement Administrator toll free at [phone number]

139

The Court will exclude any Class Member who submits a complete and timely Exclusion Form as described in the paragraph above. Any Class Member who fails to submit a valid and timely Exclusion Form on or before the above-specified deadline will be bound by all terms of the Settlement, Release and any Judgment entered in the Class Action if the Settlement receives final approval from the Court.

| 8. | *How do I Object to the Settlement?* |
|---|---|

If you are a Class Member who does not opt out of the Settlement, you may choose to object to the Settlement, personally or through an attorney, by mailing a written objection to the Settlement Administrator at De Cabrera & Duron Class Action, c/o Phoenix Class Action Administration Solutions, 1411 N. Batavia St., Suite 105, Orange, CA 92863 by [the Response Deadline]. The written objection must: (a) state your full name, address, and telephone number; (b) state the words "Notice of Objection" or "Formal Objection"; (c) describe, in clear and concise terms, the grounds for your objection; (d) indicate whether you are represented by counsel; (e) indicate whether you would like to appear at the Final Approval Hearing; and (f) identify the name of the Class Action (*Silvia Valdivia De Cabrera v. Swift Beef Company*, Case No. 5:18-CV-02551-PSG-E, and *Eddie Duron v. JBS USA Food Company Holdings*, Case No. 5:19-CV-00702-PSG-E).

Class Members who timely file valid objections to the Settlement may appear at the Final Approval Hearing, either in person or through the objector's own counsel, provided the objector has first notified the Settlement Administrator by sending his/her written objections to the Settlement Administrator, postmarked no later than [the Response Deadline]. Class Members' timely and valid objections to the Settlement will still be considered even if the objector does not appear at the Final Approval Hearing.

If the Court rejects the Notice of Objection, the Class Member will receive an Individual Settlement Share and will be bound by the terms of the Settlement.

| 9. | *How does this Settlement Affect My Rights? What are the Released Claims?* |
|---|---|

If the proposed Settlement is approved by the Court, a Final Judgment will be entered by the Court. All Class Members who do not validly opt-out of the Settlement will be bound by the Court's Final Judgment and will fully release and discharge Defendant and its past, present and future parent companies, subsidiaries, affiliates, divisions, and agents and their respective partners, principals, managers, officers, directors, employees, shareholders, members, advisors, consultants, insurers and reinsurers, subrogees, auditors, heirs, personal or legal representatives, accountants, attorneys, trustees, assigns, real or alleged alter egos, predecessors, successors, transferees, managing agents, and investors (collectively, "Released Parties") from the Released Claims. Without limiting the foregoing, Released Parties include Swift Beef Company, JBS USA, LLC, JBS USA Holdings, Inc., JBS USA, JBS USA, Inc., Swift & Company, Inc., Pilgrim's Pride Corporation, JBS USA Food Company, and JBS USA Food Company Holdings. The "Released Claims" are as follows:

Plaintiffs and the other Class Members who do not opt out are releasing, in exchange for the consideration provided for by the Settlement, all claims, liabilities, demands, causes of actions, rights, and obligations for (1) failure to provide meal periods; (2) failure to provide rest periods; (3) failure to pay overtime wages; (4) failure to pay minimum wages; (5) failure to maintain required records; (6) failure to provide accurate wage statements; (7) failure to pay wages upon separation of employment; (8) any related claims, including for unfair business practices in violation of California's Business and Professions Code, Sections 17200, *et seq.*, and (9) any and all claims under federal or state law, statutory, constitutional, contractual or common law claims that

Case 5:23-cv-00236-PSG-E Document 1-1 Filed 02/10/23 Page 144 of 169 Page ID
Case 5:18-cv-02531-PSG-E Document 41-1 Filed 03/06/20 Page 140 of 90 Page ID #:449
#:141

were or could have been pled based upon the factual allegations contained in the Class Action complaints, except those under the Fair Credit Reporting Act, Investigative Consumer Reporting Agencies Act, or Consumer Credit Reporting Agencies Act.

Without limiting the foregoing, the Released Claims include all claims described above—that is, those claims that are or reasonably could have been asserted in the Class Action by Plaintiffs, except those under the Fair Credit Reporting Act, Investigative Consumer Reporting Agencies Act, or Consumer Credit Reporting Agencies Act—whether known or unknown, which may arise out of or directly or indirectly relate to such facts alleged in the Class Action pleadings, including all claims for wages, overtime pay, bonuses, commissions, premium pay such as meal and rest period premiums, final wages, waiting time penalties, minimum wages, penalties such as penalties for incorrect wage statements, wages due on termination, any and all equitable relief, liquidated damages or any pay, premium, or civil or statutory penalty provided for under the California Labor Code, California's Business and Professions Code, or other applicable wage-and-hour statutes.

Thus, if a Class Member participates in the Settlement, then even if the Class Member discovers facts in addition to, or different from, those that he or she now knows or believes to be true or otherwise fails to discover facts with respect to the subject matter of the Released Claims, those claims will remain released and forever barred. Class Members who do not timely opt out will be deemed to have acknowledged and agreed that their claims for wages and/or penalties in the Class Action are undisputed. The Release Claims will be as to the Released Parties for the period from November 2, 2014 to [Preliminary Approval date].

| 10. | How Much Can I Expect to Receive From This Settlement? |
|-----|--------------------------------------------------------|

The total maximum amount that Defendant could be required to pay under this Settlement shall be $750,000.00 ("Gross Settlement Amount") plus the employer's share of applicable payroll taxes.

The "Net Settlement Amount" means the portion of the Gross Settlement Amount available for distribution to Class Members after the deduction of the following:

- Attorneys' Fee Award (up to $249,999.99),
- Cost Award (up to $10,000.00),
- Class Representative Enhancements (up to $7,500.00 for each named plaintiff),
- PAGA Payment ($7,500.00) and
- Administration Costs (up to $15,000.00).

All of these payments are subject to Court approval.

After deducting the above-referenced items, the remaining Net Settlement Amount will be distributed amongst all Class Members who have not opted-out. The Settlement Administrator will calculate the Individual Settlement Shares for Participating Class Members. Each Participating Class Member will receive a proportionate share of the Net Settlement Amount that is equal to (i) the number of weeks he or she worked based on the data provided by Defendant, divided by (ii) the total number of weeks worked by all Class Members who did not opt out, which is then multiplied by the Net Settlement Amount.

Although your exact share of the Net Settlement Amount cannot be precisely calculated until after the time during which individuals may object or seek exclusion from the Settlement, based upon the calculation above, your approximate share of the Net Settlement Amount is $_____ (your "Individual Settlement

Share"), less tax withholdings customarily made from employee's wages. This is based on Defendant's records, which show you worked ☐☐☐ workweeks during the period of November 2, 2014 to [Preliminary Approval date].

If you believe the number of workweeks is incorrect, you may provide documentation and/or an explanation to show contrary information to the Settlement Administrator at De Cabrera & Duron Class Action, c/o Phoenix Class Action Administration Solutions, 1411 N. Batavia St., Suite 105, Orange, CA 92863 on or before [the Response Deadline].

Twenty percent (20%) of your Individual Settlement Share will be treated as unpaid wages. Applicable taxes will be withheld from the wages portion of your Individual Settlement Share only and reported on an IRS Form W-2. The remaining eighty percent (80%) of your Individual Settlement Share will be treated as penalties and interest and will be paid pursuant to an IRS Form 1099.

It is strongly recommended that upon receipt of your Individual Settlement Share check, you immediately cash it. If any Settlement checks remain uncashed or not deposited by the expiration of the 180-day period after mailing, the Settlement Administrator will, within two hundred (200) calendar days after the checks are mailed, pay the amount of the uncashed checks to the State Controller's Office Unclaimed Property Division as unclaimed property.

| **11.** | **How Will the Attorneys for the Class and the Class Representative be Paid?** |

The attorneys for Plaintiffs and the Class will be paid from the Gross Settlement Amount. Subject to Court approval, the attorneys for Plaintiff and the Class shall be paid an amount not to exceed one-third of the Gross Settlement Amount (or $249,999.99) for attorney fees and up to $10,000 for litigation costs.

The Plaintiffs will also be paid a Class Representative Enhancement Payment, up to $7,500.00 each, subject to Court approval.

| **12. What are the PAGA Released Claims?** |

If you were employed by Defendant at any time in the State of California during the period of November 30, 2017 to [date of Preliminary Approval] you are a "PAGA Employee." The Court approved the PAGA settlement on [date of Preliminary Approval].

As part of the Settlement, Defendant has agreed to pay a PAGA Payment of $7,500. Seventy-five percent (75%) of the PAGA Payment goes to the California Labor and Workforce Development Agency ("LWDA") and twenty-five percent (25%) is divided among PAGA Employees. The 25% that goes to PAGA Employees is called the PAGA Fund.

The PAGA Fund is allocated to each PAGA Employee based on the number of weeks worked by each PAGA Employee during the period of November 30, 2017 to [date of Preliminary Approval]. The amount to be paid per workweek worked by a PAGA Employee will be calculated on a pro rata basis by dividing the value of the portion of the PAGA Fund that will be paid to each PAGA Employee by the total number of weeks worked by all PAGA Employees during the PAGA Period.

-7-
Questions? Call the Settlement Administrator toll free at [phone number]

142

In consideration for the PAGA Payment, Plaintiffs and the other PAGA Employees are releasing all claims, liabilities, demands, causes of action, rights, penalties, and obligations of any nature under the California Private Attorneys General Act of 2004 (Cal. Labor Code §§ 2698 *et seq.*) against all Released Parties (as defined above). Without limiting the generality of the foregoing, "PAGA Released Claims" include all claims that are or reasonably could have been asserted in the Class Action under PAGA, whether known or unknown, which may arise out of or directly or indirectly relate to such facts alleged, including all claims for wages, overtime pay, premium pay such as meal and rest period premiums, final wages, waiting time penalties, minimum wages, penalties such as penalties for incorrect wage statements, wages due on termination, any and all equitable relief, liquidated damages or any pay, premium, or civil or statutory penalty, and any derivative violation under PAGA. The PAGA Released Claims shall extend from November 30, 2017 [date of Preliminary Approval].

If you are a Class Member who does not opt-out of the Settlement and is a PAGA Employee, you will only receive one check that combines your Individual Settlement Share and your payment related to the PAGA Fund.

It is strongly recommended that upon receipt of your check, you immediately cash it. If any checks remain uncashed or not deposited by the expiration of the 180-day period after mailing, the Settlement Administrator will, within two hundred (200) calendar days after the checks are mailed, pay the amount of the uncashed checks to the State Controller's Office Unclaimed Property Division as unclaimed property.

\* \* \*

**IF YOU NEED MORE INFORMATION OR HAVE ANY QUESTIONS**, you may contact Class Counsel listed above or the Settlement Administrator at the telephone number listed below, toll free. When contacting the Settlement Administrator, please refer to the De Cabrera & Duron Class Action.

This Notice does not contain all of the terms of the proposed Settlement or all of the details of these proceedings. For more detailed information, you may refer to the underlying documents and papers on file with the Court at the United States District Court, Central District of California at 350 West 1st Street, Los Angeles, California 90012 between 8:30 a.m. and 4:00 p.m.

You may also contact Plaintiffs' counsel, whose contact information is above, and they will provide you with a copy via email of the Settlement documents or case documents free of charge.

**PLEASE DO NOT TELEPHONE THE COURT OR COURT'S CLERK FOR INFORMATION ABOUT THIS SETTLEMENT.**

-8-
Questions? Call the Settlement Administrator toll free at [phone number]

143

# Exhibit C

1    MICHELE BALLARD MILLER (CA SBN 104198)
2    mbmiller@cozen.com
     ETHAN CHERNIN (CA SBN 273906)
3    echernin@cozen.com
     COZEN O'CONNOR
4    401 Wilshire Blvd., Suite 850
5    Santa Monica, California 90401
     Telephone: (310) 393-4000
6    Facsimile: (310) 394-4700

7    JONATHON M. WATSON (CA SBN 333845)
8    jmwatson@spencerfane.com
     SPENCER FANE LLP
9    1700 Lincoln St. Suite 2000
     Denver CO, 80203
10   Telephone:  (303) 839-3800
11   Facsimile: (303) 839-3838

12   Attorneys for Defendant
     SWIFT BEEF COMPANY
13

14                UNITED STATES DISTRICT COURT

15               CENTRAL DISTRICT OF CALIFORNIA

16   FRANCISCO J. MEZA, on behalf of        Case No. _____
     himself and others similarly situated,
17
                                            **DECLARATION OF ARACELI**
18          Plaintiff,                       **BURKET IN SUPPORT OF**
                                            **DEFENDANT'S NOTICE OF**
19      vs.                                  **REMOVAL OF STATE COURT**
                                            **CIVIL ACTION**
20
     SWIFT BEEF COMPANY; and DOES 1
21   to 100, inclusive,                      Removed from the Superior Court of
                                            the State of California, County of
22                                           Riverside
            Defendants.
23
                                            State Court Case No. CVRI2300103
24

25

26

27

28                                                                          **145**

                                    1

I, Araceli Burket, declare as follows:

1.    Swift Beef Company ("Defendant") maintains a production facility in Riverside, California, and I have been employed at the facility in various human resources positions since 2018. I have personal knowledge of each matter stated herein based on my employment at the facility, my involvement in the matters discussed below, and my review of personnel information, including lists of employees and their wage and hour and payroll data, to which I regularly have access in the ordinary course of my duties. I submit this Declaration in support of Defendant's Notice of Removal of State Court Civil Action in the above captioned matter.

2.    Plaintiff Francisco J. Meza ("Plaintiff") began employment with Defendant on or about August 31, 2020, and he continues to be employed by Defendant at its production facility in Riverside, California. During his employment, Plaintiff has worked at least 600 shifts lasting more than 3.5 hours, with 595 of those shifts lasting more than 5 hours. When Plaintiff was hired, his wage rate was $28 per hour, and his current wage rate is $36.25 per hour. His average wage rate during his employment is approximately $32.70. Throughout Plaintiff's employment, he has been paid on a weekly basis.

3.    On October 13, 2022, I executed a Declaration in Support of Defendant's Notice of Removal of State Court Civil Action in *Garcia v. Swift Beef Company*, Case No. 5:22-cv-01825-PSG-E (C.D. Cal.), using personnel information for individuals working at Swift Beef Company's production facility in Riverside, California. In preparing this declaration and the estimates below, I have used the same personnel and payroll information, which I have confirmed and believe to be accurate through October 13, 2022.

4.    Based on my review of personnel information, I estimate that from June 26, 2020, through October 13, 2022, a total of 1,123 hourly, temporary, and other non-exempt employees worked at the Riverside facility. Thus, I estimate there are at

least 1,123 putative class members in Plaintiff's proposed class of hourly non-exempt employees. These 1,123 putative class members worked a total of 158,652 shifts from June 26, 2020, through October 13, 2022. Upon information and belief, the number of employees who have worked at the Riverside facility has increased since October 13, 2022.

5.      Based on my review of personnel information, I estimate that 840 of the 1,123 putative class members were regular hourly employees paid on a weekly basis. These 840 regular hourly employees had an average wage rate of $18.69 per hour. I further estimate that these 840 regular hourly employees worked at least 149,634 shifts longer than 3.5 hours, with at least 146,659 of those shifts being longer than 5 hours. I estimate that the average shift length for these regular hourly employees during this time period was 7.9 hours. At least 386 of these hourly employees have separated from their employment since June 26, 2020. Additionally, using a representative sample of 13 months of data since September 13, 2021, I estimate that 542 hourly employees have worked a total of 16,379 workweeks since January 9, 2022.

6.      Based on my review of personnel information, I estimate that 237 of the 1,123 putative class members were temporary hourly employees. These 237 employees had an average wage rate of $17.42 per hour. I further estimate that these 237 temporary employees worked at least 2,274 shifts longer than 3.5 hours, with 1,635 of those shifts being longer than 8 hours. I estimate that the average shift length for these temporary employees during this time period was 9.0 hours. All 237 temporary employees have separated from their employment since June 26, 2020.

7.      Based on my review of personnel information, I estimate that the remaining 46 of the 1,123 putative class members were other hourly, non-exempt employees paid on a bi-weekly basis. These 46 employees had an average wage rate of $22.22 per hour. I further estimate that these 46 non-exempt employees worked at least 6,744 shifts longer than 3.5 hours, with at least 6,569 of those shifts being longer

DECLARATION OF ARACELI BURKET IN SUPPORT OF DEFENDANT'S NOTICE OF REMOVAL OF STATE COURT CIVIL ACTION

DN 7362785.1

than 5 hours. I estimate that the average shift length for these non-exempt employees during this time period has been 8.2 hours. At least 16 of these non-exempt employees have separated from their employment since June 26, 2020. Additionally, using a representative sample of 13 months of data since September 13, 2021, I estimate that 33 of these non-exempt employees have worked a total of 857 workweeks since January 9, 2022.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this Declaration was executed in Riverside, California on February 8, 2023.

By: _____

Araceli Burket

4

DECLARATION OF ARACELI BURKET IN SUPPORT OF DEFENDANT'S NOTICE OF REMOVAL OF STATE COURT CIVIL ACTION

DN 7362785.1

# Exhibit D

1  MICHELE BALLARD MILLER (CA SBN 104198)
   mbmiller@cozen.com
2  ETHAN CHERNIN (CA SBN 273906)
   echernin@cozen.com
3  COZEN O'CONNOR
4  401 Wilshire Blvd., Suite 850
   Santa Monica, California 90401
5  Telephone: (310) 393-4000
6  Facsimile: (310) 394-4700

7  JONATHON M. WATSON (CA SBN 333845)
8  jmwatson@spencerfane.com
   SPENCER FANE LLP
9  1700 Lincoln Street, Suite 2000
   Denver, Colorado 80203
10 Telephone:  (303) 839-3800
11 Facsimile:   (303) 839-3838

12 Attorneys for Defendant
13 SWIFT BEEF COMPANY

14            **UNITED STATES DISTRICT COURT**

15           **CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| FRANCISCO J. MEZA, on behalf of himself and others similarly situated, | Case No. |
| Plaintiff, | **DECLARATION OF DYLAN MOORE IN SUPPORT OF DEFENDANT'S NOTICE OF REMOVAL OF STATE COURT CIVIL ACTION** |
| vs. | |
| SWIFT BEEF COMPANY; and DOES 1 to 100, inclusive, | Removed from the Superior Court of the State of California, County of Riverside |
| Defendants. | State Court Case No. CVRI2300103 |

                                                              **150**

I, Dylan Moore, declare as follows:

1.    I am Corporate Counsel for Swift Beef Company. I have personal knowledge of each matter stated herein based on my employment and position with Swift Beef Company, my involvement in the matters discussed below, and my review of corporate incorporation information to which I regularly have access in the ordinary course of my duties. I submit this declaration in support of Defendant's Notice of Removal of State Court Civil Action.

2.    Swift Beef Company is presently, and at the time this action was commenced, incorporated in Delaware. Swift Beef Company's headquarters and principal place of business are currently, and at the time this action was commenced, in Greeley, Colorado.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this declaration was executed in Greeley, Colorado on this 9th day of February 2023.

By: _____

Dylan Moore, Corporate Counsel

# Exhibit E

Case 5:23-cv-00236-PSG-E Document 1 Filed 02/10/23 Page 153 of 169 Page ID
Case 4:23-cv-00939-HSG Document 50-1 Filed 10/13/15 Page 1 of 17 Page ID
#:153

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Joseph Lavi, Esq. (State Bar No. 209776)
　　jlavi@lelawfirm.com
Jordan D. Bello, Esq. (State Bar No. 243190)
　　jbello@lelawfirm.com
**LAVI & EBRAHIMIAN, LLP**
8889 W. Olympic Blvd., Suite 200
Beverly Hills, California 90211
Telephone (310) 432-0000
Facsimile (310) 432-0001

Sahag Majarian, II, Esq. (State Bar No. 146621)
　　sahagii@aol.com
**LAW OFFICE OF SAHAG MAJARIAN, II**
18250 Ventura Blvd.
Tarzana, California 91356
Telephone (818) 609-0807
Facsimile (818) 609-0892

Attorneys for PLAINTIFF FIDEL ALTAMIRANO
on behalf of himself and others similarly situated

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| FIDEL ALTAMIRANO, on behalf of himself and others similarly situated<br><br>　　　　PLAINTIFF,<br><br>vs.<br><br>SHAW INDUSTRIES, INC., a corporation; SHAW INDUSTRIES GROUP, INC., a corporation; and DOES 1 to 100, Inclusive.<br><br>　　DEFENDANTS. | Case No.: C13-00939-HSG<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE MOTION FOR FINAL APPROVAL OF REQUESTED ATTORNEYS' FEES AND COSTS**<br><br>**Date**: 　January 7, 2016<br>**Time**: 　2:00 p.m.<br>**Courtroom**: 　15<br><br>Before Hon. Haywood S. Gilliam, Jr., United States District Judge |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE MOTION FOR FINAL APPROVAL OF REQUESTED ATTORNEY'S FEES AND COSTS, CASE NO.: C13-00939-HSG**

153

Case 5:23-cv-00236-PSG-E   Document 1   Filed 02/10/23   Page 154 of 169   Page ID
Case 4:23-cv-00939-HSG   Document 60-1   Filed 10/13/15   Page 2 of 17   Page ID
#:154

# **TABLE OF CONTENTS**

I.    INTRODUCTION ...........................................................................................................1

II.   FACTUAL BACKGROUND........................................................................................2

    A.   Class Counsel Carefully Analyzed the Case Before Beginning Settlement
        Negotiations ........................................................................................................2

    B.   The Settlement is Beneficial to Class Members Without Requiring the Class
        Members to Locate Representation, File a Lawsuit, or Put Themselves at
        Risk for Costs and/or Retaliation ......................................................................3

    C.   Class Counsel Devoted Substantial Time and Resources to This Litigation ...................4

    D.   Class Members' Response to the Settlement and the Request for Fees and
        Costs Has Been Entirely Positive ......................................................................5

III.  LEGAL ARGUMENT...................................................................................................5

    A.   Counsel Are Entitled To an Award of Attorneys' Fees Out of the Common
        Fund ...................................................................................................................5

        1.   The equitable common fund doctrine applies when, as in this case, the
            litigation has recovered a certain and calculable fund on behalf of a
            group of beneficiaries ........................................................................5

        2.   The fee award should be calculated as a percentage of the common
            fund ...................................................................................................6

    B.   The Requested Fee Award is Fair and Reasonable ...........................................8

    C.   The Requested Fees Are Reasonable Under A Lodestar Crosscheck............................10

IV.   CONCLUSION.............................................................................................................12

-i-
**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE MOTION FOR FINAL
APPROVAL OF REQUESTED ATTORNEY'S FEES AND COSTS, CASE NO.:   C13-00939-HSG**

154

Case 5:23-cv-00236-PSG-E Document 1 Filed 02/10/23 Page 155 of 169 Page ID
Case 4:23-cv-00939-HSG Document 30-1 Filed 10/13/15 Page 3 of 17 Page ID
#:155

## TABLE OF AUTHORITIES

**Cases**                                                                    **Pages**

*In re Activision Sec. Litig.*,
   723 F. Supp. 1373 (N.D. Cal. Oct. 3, 1989)...................................................................7, 8

*Blum v. Stenson*,
   465 U.S. 886 (1984)...................................................................................................6

*Boeing Co. v. Van Gemert*,
   444 U.S. 472 (1980)...............................................................................................5, 6

*Camden I Condominium Ass'n, Inc. v. Dunkle*,
   946 F.2d 768 (11th Cir. 1991)....................................................................................8

*Carter v. Anderson Merchandisers, LP*,
   2010 U.S. Dist. LEXIS 55629 (C.D. Cal. 2010)........................................................6

*Central R.R. & Banking Co. v. Pettus*,
   113 U.S. 116 (1885)...................................................................................................5

*City of Roseville Emples. Ret. Sys. v. Orloff*,
   484 Fed. Appx. 138 (9th Cir. 2012)..........................................................................6

*Class Plaintiffs v. Jaffe & Schlesinger, P.A.*,
   19 F.3d 1306 (9th Cir. 1994)......................................................................................6

*Cohorst v. BRE Props*,
   No. 3:10-CV-2666-JM-BGS, 2011 U.S. Dist. LEXIS 151719 (S.D. Cal. Nov. 14,
   2011)..........................................................................................................................7

*Craft v. County of San Bernardino*,
   624 F.Supp.2d 1113 (C.D. Cal. 2008).....................................................................6-7

*Gaskill v. Gordon*,
   160 F.3d 361 (7th Cir. 1998)......................................................................................7

*Hopson v. Hanesbrands Inc.*
   No. CV08-0844 EDL) 2009 U.S. Dist. LEXIS 33900 (N.D. Cal. Apr. 3, 2009)....................11

*Lo v. Oxnard European Motors, LLC*,
   No. 11CV1009 JLS (MDD), 2012 U.S. Dist. LEXIS 73983 (S.D. Cal. May 29,
   2012)..........................................................................................................................9

-ii-
**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE MOTION FOR FINAL
APPROVAL OF REQUESTED ATTORNEY'S FEES AND COSTS, CASE NO.:   C13-00939-HSG**

155

Case 5:23-cv-00236-PSG-E Document 1 Filed 02/10/23 Page 156 of 169 Page ID
Case 4:23-cv-00939-HSG Document 58-1 Filed 10/13/15 Page 4 of 17 Page ID
#:156

*Martin v. AmeriPride Servs.*,
    No. 08cv440-MMA (JMA), 2011 U.S. Dist. LEXIS 61796, (S.D. Cal. June 9, 2011) .............9

*Missouri v. Jenkins by Agyei*,
    491 U.S. 274 (1989) ..............................................................................................................7

*Officers for Justice v. Civil Serv. Comm'n*,
    688 F.2d 615 (9th Cir. 1982) ...............................................................................................10

*Paul, Johnson, Alston & Hunt v. Graulty*,
    886 F.2d 268 (9th Cir. 1989) ..................................................................................................7

*Romero v. Producers Dairy Foods, Inc.*,
    No. 1:05cv0484 DLB, 2007 U.S. Dist. LEXIS 86270 (E.D. Cal. Nov. 14, 2007)....................9

*In re Safety Components, Inc. Sec. Litig.*,
    166 F. Supp. 2d 72 (D. N.J. 2001) .......................................................................................11

*Schwarm v. Craighead*,
    814 F. Supp.2d 1025 (E.D. Cal. Sep. 27, 2011) ....................................................................6

*Singer v. Becton Dickinson and Co.*,
    No. 08-CV-821-IEG (BLM), 2010 U.S. Dist. LEXIS 53416 (S.D. Cal. June 1,
    2010)...................................................................................................................................9

*Six Mexican Workers v. Arizona Citrus Growers*,
    904 F.2d 1301 (9th Cir. 1990)...........................................................................................1, 8

*State of Fla. v. Dunne*,
    915 F.2d 542 (9th Cir. 1990) ..................................................................................................8

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003)..................................................................................................5

*Sutton v. Bernard*,
    504 F.3d 688 (7th Cir. 2007) ..................................................................................................7

*Swedish Hosp. Corp. v. Shalala*,
    1 F.3d 1261 (D.C. Cir. 1993) ..............................................................................................6, 7

*In re Safety Components, Inc. Sec. Litig.*,
    166 F. Supp. 2d 72 (D. N.J. 2001) .......................................................................................11

*In re Synthroid Mktg. Litig.*
    264 F.3d 712 (7th Cir. 2001) ..................................................................................................7

*Tuttle v. Sky Bell Asset Mgmt, LLC*,
    No. C 10-03588 WHA, 2012 U.S. Dist. LEXIS 146174 (N.D. Cal. Oct. 10, 2012)................10

-iii-

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE MOTION FOR FINAL
APPROVAL OF REQUESTED ATTORNEY'S FEES AND COSTS, CASE NO.:   C13-00939-HSG**

**156**

Case 5:23-cv-00236-PSG-E Document 1 Filed 02/10/23 Page 157 of 169 Page ID
Case 4:23-cv-00939-HSG Document 89-1 Filed 10/13/15 Page 5 of 17 Page ID
#:157

*Vasquez v. Coast Valley Roofing, Inc.*,
    266 F.R.D. 482 (E.D. Cal. 2010)..................................................................................9

*Vincent v. Hughes Air West. Inc.*,
    557 F.2d 759 (9th Cir. 1977)......................................................................................6

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002)............................................................................6, 8, 11

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2nd Cir. 2005)......................................................................................11

*In re Wells Fargo Loan Processor Overtime Pay Litig.*,
    No. C-07-1841, 2011 U.S. Dist. LEXIS 84541 (N.D. Aug. 2, 2011) ....................................1, 8

## OTHER SOURCES

Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* (4th ed., 2002)
    § 14:06............................................................................................................11

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE MOTION FOR FINAL
APPROVAL OF REQUESTED ATTORNEY'S FEES AND COSTS, CASE NO.:   C13-00939-HSG**

Case 5:23-cv-00236-PSG-E  Document 1  Filed 02/10/23  Page 158 of 169  Page ID
Case 4:23-cv-00939-HSG  Document 90-1  Filed 10/13/15  Page 6 of 17  Page ID
#:158

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.     INTRODUCTION

In this settlement process, Plaintiffs' counsel secured a non-reversionary settlement of: (1) Five Hundred Thousand Dollars and Zero Cents ($500,000.00) for the Class Members; (2) a requested enhancement/incentive award of up to Four Thousand Four Hundred Dollars ($4,400), or 0.88% of the total settlement amount, for Plaintiff; (3) a request of attorney's fee's not to exceed One Hundred Twenty Five Thousand Dollars ($125,000); (4) a request of attorney's costs not to exceed Seventeen Thousand Dollars ($17,000.00); (5) a payment to the LWDA of One Thousand Five Hundred Dollars ($1,500); and (6) settlement administration costs not to exceed Twenty Four Thousand Dollars ($24,000). The aforementioned amounts result in an approximate distributable amount of $328,100 for a class of approximately 735 class members. Based on the data submitted to the claims administrator, the current high valid claim is presently $4,512.42. (Declaration of Joseph Lavi in Support of Plaintiff's Motion (hereinafter "Lavi Dec.") ¶20.) If 100% of the class members submit claims the average settlement payment per valid claimant would be approximately $446.39 (estimated net settlement amount of $328,100 ÷ 735 class members = $446.39). These amounts are minimum numbers because it is likely that less than 100% of the class members will submit claims resulting in each class member's individual settlement increasing pro rata. (Lavi Dec. Ex. 1 p. 19:23-20:5, 24:13-15 [no unclaimed funds because entire distributable amount is distributed to Class Members who submit a claim].) For their efforts, Class Counsel now seeks an attorneys' fee award of 25% of the Gross Settlement fund, or $125,000.00 (lodestar cross check is $135,732.50) and a costs award of $17,000 (present incurred costs of $20,625.23).

The requested fee award is fair, reasonable, and appropriate under the common fund doctrine or under a lodestar analysis. The Ninth Circuit has directed that, to determine what constitutes a fair and reasonable percentage of the settlement for purposes of calculating common fund attorney's fees, courts should use a "benchmark" percentage of 25% of the total fund. *In re Wells Fargo Loan Processor Overtime Pay Litig.*, No. C-07-1841, 2011 U.S. Dist. LEXIS 84541, *29-30 (N.D. Aug. 2, 2011) (citing *Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d

-1 -
**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE MOTION FOR FINAL
APPROVAL OF REQUESTED ATTORNEY'S FEES AND COSTS, CASE NO.:  C13-00939-HSG**

158

Case 5:23-cv-00236-PSG-E Document 1 Filed 02/10/23 Page 159 of 169 Page ID
Case 4:23-cv-00939-HSG Document 1 Filed 03/13/15 Page 7 of 17 Page ID
#:159

1301, 1311 (9th Cir. 1990) (referring to 25% as the "standard award"). The Gross Settlement Amount obtained through the efforts of Plaintiff's counsel is $500,000.00, and Plaintiff's counsel seeks no more than 25% of the Gross, or $125,000, and $17,000.00 for litigation costs.

In addition to the cases which support the percentage of the common fund award for attorney's fees in class actions, this Court also should consider: (1) the successful result obtained by Plaintiff's counsel following a careful analysis of the complex legal and factual issues in this action; (2) the lack of objections by any of the class members to the requested attorney's fees and costs when they had notice of such request; and (3) the contingency risk taken by Plaintiffs' counsel.

## II. FACTUAL BACKGROUND

### A. Class Counsel Carefully Analyzed the Case Before Beginning Settlement Negotiations

Class Counsel engaged in fact-gathering, informal and formal discovery before agreeing to the terms of the proposed settlement. (Lavi Decl. ¶¶ 5-12; Majarian Decl. ¶¶ 7-8.) The parties served multiple sets of discovery, including Request for Production of Documents, Interrogatories, and Request for Admissions. (Lavi Decl. ¶¶ 6.) Defendants had scheduled the deposition of Plaintiff and were in the process of filing their Motion for Summary Adjudication. Defendants produced thousands of pages of documents (in both hardcopy and electronic form) and detailed information relevant to the putative Class Members' payroll records, timesheets, and other payroll information. (*Id.*) Defendants produced the timesheets for an agreed upon random sampling of the entire class members for the class period. (*Id.*) In addition, Defendants produced numerous policies dealing with meal and rest breaks, work time, recording time, and other workplace policies applicable to the claims being asserted by the putative class as well as declarations from the putative class obtained in a separate but similar lawsuit against Defendants, including Plaintiff, in support of Defendants' defenses, such as attesting to receiving and taking meal and rest breaks and to being paid for all hours worked. (*Id.*) Defendants also produced a declaration from a corporate representative further attesting to Defendants' authorizing and permitting of rest breaks for the putative class during the relevant time period. During the investigation of the claims, Plaintiff alleged additional claims that Defendants failed to provide rest periods in compliance with California law and that Defendants

Case 5:23-cv-00236-PSG-E Document 1 Filed 02/10/23 Page 160 of 169 Page ID
Case 4:13-cv-00939-HSG Document 86-1 Filed 10/13/15 Page 8 of 17 Page ID
#:160

failed to provide all meal periods in compliance with the law.

After the parties exchanged significant amounts of discovery and allowed for time to analyze the documents and data, the parties engaged in mediation. (Lavi Decl.¶¶ 6-7). Plaintiff and Defendants mediated for a full day and into the evening before an experienced and well-regarded mediator, Steve Rottman on October 25, 2013. (*Id.*) While the mediation did not culminate in a settlement on that day, the parties continued to utilize the services of Mr. Rottman to continue the settlement discussions. After an additional year and after additional informal discovery and expert analysis of approximately 11.71% of the class members' punch history, the continued efforts of the parties and mediator culminated in the Stipulation and Settlement Agreement, which the Parties are now seeking final approval. (*Id.*)

By the time of the mediation and ultimate settlement, Plaintiffs' Class Counsel were fully informed about the strengths and weaknesses of their case and thoroughly familiar with Defendant's policies. The information enabled the Parties to have a meaningful discussion of the issues and participate in the mediation.

**B. The Settlement is Beneficial to Class Members Without Requiring the Class Members to Locate Representation, File a Lawsuit, or Put Themselves at Risk for Costs and/or Retaliation**

The Class consists of approximately 735 current and former hourly-paid, non-exempt employees who were employed by Shaw between January 22, 2009, and July 24, 2015 in California. (Lavi Dec. Ex. 1 p. 2:4-8, 2:21-22; *see* Ex. 2 [order granting preliminary approval entered July 24, 2015]; *see also* Lavi Dec. ¶20 [based on data supplied to claims administrator there are approximately 735 class members].) Based on the data submitted to the claims administrator and assuming that 100% of the class members submit claims, the current high valid claim is presently $4,512.42 and a minimum average settlement payment per valid claimant of $446.39 (estimated net settlement amount of $328,100 ÷ 735 class members = $446.39). These amounts are minimum numbers because it is likely that less than 100% of the class members will submit claims resulting in each class members individual settlement increasing pro rata, e.g., if 50% make claims the average would be $892.79 ($328,100 ÷ 367.5 class members = $892.79). (Lavi Dec. ¶ 20, Ex. 1 p.

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE MOTION FOR FINAL APPROVAL OF REQUESTED ATTORNEY'S FEES AND COSTS, CASE NO.: C13-00939-HSG**

Case 5:23-cv-00236-PCG-5 Document 1 Filed 02/10/23 Page 161 of 169 Page ID
Case 4:13-cv-00939-HSG Document 58-1 Filed 10/13/15 Page 9 of 17 Page ID
#:161

19:23-21:7, 24:13-15 [no unclaimed funds because entire distributable amount is distributed to Class Members who submit a claim].)

## C. Class Counsel Devoted Substantial Time and Resources to This Litigation

The Declaration of Joseph Lavi describes the specific tasks Class Counsel performed, which include but are not limited to: review of thousands of pages of documents (in hardcopy and electronic form) and detailed information regarding class data including putative Class Members' payroll records, timesheets, and other payroll information. Defendant also disclosed policies and procedures related to meal and rest breaks, work time, recording time, and other workplace policies applicable to the Plaintiff's class claims. (Lavi Dec. ¶¶6-7.) Prior to the mediation, counsel conducted an extensive investigation into the claims alleged by Plaintiff, interviewed Plaintiff, conducted legal research regarding the application of the applicable Labor Code sections. (*Id.*) Counsel engaged in a detailed evaluation and review of the time records and payroll data as well as meal and rest break policies, analysis of the provided policies, procedures and data, and prior to the mediation, retained an expert to review and analyze the provided timecards. (*Id.*) The expert determined: 1) the number of unique employees in the Excel documents; 2) the total number of the hours contained in the Excel document; 3) the total number of days worked contained in the Excel document; 4) the total amount of overpaid and underpaid hours by comparing the employees' actual timecard punch history to the employees' paid time history; 5) the total number of times that the employees worked 10 or more hours; 6) the total number of times that there was a punch for 2nd meal breaks; 7) total number of missed 2nd meal breaks by determining the total number of times that the employees worked 10 or more hours, without there being a 2nd meal break punch; and 8) total number of untimely 1st meal breaks by determining the number of times that the employees' 1st meal break punch-out was after 6 hours of work. (*Id.* ¶ 8.)

In addition, the parties could not agree on a negotiated settlement amount at the mediation and continued negotiations through the mediator for an additional 10 weeks. (*Id.* ¶ 6). Yet the agreement still required extensive iterations of comments and edits to the proposed settlement before culminating in the signing of the stipulation and ultimate preliminary approval by the court.

Case 5:23-cv-00236-RSC-E Document 1 Filed 02/10/23 Page 162 of 169 Page ID
Case 4:13-cv-00939-HSG Document 89 Filed 11/18/15 Page 10 of 17 Page ID
#:162

### D. Class Members' Present Response to the Settlement and the Request for Fees and Costs Appears Positive

The claims administrator has confirmed that class notices and claim forms were mailed to the 735 class members on September 17, 2015. (Lavi Dec. ¶20.) The class notices were sent with the claim forms in both English and Spanish. (Lavi Dec. Ex. 13, 14.) Class members were informed of the settlement terms and the gross amount of $500,000, with the requested attorneys' fees of up to $125,000.00 (25% of the total settlement) and requested costs of no more than $17,000. (Lavi Dec. Ex. 13 p. 2 §5 ¶ 3.) The claims administrator has confirmed that as of October 12, 2015, no class members have opted out or objected to the settlement. (Lavi Dec. ¶20.) Instead, based on the data submitted to the claims administrator and assuming that 100% of the class members submit claims, the current high valid claim is presently $4,512.42 and a minimum average settlement payment per valid claimant of $446.39 (estimated net settlement amount of $328,100 ÷ 735 class members = $446.39) with a likely increase in value of individual claims as less than all class members will likely submit claims. (Lavi Dec. ¶ 20, Ex. 1 p. 19:23-21:7, 24:13-15 [no unclaimed funds because entire distributable amount is distributed to Class Members who submit a claim].)

## III. LEGAL ARGUMENT

### A. Counsel Are Entitled To an Award of Attorneys' Fees Out of the Common Fund

#### 1. The equitable common fund doctrine applies when, as in this case, the litigation has recovered a certain and calculable fund on behalf of a group of beneficiaries

For well over a century, federal and state courts have recognized that when counsel's efforts result in the creation of a common fund that benefits plaintiffs and unnamed class members, counsel have an equitable right to be compensated from that fund as a whole for their successful efforts in creating it. *See, e.g., Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) (the United States Supreme Court "has recognized consistently that a litigant or a lawyer who recovers a common fund … is entitled to a reasonable attorney's fee from the fund as a whole"); *Central R.R. & Banking Co. v. Pettus*, 113 U.S. 116 (1885) (recognizing common fund doctrine); *Staton v. Boeing Co.*, 327 F.3d 938, 967 (9th Cir. 2003) (same).

The common fund doctrine rests on the understanding that attorneys should normally be paid

- 5 -
**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE MOTION FOR FINAL APPROVAL OF REQUESTED ATTORNEY'S FEES AND COSTS, CASE NO.: C13-00939-HSG**

162

Case 5:23-cv-00236-RSS-5 Document 1 Filed 02/10/23 Page 162 of 169 Page ID
Case 4:13-cv-00939-HSG Document 89 Filed 12/18/13 Page 116 of 17 Page ID
#:163

by their clients. *Boeing*, 444 U.S. at 478. Where the attorneys' unnamed class member "clients" have no express retainer agreement, those who benefit from the fund without contributing to it would be unjustly enriched if attorneys' fees were not paid out of the common fund. *Id*. Further, it is well-settled that "[t]he common fund doctrine provides that a private plaintiff, or his attorney, whose efforts create, discover, increase or preserve a fund to which others also have a claim is entitled to recover from the fund the costs of his litigation [including attorney's fees]." *Carter v. Anderson Merchandisers, LP*, 2010 U.S. Dist. LEXIS 55629 (C.D. Cal. 2010) (quoting *Vincent v. Hughes Air West. Inc.*, 557 F.2d 759, 769 (9th Cir. 1977)); *see also Schwarm v. Craighead*, 814 F. Supp.2d 1025, 1029 (E.D. Cal. Sep. 27, 2011) (quoting *Class Plaintiffs v. Jaffe & Schlesinger, P.A.*, 19 F.3d 1306, 1308 (9th Cir. 1994)).

This litigation has resulted in a settlement wherein Defendant would pay up to $500,000 non-reversionary, whereas class members' claims could never result in payment due to Defendant's defenses and the difficulties of certifying and establishing class actions. Because none of the class members have paid plaintiffs' counsel fees for counsel's efforts during the litigation, equity requires them to pay a fair and reasonable fee, based on what the market traditionally would require, no less than if they had hired private counsel to litigate their cases individually. *Boeing*, 444 U.S. at 479-81.

**B.   The fee award should be calculated as a percentage of the common fund**

The traditional method for calculating a fee award in common fund cases is to award counsel a percentage of the total fund. *See Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984). Moreover, "[i]n evaluating a fee award based on a percentage of a common fund, 'The question is not whether the district court should have applied some other percentage**,** but whether in arriving at its percentage it considered all the circumstances of the case and reached a reasonable percentage.'" *City of Roseville Emples. Ret. Sys. v. Orloff*, 484 Fed. Appx. 138, 140 (9th Cir. 2012) (quoting *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002)).

The percentage of the fund method is appropriate for a number of reasons. The percentage method comports with the legal marketplace, where counsel's success is frequently measured in terms of the results counsel has achieved, and "aligns the interests of counsel and the class by allowing class counsel to directly benefit from increasing the size of the class fund." *Craft v. County*

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE MOTION FOR FINAL
APPROVAL OF REQUESTED ATTORNEY'S FEES AND COSTS, CASE NO.:   C13-00939-HSG**

*of San Bernardino*, 624 F.Supp.2d 1113, 1123-24 (C.D. Cal. 2008) (citing *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1269 (D.C. Cir. 1993) which states in common fund cases "the monetary amount of the victory is often the true measure of [counsel's] success, and therefore it is most efficient that it influence the fee award" and the percentage method "more accurately reflects the economics of litigation practice") (also citing *Gaskill v. Gordon*, 160 F.3d 361, 363 (7th Cir. 1998) which states in "defining a reasonable fee in representative actions, the law should 'mimic the market'").

When clients do not pay an ongoing hourly fee to their counsel, they typically negotiate an agreement in which counsel's fee is based upon a percentage of any recovery. The percentage of the fund approach mirrors this aspect of the market and, accordingly, reflects the fee that would have been negotiated by the class members in advance, had such negotiations been feasible, given the prospective uncertainties and anticipated risks and burdens of the litigation. *See, e.g., Cohorst v. BRE Props*, No. 3:10-CV-2666-JM-BGS, 2011 U.S. Dist. LEXIS 151719, *55-56 (S.D. Cal. Nov. 14, 2011) (quoting *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 271 (9th Cir. 1989) ("It is well settled that the lawyer who creates a common fund is allowed an extra reward, beyond that which he has arranged with his client, so that he might share the wealth of those upon whom he has conferred a benefit."); *Sutton v. Bernard*, 504 F.3d 688, 692 (7th Cir. 2007) ("In deciding fee levels in common fund cases, we have consistently directed district courts to 'do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time.'") (quoting *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 718 (7th Cir. 2001)); *cf. Missouri v. Jenkins by Agyei*, 491 U.S. 274, 285 (1989) (market factors should be considered in evaluating reasonableness).

This market-based percentage approach to common fund fee awards has other benefits and advantages, as well. Because the percentage approach mimics the market, it helps provide highly qualified attorneys the necessary incentive to bring large, complex class actions, even though by definition it is impossible in such cases to negotiate a fee with the unnamed class members in advance. The percentage method is also far easier for courts to calculate than any alternative

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE MOTION FOR FINAL
APPROVAL OF REQUESTED ATTORNEY'S FEES AND COSTS, CASE NO.: C13-00939-HSG**

**164**

Case 5:23-cv-00936-RSG-E Document 1 Filed 02/10/23 Page 165 of 169 Page ID
Case 4:13-cv-00939-HSG Document 89 Filed 04/28/13 Page 13 of 17 Page ID
#:165

method. *See id.*; *see also In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1378 (N.D. Cal. Oct. 3, 1989).

As touched on above, aligning the incentives of the class and its counsel encourages counsel to spend their time efficiently and to focus on maximizing the size of the class' recovery, rather than their own lodestar hours. As Judge Patel wrote in criticizing the inflexibility of the lodestar approach:

> The question this court is compelled to ask is, "Is this [lodestar] process necessary?" Under a cost-benefit analysis, the answer would be a resounding, "No!" Not only do [lodestar] analyses consume an undue amount of court time with little resulting advantage to anyone, but, in fact, it may be to the detriment of the class members. They are forced to wait until the court has done a thorough, conscientious analysis of the attorneys' fee petition. Or, class members may suffer a further diminution of their fund when a special master is retained and paid from the fund. *Most important, however, is the effect the process has on the litigation and the timing of settlement. Where attorneys must depend on a lodestar approach there is little incentive to arrive at an early settlement.*

*In re Activision Sec. Litig.*, 723 F. Supp. at 1375 (emphasis added); *see also Vizcaino*, 290 F.3d at 1050 n.5 ("it is widely recognized that the lodestar method creates incentives for counsel to expend more hours than may be necessary on litigating a case so as to recover a reasonable fee, since the lodestar method does not reward early settlement."); *State of Fla. v. Dunne,* 915 F.2d 542, 545 (9th Cir. 1990) (recognizing a "recent groundswell of support for mandating a percentage-of-the-fund approach in common fund cases"); *Camden I Condominium Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 773 (11th Cir. 1991) ("[E]very Supreme Court case addressing the computation of a common fund fee award has determined such fees on a percentage of the fund basis.").

In light of these benefits, courts have regularly approved the percentage of the fund method for calculating a reasonable fee award in common fund cases. In this case, the award of counsel's common fund fees should be assessed as a percentage of the total fund and the monetary benefits it will have on Defendant's current and future employees.

## C. The Requested Fee Award is Fair and Reasonable

The Ninth Circuit has directed that, to determine what constitutes a fair and reasonable

-8-
**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE MOTION FOR FINAL
APPROVAL OF REQUESTED ATTORNEY'S FEES AND COSTS, CASE NO.: C13-00939-HSG**

165

percentage of the settlement for purposes of calculating common fund attorney's fees, courts should use a "benchmark" percentage of 25% of the total fund. *In re Wells Fargo Loan Processor Overtime Pay Litig.*, 2011 U.S. Dist. LEXIS 84541 at *23-30 (citing *Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d at 1311 (25% is the "standard award"); *Vizcaino*, 290 F.3d at 1047 (describing 20%-30% as the "usual range" of fees). Some courts have held that the upper limit for fees should be 50%, with District Courts in California awarding fees in the range of 30%-50% for settlements with smaller common funds, i.e., less $10 million, and adjusting below 25% for settlements with larger common funds, i.e., greater than $10 million. *Lo v. Oxnard European Motors, LLC*, No. 11CV1009 JLS (MDD), 2012 U.S. Dist. LEXIS 73983, *8-10 (S.D. Cal. May 29, 2012) (approving an award of 33% of a common fund of $49,100.00 for settlement after just two months of litigation; *Martin v. AmeriPride Servs.*, No. 08cv440-MMA (JMA), 2011 U.S. Dist. LEXIS 61796, *22-23 (S.D. Cal. June 9, 2011). More to the point, District Courts in California routinely award attorney's fees in the 30%-40% range for wage and hour class actions. *See Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 491-92 (E.D. Cal. 2010) (citing to five recent awards in wage and hour actions between 30% and 33%); *Singer v. Becton Dickinson and Co.*, No. 08-CV-821-IEG (BLM), 2010 U.S. Dist. LEXIS 53416, * 20-23 (S.D. Cal. June 1, 2010) (approving an award of 33.33% of the common fund and holding it was similar to fee awards ranging from 30.3%-40% in three other wage and hour actions). "Empirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery." *Romero v. Producers Dairy Foods, Inc.*, No. 1:05cv0484 DLB, 2007 U.S. Dist. LEXIS 86270, * 3-10 (E.D. Cal. Nov. 14, 2007) (quoting 4 Newberg and Conte, *Newberg on Class Actions* § 14.6 (4th ed. 2007) and approving an award of 33% to a small plaintiff-side employment firm where the issue of whether overtime compensation was barred by the Motor Carrier Act exemption of the FLSA was deemed a "complex legal issue").

Accordingly, Plaintiff's counsel' fee request of 25% is fair and reasonable fee. The gross settlement amount obtained through the efforts of Plaintiff's counsel is $500,000.00. Adhering to the benchmark, Plaintiff's counsel is seeking no more than 25% of the Gross, or $125,000 for fees as

-9 -

166

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE MOTION FOR FINAL APPROVAL OF REQUESTED ATTORNEY'S FEES AND COSTS, CASE NO.: C13-00939-HSG**

stated in the settlement agreement and the Class Notice to the class members, as well as $17,000.00 (the maximum allowable request).

The fairness of this fee award is further supported by the quality of Plaintiff's counsel's legal representation. The efforts expended by Class Counsel in this case are described above and are described in detail in the Declarations of Joseph Lavi and Sahag Majarian, II. As the declarations reflect, Plaintiff's counsel's diligent and efficient pursuit of this matter positioned Plaintiff to successfully settle this case, and to avoid the inevitable expense, the risk attendant to protracted litigation as well as the potential of the class members' receiving nothing if the court denied certification or found merit to Defendant's defenses. The current response of the class members' further supports a decision that the fee and costs request is fair and reasonable. The requested amount of attorneys' fees and costs were stated expressly in the class notice and at present no class members have objected or opted out. (Lavi Dec. ¶ 20 Ex. 13, 14.) The absence of any objections to the fees and costs requested supports the conclusion that the requested award is fair, adequate, and reasonable. *See Tuttle v. Sky Bell Asset Mgmt, LLC*, No. C 10-03588 WHA, 2012 U.S. Dist. LEXIS 146174, *5-7 (N.D. Cal. Oct. 10, 2012) (citing factors supporting a finding that the settlement agreement was fair, reasonable, and adequate, as articulate in *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982)).

**D. The Requested Fees Are Reasonable Under A Lodestar Crosscheck**

A lodestar cross-check confirms that the percentage requested is reasonable. *See Vizcaino*, 290 F.3d at 1050 ("while the primary basis of the fee award remains the percentage method, the lodestar may provide a useful perspective on the reasonableness of a given percentage award"). The accompanying declarations of Joseph Lavi and Sahag Majarian, II set forth the number of hours and rates used to calculate Class Counsel's lodestar.

| Attorney | Hours | Hourly Rate | Total |
|----------|-------|-------------|-------|
| Joseph Lavi | 134.75 | $650 | $87,587.50 |
| Jordan D. Bello | 35.1 | $450 | $15,795.00 |
| Vincent Granberry | 7.8 | $450 | $3,510.00 |
| Sahag Majarian, II | 41.20 | $700 | $28,840.00 |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE MOTION FOR FINAL APPROVAL OF REQUESTED ATTORNEY'S FEES AND COSTS, CASE NO.: C13-00939-HSG**

| Total | $135,732.50 |
|---|---|

(Lavi Dec. ¶¶24-29, Ex. 3; Majarian Dec. ¶9, Ex. B.) As described in the declarations, attorney Lavi worked in excess of 134.75 hours in this matter for a lodestar amount of $87,587.50.00. (Lavi Dec. ¶¶24-26, Ex. 3.) Mr. Bello has spent 35.1 hours in this matter for a lodestar amount of $15,795.00. (*Id.*) Mr. Granberry spent 7.8 hours for a lodestar amount of $3,510.00. Mr. Sahag Majarian, II, has spent 41.20 for a lodestar of $28,840.00. Accordingly, the total lodestar in this matter is $135,732.50 which is more than the requested fees. Counsel are frequently awarded multipliers on their lodestar when applying from a common fund. *See Vizcaino*, 290 F.3d at 1051 (approving multiplier of 3.65); *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 123 (2nd Cir. 2005) (approving multiplier of 3.5); *In re Safety Components, Inc. Sec. Litig.*, 166 F. Supp. 2d 72, 104 (D. N.J. 2001) (approving multiplier of 2.81 and citing cases approving multiplier from 2.04-3.6); *see also* Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 14:06 at 578 (4th ed., 2002) ("[M]ultiples ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied."). Counsel would generally be entitled to a multiplier but as a lodestar crosscheck, counsel does not require a multiplier to reach the requested $125,000 in fees.

The hours of work performed by Class Counsel were reasonable and necessary. The rates used in calculating the lodestar likewise are reasonable. Class Counsel's experience, reputation, and ability, detailed in the accompanying declarations justify the rates charged. (Lavi Decl ¶¶ 24-29, Ex. 3; Majarian Decl. ¶¶ 2-4, Ex. B.) A reasonable hourly rate is the prevailing rate charged by attorneys of similar skill and experience in the relevant community. *Hopson v. Hanesbrands Inc.,* No. CV08-0844 EDL, 2009 U.S. Dist. LEXIS 33900 (N.D. Cal. Apr. 3, 2009). Other wage and hour attorneys working as class counsel before California courts charge comparable if not higher rates as indicated in the 2008 National Law Journal Survey and the requested rates are also in line with the broadly used Laffey Matrix. (Lavi Decl. ¶¶ 24-29 (experience and Mr. Lavi out of law school and practicing for 13 years, Mr. Bello out of law school for 9 years and in practice with Lavi & Ebrahimian, LLP for over 8 years, Mr. Granberry out of law school since 2010 and practicing law since 2011), Ex. 5 (2008 National Law Journal Survey), Ex. 6 (Laffey Matrix stating a rate of $661 per hour for attorneys out of law school 11-19 years, $586 per hour for attorneys out of law school for 8-10 years, and $406 for attorneys out of

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE MOTION FOR FINAL
APPROVAL OF REQUESTED ATTORNEY'S FEES AND COSTS, CASE NO.:   C13-00939-HSG

law school for 4-7 years); see Lavi Dec. Ex. 7-11 (recent orders finding rates of Mr. Lavi and Mr. Bello to be reasonable); Majarian Dec. ¶¶2-4 (experience and Mr. Majarian II out of law school and practicing over 25 years), Ex. A (Laffey Matrix stating a rate of $796 per hour for attorneys practicing in excess of 20 years).)

Finally, Plaintiff's requested attorneys' costs associated with Class Counsel's litigation of the action are reasonable. Plaintiff requests $17,000.00 even though he has incurred in excess of that amount in litigating the matter. The requested amount of $17,000 is less than the $20,625.23 expended in litigation by Class Counsel ($20,242.87 for L&E + $382.36 for Majarian, II = $20,725.23) and excludes any future expenses (e.g., future travel expenses for appearances), such as necessary travel to appear at the Final Approval hearing. (Lavi Dec. ¶30, Ex. 4; Majarian Dec. ¶9, Ex. C.) These costs included reasonable amounts including $1,439 in filing fees; $2,870.83 in service and messenger fees; $4,750 for mediation; $5,400 for expert data analysis; $4,450 in travel fees, etc. (Lavi Dec. ¶30, Ex. 4; Majarian Dec. ¶9, Ex. C.)

**IV. CONCLUSION**

For the foregoing reasons, Class Counsel respectfully request that the Court issue an order finally determining and approving the payment of $125,000 as reasonable attorney's fees, as well as costs for $17,000.00.

Dated: October 13, 2015

Respectfully submitted,
**LAVI & EBRAHIMIAN, LLP**

By: _____
Joseph Lavi, Esq.
Jordan D. Bello, Esq.
Attorneys for PLAINTIFF FIDEL ALTAMIRANO and others similarly situated